IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEURIG, INCORPORATED,

      Plaintiff,

v.

KRAFT FOODS GLOBAL, INC.,
TASSIMO CORPORATION, and
KRAFT FOODS INC.,

      Defendants.

Civil Action No. 07-017-GMS

## KEURIG INCORPORATED'S OPENING CLAIM CONSTRUCTION BRIEF

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Chad S.C. Stover (No. 4919)
*cstover@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

Dated:   October 15, 2007

065927.1001

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

I.      SUMMARY OF ARGUMENT ............................................................................... 1

II.     BACKGROUND OF THE '762 PATENT .............................................................. 3

        A.      Leakage Problems of Single-Serve Beverage Filter
                Cartridges and the Invention of the '762 Patent ...................................... 4

        B.      The Claims of the '762 Patent ................................................................... 6

III.    THE LAW OF CLAIM CONSTRUCTION ............................................................ 7

IV.     ARGUMENT REGARDING CONSTRUCTION OF '762 PATENT CLAIM TERMS
        AND PHRASES ...................................................................................................... 9

        A.      "piercable to accommodate an inflow of liquid" and
                "piercable to accommodate an outflow of beverage" ............................ 10

        B.      "first and second chamber" ..................................................................... 15

        C.      "a second section overlying said second chamber" ................................ 23

V.      CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

A.B. Dick Co. v. Burroughs Corp.,
713 F.2d 700 (Fed.Cir.1983) ......................................................................................18

Canon Computer Sys., Inc. v. Nu-Kote Intern., Inc.,
134 F.3d 1085 (Fed. Cir. 1998)...........................................................2, 19, 20, 21, 24

Cardiac Science, Inc. v. Koninklijke Philips Elec. N.V.,
2006 WL 1050629 (Fed. Cir. 2006)........................................................................12, 13

Chimie v. PPG Indus., Inc.,
402 F.3d 1371 (Fed. Cir. 2005)....................................................................................8

Comark Commc'ns, Inc. v. Harris Corp.,
156 F.3d 1182 (Fed. Cir. 1998).......................................................................8, 17, 19

Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,
423 F.3d 1343 (Fed. Cir. 2005)....................................................................................8

Gillette Co. v. Energizer Holdings, Inc.,
405 F.3d 1367 (Fed. Cir. 2005)..................................................................................14

JVW Enters., Inc. v. Interact Accessories, Inc.,
424 F.3d 1324 (Fed. Cir. 2005)............................................................................19, 24

Liposome Co. v. Vestar,
No. 92-332-RRM, 1994 WL 738952 (D. Del. Dec. 20, 1994) ..................................14

Liquid Dynamics Corp. v. Vaughan Co.,
355 F.3d 1361 (Fed. Cir. 2004)...............................................................................7, 8

Markman v. Westview Instruments, Inc.,
517 U.S. 370 (1996)......................................................................................................1

Markman v. Westview Instruments, Inc.,
52 F.3d 967 (Fed. Cir. 1995).....................................................................................7, 8

Medrad, Inc. v. MRI Devices Corp.,
401 F.3d 1313 (Fed. Cir. 2005)......................................................................11, 12, 16

Nikken USA, Inc. v. Robinsons-May, Inc.,
51 Fed. Appx. 874 (Fed. Cir. 2002)............................................................................13

Pause Tech. LLC v. TiVo Inc.,
419 F.3d 1326 (Fed. Cir. 2005)..................................................................................10

Phillips v. AWH Corp.,
415 F.3d 1303 (Fed. Cir. 2005)..........................................6, 7, 8, 9, 11, 14, 17, 19

U.S. Surgical Corp. v. Ethicon, Inc.,
103 F.3d 1554 (Fed. Cir. 1997)..............................................................................7, 23

Vitronics Corp. v. Conceptronic, Inc.,
   90 F.3d 1576 (Fed. Cir. 1996).....................................................................................7, 19, 20, 22

**Statutes**

35 U.S.C. § 112.................................................................................................................................6

**Other**

Oxford Dictionary of Current English (4th Ed. 2006)....................................................................11

Webster's New Universal Unabridged Dictionary (2nd Ed. 1983) .................................................11

Pursuant to the Court's Scheduling Order, and as provided for by the Supreme Court in Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), Keurig submits this memorandum to assist the Court in its task of interpreting relevant claim language in U.S. Patent No. 6,607,762 ("the '762 patent," A1-A9).

## I.    SUMMARY OF ARGUMENT

1. The parties dispute the meaning of the phrases "piercable to accommodate an inflow of liquid" and "piercable to accommodate an outflow of beverage." The claim language itself, and the patent specification, make clear that these phrases require a lid that is designed to be pierced such that inflow of liquid, and outflow of beverage, occur without substantial leakage.

2. Kraft seeks to divorce the adjective "piercable" from the context of the claim language it modifies (and from the remainder of the specification) by construing that single word, in isolation, to mean merely "capable of being pierced." This is an overbroad interpretation under which "piercable" would not limit the claim at all, since anything can be pierced somehow. Reading a term out of the claim in that fashion is improper as a matter of law.

3. Kraft's interpretation plainly is not what the inventors intended, nor is it what the patent language requires. Rather, the word "piercable" modifies the phrases "**to accommodate an inflow** of liquid" or "**to accommodate an outflow** of beverage." In other words, the claim language itself requires (and the rest of the patent specification further makes clear) that the lid must be designed to be pierced **in a manner so as to create an appropriate inflow or outflow mechanism**. In particular, the patent specification makes clear that the pierced lid must fulfill the function of avoiding leakage. Kraft's proposed construction would be legal error, as it would include any lids that could somehow be pierced, regardless of whether doing so would "accommodate an inflow of liquid" (or "outflow of beverage").

4. The parties' second dispute warranting claim construction relates to the terms "first and second chambers." This language is straightforward: the cartridge has a filter which allows liquid, but not substantial non-dissolved solids, to pass through. The part of the cartridge upstream of the filter is the "first chamber," while the part downstream of the filter is the "second chamber."[1] The fact that the chambers may themselves be further subdivided into sub-chambers by non-filter structures (*e.g.*, a water inlet area, a manifold area) does not change this basic definitional scheme set up by the patent language – upstream of the filter is the first chamber, and downstream of the filter is the second chamber. Cf. Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085, 1089-90 (Fed. Cir. 1998) (construing the term "first chamber" such that it may be subdivided into multiple sub-chambers).

5. The claimed invention requires a filter to separate two chambers – one chamber, upstream of the filter, into which liquid is introduced and allowed to mix with a beverage medium (such as ground coffee), and another chamber, downstream of the filter, from which the infused beverage can flow out of the cartridge. Accordingly, the "first and second chambers" should be construed in light of the specification and the expressly stated purpose of the invention such that the "first chamber" is the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter – while the "second chamber" is the part of the cartridge out of which the beverage flows after having passed through the filter. Kraft, by

---

[1] As discussed in text below, there may also, in some embodiments of the invention, be a support structure for the filter, with channels through which the liquid flows after passing through the filter but before reaching the second chamber. That structure is shown in the first disclosed embodiment of the patent (Figures 4 and 5) – and appears likewise in Kraft's infringing product. It is not a necessary feature, however, as indicated by the fact that it does not appear in the second disclosed embodiment of the patent (Figure 7).

-2-

contrast, seeks a far narrower and more complicated definition. As discussed below, Kraft is improperly trying to import additional limitations into the claim that simply are not there.

6. The remainder of the claim language in the '762 patent is clear on its face and needs no special "construction" or re-wording by the Court. The Federal Circuit has made clear that not every term (even if purportedly disputed) requires construction, and that ordinary English terms that have not been given any special technical meaning in the patent may be understood by a jury without further construction by the Court. Accordingly, the Court should decline Kraft's request to construe straightforward language into which Kraft improperly seeks to import limitations from the specification. These claim terms are addressed in Section IV below.

## II.    BACKGROUND OF THE '762 PATENT

Keurig, a pioneer and leading manufacturer of single-serve brewing systems, owns the '762 patent, entitled "Disposable Single Serve Beverage Filter Cartridge." Single-serve brewing systems permit users to enjoy freshly brewed beverages such as coffee one cup at a time while eliminating the inconvenience of grinding beans, measuring coffee, and handling messy filters. Cartridges used in single-serve brewing systems are sealed containers with filters that preserve the freshness of the ground coffee or tea that they contain.

A brief description of single-serve beverage filter cartridges predating the '762 patent may provide helpful background to the Court. Single-serve beverage cartridges go back, in one form or another, to about the 1970s. Over the years, a number of different single-serve brewer systems have been marketed. **Every single one of them** involved piercing the cartridge from one side to accommodate an inflow of water and creating an outlet **on a different side** to permit outflow of the brewed beverage. Keurig's patented invention literally turns this cartridge history

-3-

upside down by disclosing and claiming a beverage filter cartridge designed to be pierced **on the same side** to accommodate both inflow and outflow of liquid.

### A.    Leakage Problems of Single-Serve Beverage Filter Cartridges and the Invention of the '762 Patent

The '762 patent discloses a beverage filter cartridge that is designed for **same-side piercing** of the lid of a beverage filter cartridge to form (1) an inlet that accommodates an inflow of liquid without leakage and (2) an outlet that accommodates an outflow of beverage without leakage.

Prior to the patented invention, as depicted in the figures below showing a typical prior art system,[2] disposable single-serve beverage filter cartridges required piercing of the lid of the cartridge on one side and piercing of the container bottom on the opposite side during a single brewing cycle. The piercing of the cartridge on both sides, however, sometimes led to leakage problems because the relatively hard container bottom would buckle during the piercing process. ('762 patent at A7, col. 1, ll. 15-62).

A related problem with the prior art cartridges stemmed from the need to equip brewers with expensive metal needles that could effectively pierce the tougher cartridge bottoms and retain their effectiveness after repeated piercing. ('762 patent at A7, col. 1, ll. 50-55).

The patented invention in which both the inflow piercing and the outflow piercing are accomplished on the same side – through the lid rather than the container bottom – solves these problems. First, it helps minimize or prevent the leakage problems associated with the prior art, because the lid is less prone to distortion and buckling. Second, it may eliminate the need for expensive metal needles for piercing the cartridge bottom. ('762 patent at A7, col. 1, l. 65 - col.

---

[2] The figures below are from U.S. Patent No. 5,840,189, which is referenced in the "Description of the Prior Art" section of the '762 patent (A7 at col. 1, ll. 15-18).

-4-

2, l. 27; see also File History for '762 Patent, Provisional Application No. 60/183,569 at A 34-35

(noting some of the advantages of the claimed invention)).



**Figure 1 of Prior-art U.S. Patent No. 5,840,189**



**Figure 4 of Prior-art U.S. Patent No. 5,840,189**

065927.1001

## B.    The Claims of the '762 Patent

The claims of a patent describe the boundaries of the patentee's right to exclude others from using the claimed method or system. The '762 patent has two independent claims – claims 1 and 10. The remaining claims depend, either directly or indirectly, from claim 1 and therefore incorporate all the limitations of claim 1. See 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

There are three phrases in the claims of the '762 patent that would benefit from formal Markman construction. These terms are listed below, along with the relevant claims in which they appear (in part, or in their entirety).

| Claim Term | Claims |
|---|---|
| "first and second chambers" | 1, 10 |
| "piercable to accommodate an inflow of liquid" | 1, 2, 10 |
| "piercable to accommodate an outflow of beverage" | 1, 2, 10 |

These are the three terms as to which there is any substantial dispute between the parties and as to which the meaning may not be clear without formal construction, if taken out of the context of the claims and of the patent specification which help define them. Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (holding that claim language must be read in light of the specification). The remaining terms of the claims are clear enough on their face and need no special construction.

Section III below provides an overview of applicable principles of claim construction law. Section IV sets forth Keurig's proposed claim constructions, along with the explanation and authority supporting those constructions.

-6-

## III.    THE LAW OF CLAIM CONSTRUCTION

Claim construction is a matter of law for the court.  Markman v. Westview Instruments,

Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (Markman II) (en banc), aff'd, 517 U.S. 370 (1996).  The

purpose of claim construction is to arrive at a "fixed, unambiguous, legally operative meaning to

the claim" for eventual comparison to the accused devices to resolve the question of

infringement.  Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1367 (Fed. Cir. 2004).

The scope of a patent is defined by its claims.  "It is a 'bedrock principle' of patent law

that 'the claims of a patent define the invention to which the patentee is entitled the right to

exclude.'"  Phillips, 415 F.3d at 1312 (citations omitted).

Not every claim term – even if disputed – requires construction.  Often, many of the

words and phrases used in a patent claim are sufficiently straightforward that no formal

"interpretation" is necessary to understand them.

> The Markman decisions do not hold that the trial judge must repeat or restate every
> claim term in order to comply with the ruling that claim construction is for the court.
> Claim construction is a matter of resolution of disputed meanings and technical
> scope, to clarify and **when necessary** to explain what the patentee covered by the
> claims, for use in the determination of infringement. **It is not an obligatory exercise
> in redundancy.**

U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (emphasis added).  In

some cases, like this case, the ordinary meaning of claim language as understood by a person of

skill in the art involves little more than the application of the widely-accepted meaning of

commonly understood words.  Phillips, 415 F.3d at 1314.

Some words or phrases, however, may require formal Markman construction to ensure

that the claim is accorded its legally proper meaning, namely the meaning it would be given by

one of skill in the relevant art reading the claim in view of the patent specification.  Vitronics

Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).

- 7-

Interpretation of a patent claim begins with the claim language itself. Generally, the words of a claim are given their "ordinary and customary meaning," *i.e.*, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1312-13. "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." Id. at 1313. After examining the language of a claim, the court looks to the "intrinsic" record – *i.e.*, the patent specification, drawings and file history – to determine the meaning of the claim language in context. Id. The words of the claims must "be read in view of the specification, of which they are part." Id. at 1315. Although claims are to be read in light of the patent specification, limitations may not be read from the specification into the claims. Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998).

In addition to the specification, the prosecution history, which is considered part of the intrinsic record, may inform a court of the scope of the claims. Phillips, 415 F.3d at 1317; Liquid Dynamics, 355 F.3d at 1367-68. "[T]he prosecution history can and should be used to understand the language used in the claims, [but] it ... cannot 'enlarge, diminish, or vary' the limitations in the claims." Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1380 (Fed. Cir. 2005) (citing Markman II, 52 F.3d at 980). As the Federal Circuit cautioned in Phillips, however, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." 415 F.3d at 1317.[3]

---

[3] Dictionary definitions may be consulted in order to arrive at the ordinary and customary definition, if those definitions are not contradicted by the intrinsic evidence. Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1348 (Fed. Cir. 2005); Phillips, 415 F.3d at 1324).

-8-

Finally, courts may examine "extrinsic" evidence to "shed useful light on the relevant art," and provide evidence of how a person of ordinary skill in the art of the patent would understand the words of the claims. Id. at 1317-18 (internal citations omitted). Extrinsic evidence, however, may not be used to vary or contradict the words of a claim. Markman II, 52 F.3d at 981.

In sum, while many terms can simply be given their ordinary meaning, if a technical term is involved, or one with a particular meaning in the context of the patent, a court "looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Phillips, 415 F.3d at 1314 (internal quotations omitted).

## IV.    ARGUMENT REGARDING CONSTRUCTION OF '762 PATENT CLAIM TERMS AND PHRASES

As noted above, most of the words and phrases of the '762 patent claims do not require any formal Markman construction by the Court. In the instances described below, however, it would be helpful and appropriate for the Court to establish the proper interpretation of particular terms in the patent.

-9-

A.    **"piercable to accommodate an inflow of liquid" and
        <u>"piercable to accommodate an outflow of beverage"</u>**

| Language from Claims 1 and 10 that Keurig Suggests Requires Construction | Keurig's Proposed Construction |
|---|---|
| piercable to accommodate an inflow of liquid | designed to be pierced to form an inlet that allows an inflow of liquid without leakage |
| piercable to accommodate an outflow of beverage | designed to be pierced to form an outlet that allows an outflow of beverage without leakage |

The claim language "piercable to accommodate an inflow of liquid" and "piercable to accommodate an outflow of beverage" should be construed as complete phrases and in the context of the entire claim, as clarified by the specification. The adjective "piercable" cannot be taken in isolation and construed in a vacuum as Kraft urges the Court to do. This word is part of larger phrases whose meaning lies at the heart of the claimed invention of the '762 patent, which is directed to **same-side piercing** of a single-serve beverage filter cartridge lid to create "a cleaner puncture and an improved seal" that avoids leakage.

While just about anything is theoretically "piercable" if given the right tools and enough force, the patent plainly does not cover any and all lids that can somehow be pierced. Rather, it covers a cartridge with a lid that is piercable in a particular manner, namely "to accommodate an inflow" or "outflow." What does this qualification to the word "piercable" require? As discussed below, the patent specification answers this question by clarifying that it must be designed to be pierced **so as to form** a particular type of seal onto an **inlet and outlet**, avoiding leakage.

The adjective "piercable" in claims 1 and 10 must be construed along with the claim language that it modifies, "to accommodate an inflow of liquid" and "to accommodate an outflow of beverage," in the context of the entire claim. "Proper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation." <u>Pause Tech. LLC</u>

- 10 -

v. TiVo Inc., 419 F.3d 1326, 1331 (Fed. Cir. 2005) (internal citations omitted). In the context of

the claim language, the adjective "piercable" modifies the phrase "to accommodate," whose

plain and ordinary meaning is "to fit, adapt, or make suitable." Webster's New Universal

Unabridged Dictionary at A52-A53; see also Oxford Dictionary of Current English at A54-A56

(accommodate – "to adapt to or fit in with"). Taken together, "piercable," meaning "capable of

being pierced," and "to accommodate," meaning "to fit, adapt, or make suitable," should be read

to mean adapted or made suitable to be pierced, i.e., "designed to be pierced."

Moreover, taken together with the remaining words in those phrases, "piercable to

accommodate **an inflow of liquid**" and "piercable to accommodate **an outflow of beverage**,"

must be read in light of the purpose of the invention, which in this case is a single-serve beverage

filter cartridge that allows same-side piercing of the cartridge while minimizing leakage. "[T]he

interpretation to be given a [patent claim] term can only be determined and confirmed with a full

understanding of what the inventors actually invented and intended to envelop with the claim."

Phillips, 415 F.3d at 1316. It is therefore important to "consider the functions of an invention"

when determining the meaning of the claim terms. Medrad, Inc. v. MRI Devices Corp., 401 F.3d

1313, 1319 (Fed. Cir. 2005). Here, the specification of the '762 patent emphasizes that the

claimed single-serve beverage filter cartridge is designed such that the "first and second lid

sections are yieldably **piercable**, respectively, **from the same direction** . . . [such that the] net

result is a **cleaner puncture and an improved seal**." ('762 Patent at A7, col. 2, ll. 6-20

(emphasis added)). And the specification further states that the claimed invention is targeted at

avoiding potential problems with the design of prior art cartridges which "can **adversely affect**

**the puncturing process, resulting in leakage**." ('762 Patent at A7 at col. 1, ll. 45-50 (emphasis

added)). A person of ordinary skill in the art certainly would not view a cartridge as being

- 11 -

functional for its intended purpose (*e.g.*, piercable to accommodate an inflow and to accommodate an outflow) if the cartridge leaked significantly at the inlet or outlet. Accordingly, the impetus behind the claimed invention of the '762 patent is to allow same-side piercing of the lid of a single-serve beverage filter cartridge to provide an easier and cleaner puncture and an improved seal to avoid leakage. In this context, the claims are properly understood by persons of ordinary skill in the art to require that the lid be designed to be pierced to form an inlet that allows an inflow of liquid without leakage and an outlet that allows an outflow of beverage without leakage.

The Federal Circuit, in <u>Cardiac Science, Inc. v. Koninklijke Philips Elec. N.V.</u>, No. 03-1064, 2006 WL 1050629, at *36 (Fed. Cir. 2006), applied this same contextual approach to construing a similar phrase that contained an adjective ending in "–able." In that case, the term was "alterable"; and the Federal Circuit explained that in the context of the patent it had to mean more than just "capable of being altered." Instead, the Federal Circuit put that adjective in context and held that "alterable," in light of the specification, meant "able to be modified or changed **in the field**." Here, the claims of the '762 patent do not merely require a "piercable lid"; the claims require a lid that is "**piercable to accommodate** an inflow of liquid" and "**piercable to accommodate** an outflow of beverage." This Court should construe the word "piercable" in the context of the remainder of these phrases and consistent with the specification, and like the Federal Circuit in <u>Cardiac Science</u>, determine that the remaining claim language requires that "piercable" means not just merely "capable of being pierced" but rather that an appropriate inlet (or outlet) be formed so as to create "a cleaner puncture and an improved seal" that avoids leakage. See <u>Cardiac Science</u>, 2006 WL 1050629, at *36; <u>see also</u> <u>Pause</u>, 419 F.3d at 1331; <u>Medrad</u>, 401 F.3d at 1319; '762 Patent at A7, col. 1, ll. 45-50, col. 2, ll. 6-20.

- 12-

In another analogous situation involving an adjective ending in "-able," the Federal Circuit again rejected an overbroad construction of the term "attachable," holding that "reading the limitation broadly to include **any** magnetic sheet **that could somehow be attached . . .** would make everything attachable and **would render meaningless the 'attachable' limitation**." Nikken USA, Inc. v. Robinsons-May, Inc., 51 Fed. Appx. 874, 883-4, 2002 WL 31664765, at *8 (Fed. Cir. 2002) (emphasis added). Here, likewise, construing "piercable" as broadly as Kraft suggests so as to include anything that could be pierced, would render the "piercable" limitation meaningless. After all, even a steel plate is capable of being pierced with the right tools. But no person of ordinary skill in the art could reasonably read the claims of the '762 patent to cover a beverage filter cartridge with a thick steel lid. As in Nikken and Cardiac Science, the proper scope of the word "piercable" is taken from the context and purpose of the invention as a whole, so as to give it the meaning that one reading the patent would fairly understand.

Kraft itself, outside the litigation context, has admitted this point. In a statement it made to the European Patent Office in 2005, addressing the very issue of what "piercable . . . to accommodate an inflow" and "piercable . . . to accommodate an outflow" meant,[4] Kraft explained (correctly, and indeed successfully) that this language only applies to cartridges designed to be pierced in a manner that creates a "suitable inlet" (or outlet) avoiding a "large degree of leakage."[5] In response to a rejection of a claim[6] to a beverage cartridge that recited "the first portion of the lid is **pierceable in use to accommodate an inflow of aqueous medium** into the manifold chamber and the lid is **pierceable in use to accommodate an outflow of beverage**," Kraft stated:

---

[4] See European Patent No. EP1 440 913 at A83 at p. 22, claim 1 ("EP '913").

[5] European Patent Application No. 04250384.7, Response to EPO Communication at A116 at 1; see also European Patent Application No. 04250384.7, EPO Communication at A113-A114 at 1-2.

- 13-

> It is a requirement of the independent claims of the present application that the cartridge and the lid are such that **the lid is suitable for being pierced to accommodate an inflow of aqueous medium** into the manifold chamber. This is not the case in the design of [the prior art] cartridge . . . [which] is not **designed to make it suitable for the laminate in that region to be pierced to form an inlet**. In particular, no suitable element is provided against which the inlet piercer on a beverage preparation machine may abut when the inlet is formed. **As such, if the design of cartridge . . . was pierced through the lid, a suitable inlet would not be formed since there would be a large degree of leakage from the underside of the cartridge.**[7]

Kraft's own prior explanation interpreting virtually identical claim language thus demonstrate that persons of ordinary skill in the art of the '762 patent would understand the words of the claims as Keurig herein suggests.

Indeed, a Court in this District has previously held that "statements before the European Patent Office . . . are relevant as evidence of how [a party] had in fact read the words of the claim at a time when it was not looking at them as a necessary step in building a claim for relief." Liposome Co. v. Vestar, No. 92-332-RRM, 1994 WL 738952, at *14 (D. Del. Dec. 20, 1994); see also Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1374 (Fed. Cir. 2005) (stating that prior statements made by a party in connection with nearly identical claim language during prosecution before the EPO constituted a "blatant admission"); Phillips, 415 F.3d at 1317-19 (discussing the ways in which extrinsic evidence may be useful to courts in construing claims). The Court in Liposome also noted that a party's "prior statements are also relevant as they are some evidence of how one skilled in the art would read the words in the patent." Liposome, 1994 WL 738952, at *14. Here, similarly, Kraft's claim construction arguments – offered for purposes of litigation – differ strikingly from their explanations made in a different context. Kraft's own prior statements to the EPO are outright admissions that Keurig's position is correct, and at a minimum are far more compelling evidence of how a person of ordinary skill in the art

[6] See European Patent No. EP1 440 913 at A83 at p. 22, claim 1.
[7] See supra Note 5.

- 14-

would construe the disputed claim language than its current litigation-driven position. As Kraft
admitted before the EPO, that language requires that the lid be designed to be pierced to allow
both an inflow of liquid and an outflow of beverage without leakage.

In summary, the claim language "piercable to accommodate an inflow of liquid" and
"piercable to accommodate an outflow of beverage" should be construed as a whole in the
context of the entire claim and in light of one of the expressly stated purposes of the invention to
mean "designed to be pierced to form an inlet that allows an inflow of liquid without leakage"
and "designed to be pierced to form an outlet that allows an outflow of beverage without
leakage," respectively.

### B.    "first and second chamber"

| Language from Claims 1 and 10 that Keurig Suggests Requires Construction | Keurig's Proposed Construction |
|---|---|
| first and second chamber | first chamber – the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter<br><br>second chamber – the part of the cartridge out of which the beverage flows after having passed through the filter |

Claims 1 and 10 of the '762 patent recite *inter alia* a beverage filter cartridge comprising
"first and second chambers." The claims self-define these terms as separate parts of the cartridge
formed by subdividing the interior of the cartridge with a filter element. This definition is also
consistent with the purpose of the invention – the claimed invention requires a filter to separate
two chambers, one chamber in which liquid is introduced and allowed to mix with a beverage
medium such as ground coffee and another chamber, downstream of the filter, from which the
infused beverage can exit the cartridge.

The claimed invention of the '762 patent is directed to a single-serve beverage filter cartridge, *i.e.*, a sealed container with a filter for preparing beverages such as coffee or tea. As noted above, the purpose of the invention is highly relevant to the claim construction inquiry. Medrad, 401 F.3d at 1319. Single-serve beverage filter cartridges are straightforward devices in one sense; they allow water to mix with coffee or tea on one side of the filter, which filters out the coffee grounds or tea leaves to provide the coffee or tea beverage on the other side of the filter. As the specification explains:

> During a brewing cycle, as shown in FIG. 5 [reproduced below] . . . the lid 16 is pierced with one or more tubular infusion probes 22 to admit hot water under pressure into chamber A [the first chamber] for infusion with the beverage medium M. The resultant beverage passes through the fil[t]er element 14 into the channels defined between the support ribs 12d. From here, the beverage flows downwardly into chamber B [the second chamber] from which it is extracted by one or more tubular exit probes 24 which pierce the lid and filter element at a location overlying chamber B.



**Figure 5 from the '762 Patent**

('762 Patent at A8, col. 3, ll. 39-49, fig. 5.) In this context, it is easily understood that the claimed invention requires (at least) two chambers that are separated by a filter such that liquid flowing through the cartridge can mix with a beverage medium on one side of the filter (the "first chamber"), before it passes through the filter and ultimately flows into another chamber (the "second chamber") from which the resulting beverage can exit the cartridge. Nothing in the claimed invention limits those chambers to any particular shape, nor does it preclude a chamber from being itself divided into one or more sub-chambers.

Indeed, the claims of the '762 patent make it clear that the first chamber is the part of the cartridge into which the liquid is introduced and through which it flows **before** reaching the filter, while the second chamber is the part of the cartridge out of which the beverage flows (*e.g.*, into a coffee cup), **after** having passed through the filter. The claim language itself requires such a "flow-based" construction in reciting that the "filter element [be] permeable to liquid to accommodate a **flow of the beverage from said first chamber into said second chamber**." '762 Patent at A9, col. 5, ll. 7-9; see also Phillips, 415 F.3d 1313 (reiterating that interpretation of a patent claim begins with the claim language itself).

The specification further supports this "flow-based" construction of the claim language. See Comark, 156 F.3d at 1186 ("claims are to be interpreted in light of the specification and with a view to ascertaining the invention"). Indeed the specification explains that:

> the filter element defines a **first chamber "A" separate from a second chamber "B"**, the latter being in communication with open channels separating the support ribs 12d . . . [and d]uring a brewing cycle, as shown in FIG. 5 [reproduced above] . . . the lid 16 is pierced . . . to admit hot water under pressure into chamber A for infusion with the beverage medium M. **The resultant beverage passes through the fil[t]er element 14 into the channels defined between the support ribs 12d. From here, the beverage flows downwardly into chamber B from which it is extracted.**

('762 Patent at A8, col. 3, ll. 16-19, 39-46 (emphasis added); see also '762 Patent at A8 at col. 3,

ll. 51-56; col. 4, ll. 36-44). The specification also states:

> It will thus be seen that in both embodiments, the outer container is not pierced. Rather, **liquid communication is established with the separate chambers A, B by inlet and outlet probes** operating from the same side of the cartridge to pierce different sections of the readily piercable lid.

('762 Patent at A8 at col. 4, ll. 45-49 (emphasis added)). Accordingly, persons of ordinary skill

in the art would understand the claim language "first and second chamber" to require a first

chamber that is the part of the cartridge into which the liquid is introduced and through which it

flows before reaching the filter and a second chamber that is the part of the cartridge out of

which the beverage flows after having passed through the filter. Nothing in the remainder of the

specification or the prosecution history suggests that this claim language should be interpreted

differently. Nothing, moreover, precludes the presence of any extra elements. See A.B. Dick

Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir. 1983) ("It is fundamental that one cannot

avoid infringement merely by adding elements if each element recited in the claims is found in

the accused device.").

The Court should reject Kraft's proposed construction of the claim language "a filter

element received in and configured and arranged to subdivide the interior of said container into

first and second chambers" because Kraft's proposed construction:[8] (1) incorrectly adds a

limitation that the cartridge can only have two chambers and that the chambers cannot be further

---

[8] Kraft incorrectly argues that this claim language requires "a permeable material that is shaped and placed within the interior of the container such that the permeable material **structurally divides** the interior to create **two compartments**, a first compartment in which a soluble beverage medium is stored and a second compartment from which a beverage exits the container." Joint Claim Construction Chart at 4 (emphasis added). Kraft also incorrectly argues that "first chamber" means "the **enclosed space** in which the beverage medium is stored" and "second chamber" means "the **enclosed space** from which the beverage exits the container." Id. at 3 (emphasis added).

- 18-

subdivided; (2) incorrectly adds a limitation that the filter is the only structure in the interior of

the cartridge; and (3) incorrectly adds a limitation that the chambers be "enclosed spaces."

Indeed, the Federal Circuit has rejected arguments similar to those posed by Kraft in construing

the very same term "first chamber" in the closely-related context of ink cartridges. See Canon,

134 F.3d at 1089-90 (construing the term "first chamber" such that it may be subdivided into

multiple chambers).

Although the claims of the '762 patent must be read in light of the specification,

limitations may ***not*** be read from the specification into the claims as Kraft urges this Court to do.

See Comark, 156 F.3d at 1186.  The court should "not import limitations into the claims from

examples or embodiments appearing only in a patent's written description, even when the

specification describes very specific embodiments of the invention or even describes only a

single embodiment." JVW Enters., Inc. v. Interact Accessories, Inc.,424 F.3d 1324, 1335 (Fed.

Cir. 2005) (citing Phillips, 415 F.3d at 1323).  Yet that is exactly what Kraft urges the Court to

do.

Kraft's proposed construction improperly limits the claims of the '762 patent to

cartridges with only two chambers. Nothing in the claim language or the specification supports

importation of such a limitation.  To the contrary, the specification explains that the cartridge can

include spaces other than the first and second chambers through which liquid can flow.  For

example, the '762 patent explains that "the filter element defines a first chamber "A" separate

from a second chamber "B", the latter being in communication with open channels separating the

support ribs 12d." A8, col. 3, ll. 16-19; see also Canon, 134 F.3d at 1089-90.  Thus one of the

only two embodiments described in the specification of the '762 patent, shows that the claimed

cartridge is not restricted to only two chambers and that there are other parts of the cartridge,

-19-

such as the open channels between the ribs, through which liquid can flow other than the first and second chambers. See Vitronics Corp., 90 F.3d at 1583 (holding that an interpretation of the claims that reads out a preferred or only embodiment in the specification is rarely, if ever, correct); see also Canon, 134 F.3d at 1089-90 (rejecting limitations on the claim term "first chamber" that would have restricted subdividing the chamber).

Similarly, the '762 patent teaches that a chamber can be further subdivided into sub-chambers. For example, the "wells" shown in the second chamber depicted in Figure 7 of the '762 patent are a part of the second chamber that has been subdivided into a sub-chamber. See A8, col. 4, ll. 8-16 ("The back wall 42 is contoured and the upper rim 48 is recessed to provide a well 56 opening towards the interior of the container. . . **with the well 56 opening into and forming a part of chamber B** [the second chamber]"); figs. 7, 12; see also Canon, 134 F.3d at 1089-90.

The Federal Circuit reached precisely this conclusion in Canon, addressing a strikingly similar issue. In that case, the claim language likewise called for a "cartridge" that had "a partition . . . **to divide said container into a first chamber and a second chamber.**" 134 F.3d at 1089-90. The defendant argued (as Kraft does here) that multiple chambers or sub-chambers could not all be considered part of the "first chamber." The Federal Circuit disagreed, holding that plaintiff's construction was correct:

> We agree with Canon that the claimed "first chamber" may be subdivided into multiple ink chambers. . . [M]ultiple interconnected ink chambers . . . can collectively comprise the "first chamber" of claim 1.

Id. at 1090. Here, too, the "first chamber" of the claimed cartridge may have multiple sub-parts (such as a water inlet area, a manifold area, etc.). Just as in Canon, the fact that the "first

-20-

chamber" of the cartridge may be partitioned into multiple areas does not preclude those areas from collectively constituting the "first chamber."

Kraft's proposed construction also improperly limits the claims of the '762 patent to cartridges where the filter is the only structure in the interior of the cartridge. Nothing in the claim language or the specification supports importation of such a limitation. Indeed, the specification expressly provides for other structures in the interior of the cartridge that define a chamber, such as the "ribs" which support the permeable filter paper in one of the embodiments described in the '762 patent. (See e.g., '762 Patent at A8, col. 3, ll. 9-11). That is, as discussed above, the second chamber B is defined within the interior of the cartridge by the ribs alone. Accordingly, the '762 Patent itself does not describe that the first and second chambers are defined only by the filter element and the filter element alone.

This point too is reinforced by the Federal Circuit's decision in Canon, which in a similar context confirmed that the presence of subdividers within the first chamber is merely an additional component that does not avoid infringement.

> Whether called a stiffening rib or a partition, the piece of plastic in Nu-Kote's cartridge is simply an additional component added inside the "first chamber" that does not prevent the cartridge from falling within the scope of the claim.

Canon, 134 F.3d at 1090.

Finally, Kraft's proposed "enclosed space" limitation[9] comes out of nowhere and is unsupported by the intrinsic record. It is not even clear how these "enclosed spaces" are supposed to be formed in the cartridges. Indeed, as pointed out above, one of the only two embodiments described in the specification explains that "the filter element defines a first chamber "A" separate from a second chamber "B", **the latter being in communication with**

---

[9] See Joint Claim Construction Chart at 3.

**open channels separating the support ribs** 12d." ('762 Patent at A8, col. 3, ll. 16-19). If the second chamber can be in communication with open channels, it evidently need <u>not</u> be an "enclosed space." It would be legal error to construe the claims in a manner that does not even read onto one of the two embodiments depicted in the patent itself. <u>Vitronics Corp.</u>, 90 F.3d at 1583 (holding that an interpretation of the claims that fails to read onto a preferred embodiment in the specification is rarely, if ever, correct).

For the above reasons, the Court should reject Kraft's effort to read additional limitations into the claims. Indeed, no construction of these additional terms is necessary; the words adequately convey their meaning to a person of ordinary skill in the art. If, however, the Court were inclined to construe these terms, a correct restatement of "a filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers" would be: a filter that lies in the flow path between the first and second chambers (as construed above). This construction is supported by the specification. (<u>See</u> '762 Patent at A8, col. 4, ll. 11-22; col. 3, ll. 28-32; <u>see also</u> '762 Patent at A7-A8 at col. 1, l. 66 – col. 2, l. 4; col. 3, ll. 9-19; col. 4, ll. 31-33; Figures 4-5, 7).

In summary, the claim language "first and second chambers" should be construed in light of the specification and the expressly stated purpose of the invention such that the "first chamber" is the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter, and the "second chamber" is the part of the cartridge out of which the beverage flows after having passed through the filter.

- 22-

### C.    "a second section overlying said second chamber"

| Language from Claims 1 and 10 that Kraft Suggests Requires Construction | Keurig's Position |
|---|---|
| and a second section overlying said second chamber | No formal construction needed.<br><br>If construction is deemed necessary, it should be construed to mean a portion of the lid positioned over the second chamber such that it can be pierced to allow outflow of the beverage from the container. |

Kraft presses the Court for a construction of this additional straightforward phrase. No such construction is needed. As the Federal Circuit has repeatedly emphasized, not every claim term (even if disputed) must necessarily be rewritten by the Court during the claim construction process. Claim construction "is not an obligatory exercise in redundancy" and the trial court need not "repeat or restate every claim term in order to comply with the [Markman] ruling." U.S. Surgical, 103 F.3d at 1568. Rather, claim construction is necessary only when the meaning or scope of technical terms and words of art is unclear. Accordingly, district courts routinely limit the number of claim terms they will construe to those genuinely necessary to assist the fact finder in understanding language not otherwise clear on its face.

Moreover, Kraft's proposed construction is legally erroneous, as it seeks to add limitations that are found nowhere in the claim language. Kraft's construction adds the limitation "directly" to the claim in an attempt to require that the second chamber directly abut the lid and that no other sub-chamber or other structure be positioned in the cartridge adjacent the section of lid where the outflow piercing is made. Yet nothing in the claims supports importing such a limitation from the specification. To the contrary, as detailed above, the specification explains that the second chamber can be further subdivided into a sub-chamber such as a "well" and that the beverage can flow out of the cartridge from this sub-chamber

-23-

"well." (See '762 Patent at A8, col. 4, ll. 8-16, figs. 7, 12, 13). It would be legal error in light of Canon to limit the arrangement of the chambers of the cartridge as Kraft urges. See e.g., '762 Patent at A8, col. 3, ll. 16-19, col. 4, ll. 8-16, figs. 7, 12; see also Canon, 134 F.3d at 1089-90. For the same reasons that the Federal Circuit, in Canon, rejected importing such limitations into the claim term "first chamber," this Court should reject Kraft's attempts to do the same in this case. Canon, 134 F.3d at 1089-90.

Likewise, Kraft improperly attempts to import the limitation that "only the permeable material and the lid cover the second chamber at said region." Nothing in the claims supports importing such a limitation from the specification. The claim language says "filter" when it means "filter" and "lid" when it means "lid." There is absolutely nothing in the claims suggesting that both of these structures must cover the second chamber, nor that those are the only things that can cover the second chamber. All it says is that the cartridge has a certain section of the *lid* overlying the second chamber. It would be legal error to import any further limitations, such as Kraft's proposed requirement that part of the **filter** overlies the second chamber, or that **nothing but** the lid overlies it. See JVW Enters., 424 F.3d at 1335 (holding that courts should "not import limitations into the claims from examples or embodiments appearing only in a patent's written description, even when the specification describes very specific embodiments of the invention or even describes only a single embodiment.")

In sum, no construction of the stated phrase is needed, as the words adequately convey their meaning to a person of ordinary skill in the art. If the Court were inclined to construe the phrase "a second section overlying said second chamber" it would simply be: "a portion of the lid positioned over the second chamber such that it can be pierced to allow outflow of the

-24-

beverage from the container." This construction is supported by the specification. (See '762 Patent at A8, col. 3, ll. 20-25; ll. 43-48; col. 4, ll. 8-16).

## V.     CONCLUSION

For the stated reasons, Keurig respectfully requests that the Court adopt the above claim interpretations to govern the future course of this action.

Dated: October 15, 2007                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
Chad S.C. Stover (No. 4919)
*cstover@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

DB02:6301796.1                                                                065927.1001

## CERTIFICATE OF SERVICE

I, Chad S.C. Stover, Esquire, hereby certify that on October 15, 2007, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> *rhorwitz@potteranderson.com*
> David E. Moore, Esquire
> *dmoore@potteranderson.com*
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street, 6th Floor
> Wilmington, Delaware 19801

Additionally, I hereby certify that on October 15, 2007, copies of the foregoing document were served by hand delivery and email on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

### BY E-MAIL

> David Schlitz, Esquire
> *david.schlitz@bakerbotts.com*
> Baker Botts L.L.P
> The Warner
> 1299 Pennsylvania Ave., NW
> Washington, D.C. 20004-2400.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> John W. Shaw (No. 3362)
> *jshaw@ycst.com*
> Chad S.C. Stover (No. 4919)
> *cstover@ycst.com*
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302)-571-6600
> *Attorneys for Plaintiff Keurig, Incorporated*