IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 07-17 (GMS) |
| | ) |
| KRAFT FOODS GLOBAL, INC., | ) **JURY TRIAL DEMANDED** |
| TASSIMO CORPORATION, and | ) |
| KRAFT FOODS INC., | ) |
| | ) |
| Defendants | ) |

### DEFENDANTS' ANSWERING CLAIM CONSTRUCTION BRIEF

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700

Dated: November 5, 2007
829848 / 31118

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel: 302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo Corporation,*
*and Kraft Foods Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I. ARGUMENT ..................................................................................................................... 1

    A. Plaintiff's Proposed Construction of "Piercable" Should Be Rejected .................. 1

        1. Piercable Modifies "Section Of Said Lid," Not "To Accommodate" .................................................................................................. 2

        2. Kraft's Proposed Construction Does Not Render The Term "Piercable" Meaningless In The Context Of The Disposable Beverage Cartridge Art ............................................................................... 2

        3. A Construction Requiring "Piercable" To Mean "Pierced . . . Without Leakage" Is Contrary To The Patent Specification ...................... 3

        4. A Construction Requiring "Piercable" To Mean "Designed To Be Pierced . . . Without Leakage" Is Contrary To The Patent Specification ........................................................................................... 5

        5. Plaintiff Misuses Kraft Foods R&D Inc.'s Counsel's Argument In The European Patent Office With Regard To A Different Invention ......... 6

    B. Plaintiff Construes "First Chamber" And "Second Chamber" Out Of Context ................................................................................................................. 8

    C. Plaintiff Asks Court To Ignore Clear Disclaimer In Prosecution History When Construing "A Second Section Overlying Said Second Chamber" ........... 11

II. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*,
    134 F.3d 1085 (Fed. Cir. 1998)..................................................................10

*Monsanto Co. v. Bayer Bioscience N. V.*,
    363 F.3d 1235 (Fed. Cir. 2004)....................................................................7

*Nazomi Comms., Inc. v. Arm Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005)....................................................................6

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
    457 F.3d 1284 (Fed. Cir. 2006)....................................................................6

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...................................................3

*Renishaw, P.L.C. v. Marposs Societa' Per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)....................................................................9

*Seachange Int'l, Inc. v. C-Cor Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)..................................................................11

Defendants submit this brief in response to "Keurig Incorporated's Opening Claim Construction Brief." For the reasons set forth below, Plaintiff's proposed claim constructions for the disputed term of U.S. Patent No. 6,607,762 to Lazaris *et al.* ("the '762 Patent") should not be adopted.

I.   **ARGUMENT**

   A.   **Plaintiff's Proposed Construction of "Piercable" Should Be Rejected**

Plaintiff's proposed construction of "piercable" should be rejected because it rests on three faulty premises: (1) that the term "piercable" is an adjective that modifies "to accommodate," (2) that Kraft's proposed construction is so broad as to render the term "piercable" meaningless, so the term must be narrowed by introducing the concept of "pierced . . . without leakage," and (3) that the specification describes that the lid must be designed to be pierced so as to form a particular type of seal onto an inlet and outlet avoiding leakage. The specification and the claims belie Plaintiff's assertions. Plaintiff's construction also should be rejected because Plaintiff's use of the subjective word "designed" in its construction improperly defines the piercability of the lid on what someone intended rather than the physical property of the lid. In addition, Plaintiff's argument that a statement made in the context of the prosecution of an unrelated Kraft European patent application supports its construction has no basis in fact and, furthermore, such extrinsic evidence cannot change the clear meaning of the claim terms evinced by the intrinsic evidence.

### 1. Piercable Modifies "Section Of Said Lid," Not "To Accommodate"

Claim terms have to be construed in the context of the claim and the patent as a whole. Thus, "piercable" must be construed in the larger context of the claim language "the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber" and "the second section of said lid being piercable to accommodate an outflow of the beverage from said second chamber."

It is evident from this claim language that plaintiff is wrong in its assertion that "piercable" modifies "to accommodate". (Pl.'s Br. 11.) "Piercable" describes and modifies "section of said lid" in each phrase. The claims provide "the [first/second] section of said lid being piercable to accommodate [flow]." This language expresses a physical quality of the two lid sections; they are made of a material that is physically piercable. This is confirmed by the specification, in which the lid sections are described and characterized by the physical quality of being piercable. A7, Col. 2, Lines 6-7; A8, Col. 3, Lines 33-34; Col. 4, Lines 48-49.

### 2. Kraft's Proposed Construction Does Not Render The Term "Piercable" Meaningless In The Context Of The Disposable Beverage Cartridge Art

In the context of this patent, titled "Disposable Single Serve Beverage Filter Cartridge," containers and lids are "piercable," if they are capable of being pierced by the tubular inlet and outlet probes used to pierce the lid and the container in this art. A7, Col. 1, Lines 18-30. The '762 Patent explains that in this art even a "relatively rigid plastic" container is "piercable." *Id.*, Col. 1, Lines 18-22. The applicant sought and received breadth with regard to the term

2

"piercable," and the process of claim construction should not be used to narrow the claims to save them from the prior art.[1]

Interestingly, Keurig now argues that the ordinary meaning of "piercable" cannot be used because "just about anything is theortically piercable" and thus construing the words to mean that the lid is capable of being pierced would render the claim indefinite. (Pl.'s Br. 10). Yet during prosecution of the patent, the examiner rejected the claims because the term "yieldable piercable" was indefinite "since nearly any type of material can be pierced in some fashion." A12. Keurig did not make any of the limiting arguments it now makes. Instead, it argued that the term "yieldably piercable" was presumably considered by the U.S. Patent and Trademark Office ("PTO") as being understood by those skilled in the art because of its inclusion in U.S. Patent No. 5,840,189 to Sylvan *et al.* ("the '189 patent"), in which both the container and the lid are "yieldably piercable." A20; A41 Col. 2, Lines 17-21. The applicants amended their claims by deleting "yieldably" and the claims were allowed.

### 3. A Construction Requiring "Piercable" To Mean "Pierced . . . Without Leakage" Is Contrary To The Patent Specification

"Piercable" was not intended to signify "pierced . . . without leakage" as Plaintiff now suggests. As discussed above, the term "piercable" has meaning within the context of the '762 Patent. The specification notes that in prior art single serve beverage filter cartridges such as disclosed in the '189 Patent, a rigid plastic, cup-shaped container covered by a laminated plastic

---

[1] Evidence of the breadth sought by the applicant can be seen with reference to claims 1 and 2. Claim 1 puts no limits on the term "piercable." Claim 2 specifies that the lid is less resistant to being pierced than the container. A9, Col. 5, Lines 13-15. Piercable therefore was intended to broadly encompass rigid containers as well as thin lids, as long as they were capable of being pierced in the context of disposable beverage containers. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

3

and foil lid is subdivided by a filter into first and second chambers. A41, Col. 2, Lines 6-21; A7, Col. 1, Lines 15-27. Both the container and the lid are piercable, and the lid and container bottom are pierced from opposite directions during a brewing cycle. A7, Col. 1, Lines 15-34. The '189 Patent states that the container is "yieldably piercable . . . to accommodate the outflow of the beverage from the second chamber" and claims that the container is "yieldably piercable to accommodate an outflow of said beverage from said second chamber." A41, Col. 2, Lines 16-21; A43, Col. 5, Lines 1-3. But the '762 Patent asserts that because the second chamber of the '189 Patent must be accessed by piercing the bottom of the container, there is leakage around the outlet probe. A7, Col. 1, Lines 39-50. Thus, as used in the '189 Patent, "piercable to accommodate an outflow of the beverage" expresses that the container or lid is capable of being punctured by an inlet or outlet probe, but does not also express without leakage. The applicants' statement to the PTO during prosecution indicates that "piercable to accomodate" has the same meaning in the '762 Patent as it does in the '189 Patent. A20.

In the '762 Patent, the lid is no different from the prior art lid except that it overlies both chambers. Therefore, both the first and second chambers can be accessed from the same side through the lid. That is the invention. There is absolutely nothing in the patent to indicate that anything is done to the lid to prevent leakage when the inlet and outlet probes are inserted. In both embodiments described and depicted in the specification, as in the prior art, the lid is simply a material capable of being pierced. There is nothing to indicate that the lid "must be designed to be pierced so as to form a particular type of seal onto an inlet and outlet, avoiding leakage" as asserted by Plaintiff. (Pl.'s Br. 10). The Court ought not narrow the claims by limiting the meaning of "piercable" to "pierced . . . without leakage," when there is no support for this construction in the '762 Patent's specification or claims.

4

### 4. A Construction Requiring "Piercable" To Mean "Designed To Be Pierced . . . Without Leakage" Is Contrary To The Patent Specification

Suggesting a connection between "piercable" and the requirement of being "designed to be pierced . . . without leakage" completely distorts the meaning of the claims and has no support in the patent. The term "designed" is nowhere found in the intrinsic record. The limitation "designed to be pierced . . . without leakage" completely rewrites the claims in a way that totally distorts the ordinary meaning of the claim language. In making its argument, Plaintiff sets forth a dictionary definition of "accommodate," which does not include the word "designed." Plaintiff states that "to accommodate" means "to fit, adapt, or make suitable." (Pl.'s Br. 11.) In the context of the claim element, the lid is capable of being pierced making it suitable to allow an inflow of liquid into the first chamber and an outflow of the beverage from the second chamber. There is nothing in the meaning of "to accommodate" that expresses that the lid is designed [made with purpose and intent[2]] to be pierced without leakage.

If Plaintiff's construction is accepted, the jury cannot decide that a lid of thin plastic or aluminum foil is "piercable" without also deciding if it was "designed to be pierced." Thus, a cartridge identical to the one in the claims, with a filter element subdividing the interior of the container into first and second chambers, and with a laminated plastic and foil lid, just like the one described in the '762 Patent, having a section over each chamber, would not be covered by the claim under Plaintiff's proposed construction if the lid was not originally **designed** to be pierced for both inflow and outflow of liquids. But this is exactly the consequence Plaintiff seeks by its construction. Plaintiff seeks to avoid invalidating prior art that has every structural element of the claim, but was made with the intent of being pierced from the bottom and the top.

---

[2] Definition of "designed" from WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 612 (2002). A203.

5

In particular, Plaintiff has been informed of a prior art cartridge, which is nearly identical in structure to the first embodiment disclosed in the '762 Patent. It comprises an outer container with an access opening, which is closed by a foil laminate lid having two sections, one overlying the first chamber and the other overlying the second chamber. The first section of the lid is piercable to accommodate the inflow of liquid into the first chamber for infusion with coffee grounds, and the second section of the lid is piercable to accommodate the outflow of brewed coffee. However, while both sections of the lid overlying the first and second chambers are foil, and thus "piercable," allowing for an inflow of liquid into the first chamber and outflow of the beverage from the second chamber, the lid was not made with the purpose and intent of being pierced to allow an inflow of liquid into the first chamber. Thus, under Plaintiff's distorted construction, a structure identical in all respects to the claimed invention would not anticipate the claim because of the original intent as to its use. The Plaintiff should not be allowed to now distort the claim language to avoid the prior art. *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) (citing *Nazomi Comms., Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (Fed. Cir. 2005)).

### 5. Plaintiff Misuses Kraft Foods R&D Inc.'s Counsel's Argument In The European Patent Office With Regard To A Different Invention

Plaintiff resorts to extrinsic evidence to change the meaning of the claim language apparent from the intrinsic evidence. It quotes a statement made by Kraft Foods R&D Inc.'s outside European Patent Counsel to the European Patent Office in the context of a European application that is unrelated to the '762 Patent.[3] (Pl.'s Br. 13-14.) But the statement is not even

---

[3] Plaintiff cites several cases for the proposition that statements made in the European Patent Office are relevant to claim construction in a United States patent infringement case. All of those cases address the issue of whether statements made in the European Patent Office with regard to a counterpart application for the same invention at issue in the United States litigation

6

about what it means for the lid itself to be piercable. It is about the plastic body of the cartridge. The quote starts, "It is a requirement of the independent claims of the present application that **the cartridge and the lid** are such that the lid is suitable for being piercable to accommodate an inflow of aqueous medium into the manifold chamber." A116 (emphasis added). It goes on to explain why **the cartridge body** in the prior art was not suitable:

> **This is not the case in the design of cartridge** shown in D1 and D2. With reference in particular to Figure 5 of D1 it can be seen that the **underside portion of the body 2 of the cartridge** in the vicinity of the inlet 26 **is not designed to make it suitable** for the laminate in that region to be pierced to form an inlet. In particular, **no suitable element is provided against which the inlet piercer on a beverage preparation machine may abut when the inlet is formed.** As such, if the design of cartridge shown in D1 and D2 was pierced through the lid, a suitable inlet would not be formed since there would be a large degree of leakage from the underside of the cartridge.

*Id.* (emphases added).

The issue addressed in this quotation is not part of the invention of the '762 Patent. Nevertheless, Plaintiff argues that the claim language being addressed is very similar. But as the Federal Circuit has noted, similar terms can have different meanings depending on the specifics of each patent. *Monsanto Co. v. Bayer Bioscience N. V.*, 363 F.3d 1235, 1244 (Fed. Cir. 2004).

---

are relevant to how a party construed the words. Those cases do not opine that statements made in the context of an application for another invention are relevant.

### B. Plaintiff Construes "First Chamber" And "Second Chamber" Out Of Context

Plaintiff asks the Court to construe "first chamber" and "second chamber" in isolation, without regard to the context of the claim element in which they appear or the rest of the claim. The '762 Patent illustrates the first and second chambers "A" and "B", respectively, in the two embodiments of Figures 3 and 10 below.

The patent describes a beverage filter cartridge comprising an outer container 12 (38) covered by a lid 16 (36), and a filter element 14 (34), which "defines a first chamber "A" separate from a second chamber "B" . . . ." A8, Col. 3, Lines 16-18. The patent states that the filter is "configured, dimensioned and operatively positioned to subdivide the interior of the container into first and second chambers "A," "B" . . . ." *Id.*, Col. 4, Lines 12-15.[4] The claim



FIG. 3    FIG. 10

language mirrors this structural description: "a filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers." In the context of the claims and the patent specification, the first and second chamber are separate

---

[4] Plaintiff erroneously asserts that in the first embodiment in the '762 Patent the second chamber is defined within the interior of the cartridge by the ribs alone. (Pl.'s Br. 21.) It is the filter element that creates the second chamber. As shown in Figure 4 of the '762 Patent, there would not be separate first and second chambers without the filter element. A3. It is the configuration and arrangement of the filter element within the interior of the container that creates the second chamber.

8

structural spaces within the container created by the subdividing the interior of the container with a filter element.

The claim also specifies a soluble beverage medium stored in the first chamber, so the claim itself identifies the first chamber as the place where a soluble beverage medium is stored. The claim further specifies that outflow of beverage to the exterior of the container is from the second chamber. In this context, the first and second chambers are structural elements; namely enclosures within the container, one to store the beverage medium and one from which the beverage flows to the exterior of the container. Kraft's proposed construction therefore represents "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention . . . ." *Renishaw, P.L.C. v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Plaintiff, on the other hand, attempts to shape the construction of these terms with broad, functional phrases tailored to their infringement case, but without regard to the context in which the "chambers" appear in the claims and specification. Plaintiff creates an entirely functional "flow-based" construction by ignoring the claim language it chose during prosecution and now recasting that language by artificially combining widely disparate sections of the specification. For example, Plaintiff takes part of one sentence of the patent specification describing the structure of the chambers and, through creative writing, makes it appear as though that sentence goes with a thought expressed 20 lines later concerning the operation of the cartridge during a brewing cycle. (Pl.'s Br. 17-18.) Yet, the claims conspicuously avoid claiming anything but the structure of a beverage cartridge and, thus, contain nothing about the brewing cycle relied upon by Plaintiff to support its functional construction. It would be improper to define the first and second chambers functionally when the claims and specification define them structurally.

9

Under Plaintiff's flow-based claim construction, everything upstream of the filter is the "first chamber" and everything downstream of the filter is the "second chamber". (Pl.'s Br. 2.) This construction is in conflict with the first embodiment of the '762 Patent, in which downstream of the filter there are channels that are in communication with, but not part of, the second chamber. A8, Col. 3, Lines 17-19; A2, FIG. 3. This is recognized by Plaintiff at page 16 of its Opening Brief, where it identifies the second chamber as a defined structural space, separate from the channels, and its discussion at page 19, where it explicitly identifies the open channels between ribs 12$d$ as separate from the second chamber "B".

Some single serve beverage cartridges, including the accused devices, have more than the two chambers specified in the '762 Patent. These additional chambers are not formed by the filter element and have purposes other than the purposes of the first and second chambers specified in the patent. Plaintiff's flow based construction of "first chamber" is so broad that it encompasses not only the chamber formed by the filter element and in which the beverage medium is stored, but also any other chamber through which the liquid flows before reaching the filter. Plaintiff attempts to justify this overly broad construction by arguing that the "first chamber" can be divided into sub-chambers. Its primary support for this argument is a decision in a case concerning an unrelated patent covering a different invention in another field.[5] Plaintiff also relies on Figure 7, a second embodiment of the '762 Patent, as support for its argument that the first chamber can be divided into several chambers. As more clearly seen in Figures 10 and 13, the well 56 is part of the enclosed space B that is created by the filter element 34, and from which the beverage exits the cartridge. A5-A6. It is not a separate and distinct chamber from B.

---

[5] In that case, the specification of the patent-in-suit explicitly provided that in one embodiment "'the ink chamber is separated into four separate ink chambers.'" *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1090 (Fed. Cir. 1998).

Accordingly, Plaintiff's functional "flow-based" construction is overly broad and fails to comport with the specification and the claim language. Thus, it should not be adopted.

### C. Plaintiff Asks Court To Ignore Clear Disclaimer In Prosecution History When Construing "A Second Section Overlying Said Second Chamber"

Keurig ignores the intrinsic record of '762 Patent, which includes the prosecution history. During prosecution the applicants limited their claims to cartridges wherein the second section of the lid **directly** overlies the second chamber, such that there is no chamber in between said portion of the lid and said second chamber. *See, e.g., Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) ("Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language."). Distinguishing the claims of the '762 Patent over the prior art '189 Patent, the applicants stated that in the '189 Patent "the cover 16 overlies the inner chamber 34 but not the outer chamber 36." A20. As shown in Figure 2 of the '189 Patent, the lid 16 does not directly overlie chamber 36 because chamber 34 is interposed between the lid 16 and chamber 36. A39. Thus, the applicants clearly used "overlies" to mean directly overlies, as opposed to indirectly overlies. Accordingly, a cartridge in which the lid indirectly overlies the second chamber is not within the scope of the claims of the '762 Patent. Plaintiff cannot recapture this claim scope by having the Court adopt a claim construction that is broad enough to cover a lid that indirectly overlies the second chamber.

## II.  CONCLUSION

For all the reason stated above, this Court should adopt Defendants' proposed constructions for the disputed terms of the '762 Patent.

          POTTER ANDERSON & CORROON LLP

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700

Dated: November 5, 2007
829848 / 31118

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, DE  19899-0951
    Tel: 302-984-6169
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo Corporation,*
*and Kraft Foods Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 5, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 5, 2007, I have Electronically Mailed the document to the following person(s):

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391
jshaw@ycst.com
kkeller@ycst.com

Michael A. Albert
Michael N. Rader
Laura Topper
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
malbert@wolfgreenfield.com
mrader@wolfgreenfield.com
ltopper@wolfgreenfield.com

By: /s/ David E. Moore
  Richard L. Horwitz
  Kenneth L. Dorsney
  Potter Anderson & Corroon LLP
  Hercules Plaza, 6th Floor
  1313 N. Market Street
  P.O. Box 951
  Wilmington, DE 19899-0951
  (302) 984-6000
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com

829848 / 31118