IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br>TASSIMO CORPORATION, and<br>KRAFT FOODS INC.,<br><br>Defendants. | Civil Action No. 07-017 (GMS) |

## KEURIG, INCORPORATED'S ANSWERING CLAIM CONSTRUCTION BRIEF

John W. Shaw (No. 3362)
jshaw@ycst.com
Chad S.C. Stover (No. 4919)
cstover@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

## **TABLE OF CONTENTS**

I. SUMMARY ........................................................................................................................1

II. CONSTRUCTION OF '762 PATENT CLAIM TERMS AND PHRASES ......................2

    A. Kraft's Proposed Construction of "Piercable"
       Would Render that Limitation Meaningless ...........................................................2

    B. Kraft's Proposed Construction of "First and Second Chamber"
       Improperly Imports Limitations into the Claim Language ....................................7

    C. Construction of the Phrase "a Second Section
       Overlying said Second Chamber" Is Unnecessary ...............................................13

III. CONCLUSION ................................................................................................................16

## TABLE OF AUTHORITIES

A.B. Dick Co. v. Burroughs Corp.,
    713 F.2d 700 (Fed.Cir.1983) ...................................................................................9

Advanced Display Sys., Inc. v. Kent Sate Univ.,
    212 F.3d 1272 (Fed. Cir. 2000)..............................................................................10

Canon Computer Sys., Inc. v. Nu-Kote Intern., Inc.,
    134 F.3d 1085 (Fed. Cir. 1998)..................................................................... 11, 13-14

Cardiac Science, Inc. v. Koninklijke Philips Elec. N.V.,
    2006 WL 1050629 (Fed. Cir. 2006).........................................................................6

Comark Commc'ns, Inc. v. Harris Corp.,
    156 F.3d 1182 (Fed. Cir. 1998).................................................................................9

Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,
    279 F.3d 1022 (Fed. Cir. 2002).................................................................................6

Gillette Co. v. Energizer Holdings, Inc.,
    405 F.3d 1367 (Fed. Cir. 2005),..........................................................................4, 10

Liposome Co. v. Vestar,
    1994 WL 738952 (D. Del. Dec. 20, 1994)................................................................4

Medrad, Inc. v. MRI Devices Corp.,
    401 F.3d 1313 (Fed. Cir. 2005).................................................................................3

Nikken USA, Inc. v. Robinsons-May, Inc.,
    51 Fed. Appx. 874 (Fed. Cir. 2002)...................................................................... 5-6

Omega Eng'g, Inc. v. Raytek Corp.,
    334 F.3d 1314 (Fed. Cir. 2003)...............................................................................14

Pause Tech. LLC v. TiVo Inc.,
    419 F.3d 1326 (Fed. Cir. 2005).................................................................................5

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005)................................................................... 4-5, 8, 14

Power Mosfet Tech., L.L.C. v. Siemens AG
    378 F.3d 1396 (Fed. Cir. 2004).................................................................................3

Sorenson v. Int'l Trade Comm'n,
    427 F.3d 1375 (Fed. Cir. 2005)...............................................................................14

UV Coatings, Ltd. v. Sico, Inc.,
    250 F.3d 763 (Fed. Cir. 2000)...................................................................................6

Vitronics Corp. v. Conceptronic, Inc.,
    90 F.3d 1576 (Fed. Cir. 1996).................................................................. 7-8, 10, 12, 14

I.  **SUMMARY**

1. Keurig's proposed construction of the claim language "piercable to accommodate an inflow of liquid" and "piercable to accommodate an outflow of beverage" places these phrases within the proper context of the claim itself and the patent specification. The word "piercable" modifies the phrases "**to accommodate an inflow** of liquid" and "**to accommodate an outflow of beverage**," and thus the claim itself requires that the lid must be designed to be pierced **in a manner so as to create an appropriate inflow or outflow mechanism**. Likewise, the patent specification emphasizes that the pierced lid must fulfill the function of avoiding leakage.

By contrast, Kraft's proposed construction of the isolated adjective "piercable" as <u>anything</u> "capable of being pierced" takes the language out of context and disregards not only the stated objectives of the invention but also the claim language which modifies "piercable." Kraft has <u>admitted</u> elsewhere that such a construction of this language would be wrong, and the Federal Circuit has repeatedly rejected the idea that words ending in "-able" should be construed so broadly, noting that doing so would render them effectively meaningless. Instead, "piercable" must be read in context to cover only devices designed to accomplish the stated goal (including creating an inflow or outflow mechanism and avoiding leakage).

2. Keurig's proposed construction of the claim language "first and second chambers" is straightforward and based on the patent specification: the part of the cartridge upstream of the filter is the "first chamber," while the part downstream of the filter is the "second chamber."

By contrast, Kraft relies primarily on extrinsic evidence to import limitations into this claim language that find no support in the patent – and, in fact, directly contradict the intrinsic record. Engrafting the limitations requested by Kraft onto the claims would be improper as a matter of law.

3. The remainder of the claim language in the '762 patent is clear on its face and needs no special "construction" or re-wording by the Court. Kraft's proposed construction, moreover, again seeks to add limitations not present in the claim language.

## II. CONSTRUCTION OF '762 PATENT CLAIM TERMS AND PHRASES

### A. Kraft's Proposed Construction of "Piercable" Would Render that Limitation Meaningless.

"Piercable to accommodate an inflow of liquid" should be construed to mean "designed to be pierced to form an inlet that allows an inflow of liquid without leakage." Likewise, "piercable to accommodate an outflow of beverage" should be construed to mean "designed to be pierced to form an outlet that allows an outflow of beverage without leakage." This proposed construction places the word "piercable" in its proper context within the claim (which requires that the piercing create appropriate inflow and outflow paths) and the patent's written description (which specifies the avoidance of leakage as a key object of the invention).

Kraft proposes to isolate a single adjective – "piercable" – from within the phrase and to construe it, alone, as meaning merely "capable of being pierced." The Federal Circuit has repeatedly rejected taking words out of the context defined by the claim itself. Moreover, although Kraft admits that an object of the claimed invention is to allow same-side piercing of a cartridge while avoiding leakage,[1] its proposed construction directly contradicts this object.

Kraft's overly simplistic construction would render the claim limitation meaningless by allowing anything that could possibly be pierced to fall within the scope of the claims, regardless

---

[1] Kraft concedes that "the object of the claimed invention of the '762 Patent is to avoid the disadvantages caused by opposite side piercing of a cartridge's lid and container. The '762 Patent's claimed solution to these disadvantages is a cartridge in which the lid has sections overlying the first and second chambers, which are both piercable. <u>The reason for doing so is to allow inlet and outlet probes operating from the same side of the cartridge to pierce the lid.</u>" (Kraft Br. at 15-16) (emphasis added). Kraft also admits that the invention is designed to avoid the disadvantage of "leakage around the outlet probe." (<u>Id.</u> at 2).

of whether the associated claim limitations ("to accommodate an inflow" and "to accommodate an outflow") are met. Yet the "to accommodate an inflow" and "to accommodate an outflow" limitations lie at the heart of the claimed invention of the '762 patent, which is directed to **same-side piercing** of a single-serve beverage filter cartridge lid to create "a cleaner puncture and an improved seal" **that avoids leakage**.[2] Kraft ignores this objective of the claimed invention even though the Federal Circuit has emphasized that it is important to "consider the functions of an invention" when determining the meaning of the claim terms. Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005).[3]

A person of ordinary skill in the art would not view a cartridge as being functional for its intended purpose (e.g., piercable to accommodate an inflow or outflow) if the cartridge leaked significantly at the inlet or outlet. The patent itself makes this point. In the context of the patent, therefore, the claims are properly understood to require that the lid be designed to be pierced to form an inlet that allows an inflow of liquid without leakage and an outlet that allows an outflow of beverage without leakage.

Kraft's only response is that the Court, in construing this claim language, should ignore this objective because some undefined "prior art" may, according to Kraft, create a challenge to

---

[2] See '762 Patent at A7, col. 2, ll. 6-20 ("first and second lid sections are yieldably **piercable**, respectively, **from the same direction** . . . [such that the] net result is a **cleaner puncture and an improved seal**.") (emphasis added); id. at col. 1, ll. 45-50 (the specification further states that the design of prior-art cartridges "can **adversely affect the puncturing process, resulting in leakage**.") (emphasis added).

[3] While admitting that the patent is directed at solving the prior-art disadvantage of leakage around the outlet probe (see Kraft Br. at 2, 15), Kraft refuses to acknowledge that this stated purpose helps clarify what the claim language means, as indeed the phrases "to accommodate an inflow" and "to accommodate an outflow" make clear. It would be legal error to construe these "to accommodate..." phrases as adding nothing to the meaning of "piercable." Power Mosfet Tech., L.L.C. v. Siemens AG, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("Interpretations that render some portion of the claim language superfluous are disfavored.").

-3-

the patent's validity. (Kraft Br. at 14-15). As a matter of law, however, it would be error to construe the claims based on this consideration. Phillips v. AWH Corp., 415 F.3d 1303, 1327 (Fed. Cir. 2005) (when construing claims, validity arguments are to be considered only in limited circumstances that do not apply here).

Kraft itself has previously acknowledged the implausibility of its current position. Indeed, Kraft took the opposite position (i.e., the very position Keurig takes here) when arguing nearly identical claim language before the European Patent Office. In that proceeding, Kraft argued – successfully – that such language only applies to cartridges designed to be pierced in a manner that creates a "suitable inlet" (or outlet) avoiding a "large degree of leakage."[4]

Kraft's admission that Keurig's position is correct should be dispositive. At a minimum, it is compelling evidence of how a person of ordinary skill in the art would read the disputed claim language. A court in this District has previously held that such "statements before the European Patent Office ... are relevant as evidence of how [a party] had in fact read the words of the claim at a time when it was not looking at them as a necessary step in building a claim for relief." Liposome Co. v. Vestar, 1994 WL 738952 at *14 (D. Del. Dec. 20, 1994); see also Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1374 (Fed. Cir. 2005) (prior statement to EPO regarding similar claim language constituted a "blatant admission");

---

[4] Explaining virtually identical language in its own patent application, Kraft acknowledged that "**pierceable in use to accommodate an inflow of aqueous medium** into the manifold chamber" and "**pierceable in use to accommodate an outflow of beverage**" meant just what Keurig here contends they mean. Specifically, Kraft distinguished certain prior-art that had been cited against it by noting that the cited reference was "**not designed to make it suitable for the laminate in that region to be pierced to form an inlet ... As such, if the design of cartridge ... was pierced through the lid, a suitable inlet would not be formed since there would be a large degree of leakage from the underside of the cartridge.**" See Response to EPO Communication at A116 (emphasis added); see also European Patent Application No. 04250384.7 at A123; EPO Communication at A113-A114; European Patent Application No. 0272922 at A125-136.

An overbroad construction akin to that advanced by Kraft in this proceeding was rejected by the Federal Circuit in one of the cases cited by Kraft in its brief. See Nikken USA, Inc. v. Robinsons-May, Inc., 51 Fed. Appx. 874, 2002 WL 31664765 (Fed. Cir. 2002). There, the Federal Circuit rejected a similar construction of "attachable," holding that "reading the limitation broadly to include **any** magnetic sheet **that could somehow be attached** ... would make everything attachable and **would render meaningless the 'attachable' limitation**." 51 Fed. Appx. at 883, 2002 WL 31664765 at *8 (emphasis added). Here, likewise, construing "piercable" as broadly as Kraft suggests would improperly render the "piercable" limitation meaningless.

The adjective "piercable" must be construed in the context of the entire claim. "Piercable" cannot be read in isolation and construed in a vacuum as Kraft suggests. "Proper claim construction ... demands interpretation of the entire claim in context, not a single element in isolation." Pause Tech. LLC v. TiVo Inc., 419 F.3d 1326, 1331 (Fed. Cir. 2005) (internal citations omitted). Read as a whole in light of the patent specification, it is clear that the lid must be designed to be pierced **so as to form** a particular type of seal at an **inlet and outlet**, avoiding leakage.[5] See Phillips, 415 F.3d at 1315 (holding that the words of the claims must "be read in view of the specification, of which they are a part").

Indeed, both of the cases cited by Kraft on the construction of claim terms ending in "-able" actually support Keurig's position. In each of those cases, the Federal Circuit examined

---

[5] Kraft's reliance on statements in the specification about the materials that can be used to make a piercable lid is misplaced. (Kraft Br. at 16-17). The cited portion of the specification simply provides examples of materials that may be used. It does not reach or address the question of whether the lid must be designed to be pierced in a particular way. By contrast, in the context at issue here, the claim language does expressly require that the lid be "pierceable **to accommodate** an inflow" or outflow. Cf. Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1031 (Fed. Cir. 2002) (holding that when the same term was used in different contexts in the claims and the specification, the context made a "subtle but significant difference").

the context of the terms in the claim language and supporting specifications and found that the "-able" terms could not simply mean "anything capable of ..." as Kraft urges, but rather must be construed in relation to their stated purpose. As noted above, Nikken found that construing "attachable" so broadly as to mean anything capable of being attached would improperly render that limitation meaningless. 51 Fed. Appx. at 883 ("[R]eading the limitation broadly to include any magnetic sheet that could somehow be attached ... would make everything attachable and would render meaningless the 'attachable' limitation."). Instead, the Federal Circuit looked to the specification and the prosecution history to discern the proper scope of the term. Id.

Similarly, UV Coatings, Ltd. v. Sico, Inc., 250 F.3d 763 (table), 2000 WL 986965 (Fed. Cir. 2000) did not construe "sprayable" so broadly as to cover anything "capable of being sprayed," but rather interpreted that claim term to require striking the surface in a "uniform" manner. 2000 WL 986965 at *2-3.[6] As in Nikken and UV Coatings, the proper scope of the word "piercable" is taken from the context of that word in the claims themselves, as well as the purpose of the invention as a whole, so as to give it the meaning that one reading the patent would fairly understand. See also Cardiac Science, Inc. v. Koninklijke Philips Elec. N.V., 2006 WL 1050629 at *36 (Fed. Cir. 2006) (applying this same contextual approach to construing a similar phrase, "alterable," as "able to be modified or changed **in the field**," rather than merely "capable of being altered").

In summary, the phrases "piercable to accommodate an inflow of liquid" and "piercable to accommodate an outflow of beverage" should be construed in the context of the entire claim and in light of one of the expressly stated purposes of the invention to mean, respectively,

---

[6] UV Coatings declined to incorporate certain other language into the construction of "sprayable" because the intrinsic record was "devoid of evidence" supporting the inclusion of such language, and statements made during prosecution demonstrated that such inclusion would have been inappropriate. Id. at *2-3.

"designed to be pierced to form an inlet that allows an inflow of liquid without leakage" and "designed to be pierced to form an outlet that allows an outflow of beverage without leakage."

### B. Kraft's Proposed Construction of "First and Second Chamber" Improperly Imports Limitations into the Claim Language.

The "first and second chambers" are defined by the patent with reference to the filter that subdivides the cartridge. Thus, "first chamber" refers to that portion of the cartridge into which the liquid is introduced and through which it flows before reaching the filter; and "second chamber" is that part of the cartridge out of which the beverage flows after having passed through the filter. This straightforward construction flows from the language of the claims and from the structure and use of the inventive cartridge. Liquid is introduced and allowed to mix with a beverage medium (such as ground coffee) in the first chamber, before passing through the filter. The second chamber, downstream of the filter, is the part from which the infused beverage can exit the cartridge.

Not content with this straightforward meaning, Kraft seeks to import several limitations that simply are not present in the patent claim language. Unable to find any support for its proposed limitations in the claims or the specification of the '762 patent, Kraft relies on extrinsic evidence, namely four _other_ patents. Kraft devotes several pages of argument to urging the Court to import limitations from these other patents into the claims of the '762 patent. Among these are limitations that: (1) the cartridge can have _only_ two chambers; (2) the chambers cannot be further subdivided; (3) the filter is the only structure in the interior of the cartridge; and (4) the chambers must be "enclosed spaces."

Nothing in the claims (or the '762 patent as a whole) limits the claims in any of these four ways. It is improper as a matter of law to import limitations into the claims from other patents. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("[E]xtrinsic evidence

-7-

... may not be used to vary or contradict the claim language."). Contrary to the well-established principle articulated in Vitronics and many other cases, the limitations that Kraft urges the Court to engraft onto "the first and second chamber" claim language directly contradict the intrinsic record of the '762 patent. Indeed, the patent makes clear that the only limitation relevant to defining the "first" and "second" chambers is that the first chamber is the "upstream" side of the filter (i.e., where the liquid enters the cartridge and mixes with the beverage medium such as coffee grounds) while the second chamber is the "downstream" side (i.e., where the beverage, after having been filtered, flows before exiting the cartridge). It is the filter that separates these two chambers, by subdividing the interior of the cartridge. The claims include no further requirements or limitations.

It is clear from the intrinsic record that the first chamber is the part of the cartridge into which the liquid is introduced and through which it flows **before** reaching the filter, while the second chamber is the part of the cartridge out of which the beverage flows (e.g., into a coffee cup), **after** having passed through the filter. The claim language itself requires such a "flow-based" construction in reciting that the "filter element [be] permeable to liquid to accommodate a **flow of the beverage from said first chamber into said second chamber.**" '762 Patent at A9, col. 5, ll. 7-9; see also Phillips, 415 F.3d 1313 (reiterating that interpretation of a patent claim begins with the claim language itself). The specification likewise supports this straightforward, flow-based understanding of the claim language, explaining that:

> **the filter element defines a first chamber "A" separate from a second chamber "B"**, the latter being in communication with open channels separating the support ribs 12d . . . [and d]uring a brewing cycle . . . the lid 16 is pierced . . . to admit hot water under pressure into chamber A for infusion with the beverage medium M. The resultant beverage passes through the fil[t]er element 14 into the channels defined between the support ribs 12d. From here, the beverage flows downwardly into chamber B from which it is extracted.

-8-

'762 Patent at A8, col. 3, ll. 16-19, 39-46 (emphasis added); see also id. at A8 at col. 4, ll. 46-48 ("liquid communication is established with the separate chambers A, B by inlet and outlet probes"); id. at col. 3, ll. 39-56; id. at col. 4, ll. 36-44; id. at A3 at fig. 5; Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("claims are to be interpreted in light of the specification and with a view to ascertaining the invention").

Accordingly, persons of ordinary skill in the art of coffee brewer cartridge design would understand the claim language "first and second chamber" to require a first chamber that is the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter, and a second chamber that is the part of the cartridge out of which the beverage flows after having passed through the filter.

Nothing in the remainder of the specification or the prosecution history precludes the presence of any extra elements. See A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir. 1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."). Thus, Kraft's attempt to add extra elements or limitations that are not in the patent itself but rather are in extrinsic evidence (see Kraft Br. at 6-12) is fundamentally flawed. Whether one or both of the "first" and "second" chambers happens to be further subdivided into subchambers; whether other things besides the filter and coffee are present in the cartridge; whether any of these spaces are "enclosed" – none of these features of a product is relevant to whether it is covered by the patent, so long as it has (at least) a first chamber and a second chamber as defined above (and a filter between the two).

Importing such limitations from the extrinsic evidence[7] is improper as a matter of law; and indeed each of these limitations contradicts the intrinsic evidence. Vitronics Corp., 90 F.3d at 1584 ("[E]xtrinsic evidence ... may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language."). Kraft's four proposed extrinsic limitations are addressed below:

1. Kraft's "only two chambers" limitation is inconsistent with basic claim construction law which provides that the presence of extra elements does not preclude infringement. E.g., Gillette, 405 F.3d at 1371-1375 (holding that claim language directed to a razor with "a group of first, second, and third blades" encompassed a razor with an additional fourth blade). Kraft's proposed limitation also conflicts with the bedrock principle that a claim interpretation that fails to cover one of the preferred embodiments shown in the specification is rarely, if ever, correct. Vitronics, 90 F.3d at 1583. In one of the embodiments expressly described in the specification of the '762 patent, the cartridge includes other parts besides the two chambers (such as open channels between the ribs, through which liquid can flow).[8] In that embodiment, the second chamber is downstream not just of the filter but of certain "ribs" through which filtered beverage flows. There are spaces between the ribs that are not part of the first or second chambers, yet are part of the interior of the cartridge. Kraft's proposed limitation is incorrect as a matter of law because it would exclude this preferred embodiment of the '762 patent.

---

[7] Although two of the patents that Kraft cites, U.S. Patent Nos. 5,325,765 and 5,840,189, are referenced in the '762 patent, they are not incorporated by reference and are not part of the intrinsic record for claim construction purposes. See Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000) (providing that incorporation by reference requires a statement clearly identifying the subject matter which is incorporated and where it is to be found). In any event, these patents do not support Kraft's argument as detailed below.

[8] See e.g., '762 Patent at A8, col. 3, ll. 16-19 ("the filter element defines a first chamber "A" separate from a second chamber "B", the latter being in communication with open channels separating the support ribs.").

2. Kraft's proposed limitation that would preclude either of the "first" or "second" chambers from being subdivided into sub-areas or sub-chambers is equally unfounded in the patent language and legally erroneous. First, the patent language itself belies Kraft's "no subdivision" limitation, as it expressly teaches that a chamber can include one or more sub-chambers, such as the "wells" shown in the second chamber depicted in Figure 7 of the '762 patent and which are described as being (at least in that embodiment) a "part of chamber B".[9] Secondly, the Federal Circuit addressed this very issue in Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085 (Fed. Cir. 1998). In that case, the Federal Circuit expressly rejected proposed limitations on the claim term "first chamber" that would have excluded a subdivided chamber. Id. at 1089-90.

3. Contrary to Kraft's "no other structures" limitation, the specification also expressly provides that structures other than the filter element may be present in the interior of the cartridge and may help define a "chamber." For example, in one embodiment (discussed above), the patent expressly discloses "ribs" that not only support the permeable filter paper but also define one edge of the second chamber.[10]

---

[9] See '762 Patent at A8, col. 4, ll. 8-16 ("The back wall 42 is contoured and the upper rim 48 is recessed to provide a well 56 opening towards the interior of the container... **with the well 56 opening into and forming a part of chamber B** [the second chamber]"); id. at A4-A5, Figs. 7, 12.

[10] See '762 Patent at A8, col. 3, ll. 9-11, 16-19; id. at A2-A3, figs. 1-5; see also Canon, 134 F.3d at 1090 (confirming that the presence of partitions within the first chamber is merely an additional component that does not avoid infringement; "[w]hether called a stiffening rib or a partition, the piece of plastic in Nu-Kote's cartridge is simply an additional component added inside the "first chamber" that does not prevent the cartridge from falling within the scope of the claim.").

4. Finally, Kraft's "enclosed space" limitation likewise appears nowhere in the patent and is inconsistent with the patent. One of the two embodiments expressly described in the specification conflicts with Kraft's "enclosed space" limitation because it explains that the second chamber can be in communication with open channels – making it clear that it need not be an "enclosed space."[11]

For the above reasons, the Court should reject Kraft's effort to read additional limitations into the claims.

Kraft's proposed construction does not even find support in the extrinsic evidence it relies upon. Not one of the four patents cited by Kraft expressly or even implicitly restricts the cartridges to only two chambers or prohibits those chambers from being subdivided or including structural elements other than the filter element. To the contrary, one of Kraft's cited patents, U.S. Patent No. 6,645,537, for example, explains that the "first and second chambers" can be made of sub-chambers, including "channels" and a "sump." See '537 Patent at A168, col. 2, ll. 30-35 ("The channels formed between the circumferentially spaced flutes [in the second chamber] serve to efficiently direct the brewed beverage downwardly towards the pierced container bottom"); id. at A169, col. 4, ll. 52-57 ("a downwardly protruding centrally disposed reduced diameter boss 218a defining an interior sump 218b [in the second chamber]"); id. at A165, fig. 10. Not one of those patents even mentions an "enclosed" space.

---

[11] See '762 Patent at A8, col. 3, ll. 16-19; Vitronics, 90 F.3d at 1583 (holding that an interpretation of the claims that fails to read onto a preferred embodiment in the specification is rarely, if ever, correct). Moreover, even the dictionary upon which Kraft relies as the basis for its "enclosed" limitation fails to support it. That dictionary (which in any event is not the best source for claim construction) says only that a "chamber" is "an enclosed or compartmented space." A58. Kraft ignores the "compartmented" part of the definition (commonly understood to mean a part of a space), and instead groundlessly insists that the space must be "enclosed." Nothing in the claim language or the specification supports importation of Kraft's limitations into the claims of the '762 patent.

-12-

In summary, the claim language "first and second chambers" should be construed in light of the specification and the expressly stated purpose of the invention such that the "first chamber" is the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter, and the "second chamber" is the part of the cartridge out of which the beverage flows after having passed through the filter.

### C. Construction of the Phrase "a Second Section Overlying said Second Chamber" Is Unnecessary.

The parties agree that the lid of the claimed invention must overlie the first chamber and the second chamber of the cartridge. Indeed, the language of the claim clearly recites this limitation. For this reason, no construction of the stated phrase is needed, as the words adequately convey their meaning to a person of ordinary skill in the art.

Kraft goes beyond this clear meaning of the claim language in an attempt to import additional limitations that find no support in the intrinsic record. Kraft's construction adds the limitation "directly" to the claim in an attempt to require that the second chamber directly abut the lid and that no other sub-chamber or other structure be positioned in the cartridge adjacent the section of lid where the outflow piercing is made. Yet nothing in the claims supports importing such a limitation. To the contrary, as explained in the specification and shown in Figure 13 of the '762 patent (reproduced below), the second chamber can be further subdivided into a sub-chamber such as a "well" (reference numeral 56 in Figure 13), and the beverage can flow out of the cartridge from this sub-chamber or "well." (See '762 Patent at A8, col. 4, ll. 8-16; id. at A4-A6, figs. 7, 12, 13). It would be error in light of Canon to limit the arrangement of the chambers of the cartridge as Kraft urges. Just as the Federal Circuit, in Canon, rejected importing such limitations into the claim term "first chamber," 134 F.3d at 1089-90, this Court should reject Kraft's attempts to do the same in this case, with regard to the same claim term.

-13-



**Figure 13 of the '762 Patent**

Moreover, the patent makes clear that a structure other than the second chamber <u>can</u> be included between the lid and the second chamber. Indeed, <u>both</u> embodiments depicted in the '762 patent show such a structure. In particular, in both embodiments a portion of the filter element is located between the lid and second chamber. (For example, in Figure 13 above, a portion of the filter 34 is located between the lid and Chamber B). It would thus be legal error in light of <u>Vitronics</u> to interpret the claims as Kraft suggests because such a reading would "read out" the preferred embodiments – i.e., it would fail to encompass the embodiments expressly disclosed in figures shown in the patent itself.

Faced with a clear and unambiguous claim element, Kraft resorts to arguing that a disclaimer occurred during prosecution. The Federal Circuit, however, requires that "[d]isclaimers based on disavowing actions or statements made during prosecution . . . must be both **clear and unmistakable**."[12]

---

[12] <u>Sorenson v. Int'l Trade Comm'n</u>, 427 F.3d 1375, 1378-79 (Fed. Cir. 2005) (emphasis added) (citing <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d 1314, 1326 (Fed. Cir. 2003)). The strict requirement that disclaimers be unmistakable is consistent with the Federal Circuit's view of the prosecution history as a less reliable source for claim construction support. Although courts may look to the prosecution history, the Federal Circuit has cautioned that "the prosecution history ... often lacks the clarity of the specification and thus is less useful for claim construction purposes." <u>Phillips</u>, 415 F.3d at 1317.

Keurig did not disclaim any subject matter during prosecution. Keurig certainly did not "clearly and unmistakably" disclaim, as Kraft suggests, that Chambers A or B could be subdivided into sub-chambers, nor that there could be other structures positioned in the cartridge between the section of the lid where the outflow piercing is made and Chamber B. (A19). During prosecution, Keurig merely distinguished a prior art patent in which the *first chamber* was interposed between the lid and the second chamber, such that no section of the lid could be pierced to access the second chamber without first passing through the first chamber. Id. Indeed, the claims of the '762 patent are distinguishable over that prior art patent for this very reason – the claims of the '762 patent require that a second section of the lid of the claimed invention overlie the second chamber of the cartridge so that it can be pierced to accommodate an outflow of beverage from the second chamber (without going through the first chamber).[13]

In sum, no construction of the stated phrase is needed, as the words adequately convey their meaning to a person of ordinary skill in the art. If the Court were inclined to construe the phrase "a second section overlying said second chamber" it would simply be: "a portion of the lid positioned over the second chamber such that it can be pierced to allow outflow of the beverage from the container." This construction is supported by the specification. See '762 Patent at A8, col. 3, ll. 20-25, ll. 43-48, col. 4, ll. 8-16.

---

[13] Thus, if anything was "disclaimed" during prosecution, it was at most the concept of a cartridge in which the first chamber is interposed between the second chamber and the portion of the lid overlying the second chamber.

DB02:6349019.1                                              065927.1001

### III. CONCLUSION

For the above reasons, Keurig respectfully requests that the Court adopt the above claim interpretations to govern the future course of this action.

Dated: November 5, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
jshaw@ycst.com
Chad S.C. Stover (No. 4919)
cstover@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

## **CERTIFICATE OF SERVICE**

I, Chad S.C. Stover, Esquire, hereby certify that on November 5, 2007, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz, Esquire
>*rhorwitz@potteranderson.com*
>David E. Moore, Esquire
>*dmoore@potteranderson.com*
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street, 6th Floor
>Wilmington, Delaware 19801

Additionally, I hereby certify that on November 5, 2007, copies of the foregoing document were served by hand delivery and email on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

### **BY E-MAIL**

>David Schlitz, Esquire
>*david.schlitz@bakerbotts.com*
>Baker Botts L.L.P
>The Warner
>1299 Pennsylvania Ave., NW
>Washington, D.C. 20004-2400.

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>_/s/ Chad S.C. Stover_____
>John W. Shaw (NO. 3362)
>*jshaw@ycst.com*
>Chad S.C. Stover (No. 4919)
>*cstover@ycst.com*
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19801
>(302)-571-6600
>*Attorneys for Plaintiff Keurig, Incorporated*