IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KRAFT FOODS GLOBAL, INC., ) <br> TASSIMO CORPORATION, and ) <br> KRAFT FOODS INC., ) <br> ) <br> Defendants. ) | Civil Action No. 07-017 (GMS) |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NO. 6,607,762

On December 3, 2007, the court held a *Markman* hearing in this patent infringement action concerning U.S. Patent No. 6,607,762 (the "'762 patent" or the "patent-in-suit"). After having considered the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of the '762 patent:

1.  The term "first and second chambers" is construed to mean, with regard to the first chamber, "the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter," and, with regard to the second chamber, "the part of the cartridge out of which the beverage flows after having passed through the filter."[1]

---

[1] In the court's view, Keurig's proposed construction better comports with the claim language and the specification, which disclose a filter defining two chambers both covered by a lid through which liquid enters one chamber and exits the other. '762 patent at 04:60-05:12; *see also id.* at 03:15-20 (embodiment in which filter defines one chamber, which receives the liquid, separate from the second chamber, from which the beverage exits). Accordingly, the court adopts this construction. *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (construing terms to have the meaning presented in the patent document).

2. The term "a [planar]² filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers" is construed to have its plain and ordinary meaning.³

3. The term "and a second section overlying said second chamber" is construed to have its plain and ordinary meaning.⁴

4. The term "piercable"⁵ is construed below as part of the terms "piercable to accommodate an inflow of liquid into said first chamber" and "piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge."⁶

5. The term "piercable to accommodate an inflow of liquid" is construed to mean "capable of being pierced to permit a flow of liquid into."⁷

---

² Claim 10 repeats this disputed term, which first appears in Claim 1, verbatim but for the addition of the word "planar" where indicated. *Cf.* '762 patent at 04:63 *with id.* at 06:10. The parties agree that, for the purposes of this case, this difference is immaterial. (D.I. 42 at 4.).

³ This construction derives from the court's construction of "first and second chambers" and the term's otherwise ordinary meaning. *See* footnote 1; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1170.

⁴ The court declines to adopt Kraft's construction, which would impermissibly read limitations from the preferred embodiment onto the claims. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

⁵ This is the spelling used in the '762 patent.

⁶ *See* footnote 7.

⁷ Keurig argues that Kraft's proposed construction is so overbroad as to render these terms meaningless. *Cf. Nikken USA, Inc. v. Robinsons-May, Inc.*, 51 Fed. Appx. 874, 884-85 (Fed. Cir. 2002) (citing *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996)) (rejecting construction of claim term "attachable" because construction's overbreadth rendered the limitation meaningless). The court should instead adopt Keurig's proposed construction, Keurig argues, because that construction conveys the '762 patent's special, innovative purpose: avoiding leakage by locating the outlet at lid, not the cartridge base as in prior art. *See Medrad*, 401 F.3d at 1319 (claim construction must take place in context of specification and prosecution history, including invention's function, not in a vacuum). The specification does describe the invention's purpose. *E.g.*, '762 patent at 01:38-63. But certain prior art, cited in both the '762 patent's specification and prosecution history and so part of the intrinsic record, undermines the basis of Keurig's proposed construction. *Phillips*, 415 F.3d at 1317 (prosecution history, including prior art cited therein, is part of intrinsic record); *see* '762 patent at 01:17 (specifically citing as prior art U.S. Patent Nos. 5,325,765 and 5,840,189); (D.I. 47 at A19-22 (patentee citing prior art during examination).) Specifically, the prior-art '189 patent uses virtually this same disputed term to describe piercing both the lid and the base to accommodate liquid flow – even though that prior art lacks the patent-in-suit's focus on leakage and its

6. The term "piercable to accommodate an outflow of the beverage" is construed to mean "capable of being pierced to permit a beverage to flow out."[8]

Dated: January 23, 2008         /s/ Gregory M. Sleet
                                CHIEF, UNITED STATES DISTRICT JUDGE

---

innovation of avoiding leakage by locating the outlet at the lid. (D.I. 47 at A42-A43 (prior art claiming a cover "yieldably pierceable to accommodate an injection of liquid" and a base "yieldably pierceable to accommodate an outflow of said beverage"). The patentee therefore did not use the term to distinguish the '762 patent's specific design as to pierceability from prior art, but rather used the term as it has been used in prior art lacking the '762 patent's special focus on leakage. *Merck & Co.*, 347 F.3d at 1371 (interpret patent document term as understood by persons skilled in invention's field, unless intrinsic record makes it apparent that inventor used term with different meaning). Therefore, the court rejects Keurig's construction.

[8] *See* footnote 7.