## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KEURIG, INCORPORATED,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　)　　C.A. No. 07-17 (GMS)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)　　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　　)
KRAFT FOODS GLOBAL, INC.,　　　　　)　　**PUBLIC VERSION**
TASSIMO CORPORATION, and　　　　　)
KRAFT FOODS INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　)

## DEFENDANTS' MOTION FOR LEAVE TO FILE
## FIRST AMENDED ANSWERS AND COUNTERCLAIMS

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel:  302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700

Dated:  April 8, 2008
Public Version Dated: April 16, 2008
860513 / 31118

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KEURIG, INCORPORATED,⁣         )
                                  )
             Plaintiff,       )      C.A. No. 07-17 (GMS)
                                  )
         v.                 )      **JURY TRIAL DEMANDED**
                                  )
KRAFT FOODS GLOBAL, INC.,   )      **PUBLIC VERSION**
TASSIMO CORPORATION, and    )
KRAFT FOODS INC.,           )
                                  )
            Defendants.     )

**DEFENDANTS' MOTION FOR LEAVE TO FILE**
**FIRST AMENDED ANSWERS AND COUNTERCLAIMS[1]**

      Pursuant to Fed. R. Civ. P. 15(a), Defendants Kraft Foods Global Inc., Tassimo

Corporation, and Kraft Foods Inc. (collectively, the "Kraft Defendants"), hereby request leave of

the Court to file their First Amended Answers and Counterclaims for each of the Kraft

Defendants, copies of which are attached hereto as Exhibits A, C, and E hereto.[2]

      The Kraft Defendants seek to amend their answers and counterclaims to add allegations

of inequitable conduct. Pursuant to the Scheduling Order entered on July 17, 2007, the deadline

for motions to amend to add an inequitable conduct defense or counterclaim was February 29,

2008. But the Kraft Defendants' litigation counsel only learned of the inequitable conduct

during the past several weeks, after the deadline, when they deposed Nicholas Lazaris, one of the

named inventors of the Patent-in-suit, on March 12, 2008, and Maurice Gauthier, the prosecuting

attorney, on March 28, 2008. Inequitable conduct is a serious allegation and must be pleaded

with particularity under Fed. R. Civ. P. 9. The Kraft Defendants could not have sought to amend

---

[1] Defendant Kraft Foods Inc. does not assert a counterclaim in it's proposed amended pleading.
[2] Black-lined versions of the Kraft Defendant's respective pleadings are found at Exhibits B, D, and F hereto.

their answer and counterclaim until now. Pursuant to L.R. 7.1.1, counsel for the Kraft Defendants contacted Plaintiff's counsel on April 7 and 8, 2008 regarding the matters raised by this Motion, which Plaintiff's counsel indicated that they oppose.

## I.    ARGUMENT

### A.    The Kraft Defendants' Basis for the Inequitable Conduct Allegations

The Kenco Singles Cartridge constitutes prior art under 35 U.S.C. §§ 102(a), (b). As a prior art reference, the Kenco Singles Cartridge was highly material to the prosecution of U.S. Patent No. 6,607,762 ("the '762 Patent"), because it anticipates claims of the '762 Patent, shows a more complete combination of features than shown in the cited prior art, and is strikingly similar to the design and configuration of the first embodiment disclosed in the '762 Patent and the application from which it issued. With regard to the claimed point of novelty in the '762 Patent, the Kenco Singles Cartridge has a foil lid that includes (1) a first section that overlays the first chamber in which the beverage medium is stored and (2) a second section that overlays the second chamber from which the beverage exits the container. The first section is capable of being pierced to permit a flow of liquid into the first chamber and the second section is capable of being pierced to permit a beverage to flow out of the container.

In his application for the '762 Patent, Mr. Lazaris stated that in prior art cartridges the outlet for the beverage is formed by piercing the bottom of the relatively rigid plastic container, which has a higher resistance to piercing than the foil lid. In the course of being punctured by the outlet probe, the bottom distorts inwardly and causes buckling of the sidewalls, resulting in leakage around the outlet. U.S. Patent Appl'n No. 09/782,665 ("Appl'n") (Exhibit G hereto) at 3, Lines 7-13. Also, according to Mr. Lazaris, piercing the plastic bottom required costly metallic probes. *Id.* at Lines 14-16. ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

In the summary of his invention, Mr. Lazaris explained that the outlet is formed by piercing the foil lid, which has less resistance to being pierced as compared to the resistance of the container bottom. Appl'n (Exhibit G) at 4, Lines 13-16. He also stated that by forming the inlet and outlet by piercing the foil lid it is possible to use less expensive plastic probes. *Id.* at Lines 17-18. Thus, forming the outlet in the foil lid was central to his claimed invention.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████   ███████████████████████████████████   ████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████

During prosecution of the '762 Patent, Mr. Lazaris disclosed two patents in which the outlet was formed by piercing the plastic bottom of the container in an Information Disclosure Statement ("IDS") submitted to the to the United States Patent and Trademark Office ("PTO"). *See* IDS filed October 11, 2007 (Exhibit I hereto). But Mr. Lazaris failed to disclose the Kenco Singles Cartridge, which he knew had a foil lid overlying both the first and second chambers, and that the second section of the foil lid overlying the second chamber was piercable to form the outlet.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

■ Maurice Gauthier, his patent attorney, does not recall being advised of a single serve beverage cartridge that had a foil lid overlying both the chamber where the beverage medium is stored and the chamber from which the beverage exits the cartridge. Gauthier Dep. Tr. (Exhibit J hereto) 22. But Mr. Gauthier said it has been the practice of his firm over the years that if they knew of prior art then they disclosed such prior art to the PTO. *Id.* at 23. This practice was not limited to anticipatory prior art. It included any information that would be important to the PTO Examiner in his deliberation of patentability. *Id.* at 26-27. Moreover, it has been his policy to err on the side of giving more prior art, rather than not enough. *Id.* at 27-28. The trier of fact will have to decide whom to believe. But one thing is certain. The Kenco Singles Cartridge was not disclosed to the PTO.

The Kenco Singles Cartridge was highly material prior art. Given that high degree of materiality, an intent to withhold the Kenco Singles Cartridge from the PTO can be inferred.

**B.     The Rules Favor Liberally Granting Leave to Amend Pleadings.**

Under Fed. R. Civ. P. 15(a), leave to amend a pleading should be freely granted. *See, e.g., Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984) ("[Rule] 15 embodies the liberal pleading philosophy of the federal rules."). Rule 15(a)(2) provides that "[t]he court should *freely give* leave when justice so requires." (emphasis added).

As explained by the Supreme Court in *Foman v. Davis*, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—leave sought should, as the rules require, be 'freely given.'" 371 U.S. 178, 182 (1962). None of these reasons apply to this motion.

**C.     The Kraft Defendants Did Not Delay in Seeking to Amend their Answers.**

The Kraft Defendants' litigation counsel only learned of Mr. Lazaris' inequitable conduct during the past several weeks. They took Mr. Gauthier's deposition on March 28 and received his deposition transcript on April 1, 2008. Inequitable conduct is a serious allegation and must be pleaded with particularity under Fed. R. Civ. P. 9. The Kraft Defendants could not have sought to amend their answers and counterclaims until now.

**D.     Leave To Amend Will Not Unduly Prejudice The Plaintiff**

The delay will not cause undue prejudice to the Plaintiff. The Kraft Defendants do not seek to conduct any additional discovery pertaining to this issue. Plaintiff has all of the evidence and witnesses within its control. Thus, it difficult to imagine what discovery that Plaintiff would need to conduct. Nevertheless, to the extent that Plaintiff wishes to conduct discovery in this regard, the Kraft Defendants will not object. Trial in this case is scheduled for October 2008. Thus, Plaintiff has an abundance of time to prepare to defend against the allegations of inequitable conduct.

## II.    CONCLUSION

For the foregoing reasons, the Kraft Defendants respectfully request that the Court grant the Defendants' Motion for Leave to File their First Amended Answers and Counterclaims.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700


Dated:  April 8, 2008
Public Version Dated: April 16, 2008
860513 / 31118

By:  _/s/ David E. Moore_____
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 North Market Street
        P.O. Box 951
        Wilmington, DE  19899-0951
        Tel:  302-984-6169
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 16, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on April 16, 2008, the attached document was Electronically Mailed to the following person(s):

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391
jshaw@ycst.com
kkeller@ycst.com

Michael A. Albert
Michael N. Rader
Laura Topper
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210
malbert@wolfgreenfield.com
mrader@wolfgreenfield.com
ltopper@wolfgreenfield.com

By:  /s/ David E. Moore
　　　Richard L. Horwitz
　　　David E. Moore
　　　Potter Anderson & Corroon LLP
　　　Hercules Plaza, 6th Floor
　　　1313 N. Market Street
　　　P.O. Box 951
　　　Wilmington, DE  19899-0951
　　　(302) 984-6000
　　　rhorwitz@potteranderson.com
　　　dmoore@potteranderson.com

805682 / 31118

# EXHIBIT A

# THIS EXHIBIT FILED SEPARATELY – NOT UNDER SEAL

# EXHIBIT B

# THIS EXHIBIT FILED SEPARATELY – NOT UNDER SEAL

# EXHIBIT C

# THIS EXHIBIT FILED SEPARATELY – NOT UNDER SEAL

# EXHIBIT D

# THIS EXHIBIT FILED SEPARATELY – NOT UNDER SEAL

# EXHIBIT E

# THIS EXHIBIT FILED SEPARATELY – NOT UNDER SEAL

# EXHIBIT F

# THIS EXHIBIT FILED SEPARATELY – NOT UNDER SEAL

# EXHIBIT G

PATENT APPLICATION

OF

NICHOLAS G. LAZARIS

AND

RODERICK H. BEAULIEU

FOR

DISPOSABLE SINGLE SERVE BEVERAGE

FILTER CARTRIDGE

beverage passes through the filter into the second chamber from which it exits via the outlet probe for delivery to an underlying cup.

This known beverage filter cartridge has gained rapid and increasingly widespread acceptance, notwithstanding certain problems and disadvantages relating to its use that have
5    persisted since its initial introduction.

For example, as compared to the lid, the bottom of the cup-shaped container is relatively thick, with a higher resistance to piercing. The bottom cannot easily be thinned without adversely affecting the required thickness of the cup's sidewall to prevent permeability to oxygen and the ability to connect the filter material to the sidewall without damaging the
10   oxygen barrier material. Thus, in the course of being punctured by the outlet probe, the bottom exhibits a tendency to distort inwardly, with an accompanying buckling of the container sidewall. Bottom distortion accompanied by sidewall buckling can adversely affect the puncturing process, resulting in leakage around the outlet probe.

A related problem stems from the need to equip the brewers with expensive metallic
15   outlet probes that can be sharpened to the extent necessary to effect piercing of the more resistant container bottoms, and that can resist wear over prolonged periods of use.

Additionally, some of the brewed liquid beverage is not able to be evacuated because the outlet probe opening is above the bottom of the container and some of the beverage has no means of drainage.

20   What is needed, therefore, is an improved beverage filter cartridge that obviates or at least significantly minimizes the above-noted problems and disadvantages.

3

## SUMMARY OF THE INVENTION

In accordance with the present invention, a beverage filter cartridge includes an impermeable outer container having an access opening. A planar filter element is configured

5    and arranged to subdivide the container interior into first and second chambers. A beverage medium is stored in the first chamber and an impermeable lid closes the access opening.

The lid has a first section overlying the first chamber and a second section overlying the second chamber. The first and second lid sections are yieldably piercable, respectively, from the same direction, by single or multiple inlet and outlet probes. The inlet probe admits heated

10    liquid into the first chamber for infusion with the beverage medium, and the resulting brewed beverage passes through the filter element into the second chamber, from which it exits via the outlet probe.

The lid material has a lesser resistance to being yieldably pierced as compared to the resistance of the container bottom, and is thus less prone to inward distortion with

15    accompanying buckling of the container sidewall. The net result is a cleaner puncture and an improved seal around the outlet probe.

The relative ease with which the lid may be pierced also makes it possible to equip the brewers with less expensive plastic inlet and outlet probes, in single or multiple configurations.

These and other features and advantages of the present invention will now be described

20    in greater detail with reference to the accompanying drawings, wherein:

4

# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT I

5446

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| **APPLICANT:** | Lazaris et al. | **GROUP:** | 1761 |
| **SERIAL NO:** | 09/782,665 | **EXAMINER:** | Unknown |
| **FILED:** | February 13, 2001 | | |
| **FOR:** | DISPOSABLE SINGLE SERVE BEVERAGE FILTER CARTRIDGE | | |

Assistant Commissioner of Patents
Washington, D.C. 20231

Sir:

### INFORMATION DISCLOSURE STATEMENT

In compliance with 37 C.F.R. §§1.56, 1.97, and 1.98, Applicant submits copies of the

documents listed on the attached Form PTO-1449.

The listed documents were recently cited in a corresponding PCT application, and a copy

of the International Search Report is being submitted herewith for purposes of convenience.

The Commissioner is authorized to charge Deposit Order Account No. 19-0079 for any

further fee that is required.

Respectfully submitted,

Arlene J. Powers
Registration No. 35,985
Samuels, Gauthier & Stevens, LLP
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180
Extension 110

---

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is
being deposited with the United States Postal Service on the date shown below with sufficient postage
as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks,
Washington, D.C. 20231.

Sarah Kennedy

10/11/01
Date

Sheet 1 of 1

| FORM PTO-1449   SAMUELS, GAUTHIER & S...VENS LLP | ATTORNEY DOCKET NO. 54... | SERIAL NO.  09/782,665 |
|---|---|---|
| (Rev. 5/92)        225 Franklin Street, Boston, MA  02110<br>Telephone:  (617) 426-9180 | Lazaris et al.<br>APPLICANT | 1761<br>GROUP |
| **INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT** | February 13, 2001<br>FILING DATE | Unknown<br>EXAMINER |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | AA | 5,325,765 | 07/05/1994 | Sylvan et al. | | | 09/16/1992 |
| | AB | 5,840,189 | 11/24/1998 | Sylvan et al. | | | 08/20/1997 |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | AF | | | | | | | |
| | AG | | | | | | | |
| | AH | | | | | | | |
| | AI | | | | | | | |
| | AJ | | | | | | | |
| | AK | | | | | | | |
| | AL | | | | | | | |
| | AM | | | | | | | |
| | AN | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| EXAMINER INITIAL | | |
|---|---|---|
| | AO | |
| | AP | |

| EXAMINER | . | DATE CONSIDERED | . |
|---|---|---|---|

EXAMINER:        Initial if citation considered, whether or not citation is in conformance with
MPEP 609; draw line through citation if not in conformance and not
considered.  Include copy of this form with next communication to applicant.

# EXHIBIT J

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF DELAWARE
    - - - - - - - - - - - - - - - - - - - - - - - x
 3  KEURIG, INCORPORATED,
 4                 Plaintiff,
 5      v.
 6  KRAFT FOODS GLOBAL, INC., TASSIMO CORPORATION,
    and KRAFT FOODS, INC.,
 7
                   Defendants.
 8
    Civil Action No. 07-17 (GMS)
 9  - - - - - - - - - - - - - - - - - - - - - - - x
10
11      VIDEOTAPED DEPOSITION OF MAURICE E. GAUTHIER
12             Friday, March 28, 2008
13          10:02 a.m. through 10:44 a.m.
14          WOLF GREENFIELD & SACKS, P.C.
15               600 Atlantic Avenue
16             Boston, Massachusetts
17
18       Reporter:  Lisa A. Moreira, RDR, CRR
19
20
21
22
23      ELLEN GRAUER COURT REPORTING CO. LLC
          126 East 56th Street, Fifth Floor
24             New York, New York 10022
                   212-750-6434
25               REF:  87140A
```

Page 22

1                         GAUTHIER

2      at some time or one time, but I don't recall.

3           Q.  Okay.  And let's talk generically without a

4      name for it.  Were you exposed to a single-serve

5      beverage cartridge that had a foil lid that overlaid

6      both the chamber where the coffee medium or the

7      beverage medium was stored and the chamber from

8      which the beverage exited the cartridge?

9           A.  I don't recall being advised of anything

10     like that, no.

11          Q.  Okay.  Did you have any knowledge or do you

12     recall being advised of a cartridge in which the

13     foil lid or a foil overlaid the chamber from which

14     the beverage exited the cartridge?

15               MR. ALBERT:  Objection to the form of

16     the question.

17          Q.  Do you understand the question?

18          A.  I think you're asking me if I recall seeing

19     some cartridge that had a foil lid overlying the

20     compartment with the beverage in it?

21          Q.  Yes.

22          A.  No, I don't.

23          Q.  I'm sorry, and so you're saying no, you

24     don't; you just don't recall, or no, you were

25     never -- you never learned of that?

1              GAUTHIER

2      A.  I don't recall much of what went on during

3   that period of time, so when I say, "No, I don't," I

4   don't recall.

5      Q.  Okay.  And if your client, your then-client,

6   the inventor, Mr. Lazaris, testified that he had

7   provided you with notes with regard to the Kenco

8   Singles cartridge, would you have any reason to

9   dispute that?

10     A.  Since I don't recall whether he did or he

11  didn't, no, I wouldn't have a basis to dispute what

12  he said.

13     Q.  Okay.  Now, I want to give you -- and this

14  answer may be obvious from your testimony, but do

15  you have any explanation why you did not disclose

16  the Kenco Singles cartridge to the Patent Office as

17  part of this prosecution?

18     A.  Well, first of all, I don't recall whether I

19  had any knowledge of it or not, and no, I don't have

20  any explanation as to why it wasn't disclosed.

21     Q.  Okay.

22     A.  I can only say to you that it's been the

23  practice of my firm over the years, that if we know

24  of prior art, we disclose it to the Patent Office.

25     Q.  Okay.  I'm sure that's right.  I don't doubt

1                          GAUTHIER

2     a few minutes ago -- and I don't want to

3     mischaracterize your testimony -- you said that your

4     practice was if you were provided with prior art,

5     you provided it to the Patent Office; is that

6     correct?

7          A.   That's correct.

8          Q.   Okay.  Was it your practice only to provide

9     what you considered anticipatory prior art?

10         A.   No.  No.  It might not anticipate a claim,

11    but if it would be used by the examiner.  If it was

12    considered -- should be considered by the examiner,

13    we would provide it.

14         Q.   And that would include art that could be

15    combined with other art; is that correct?

16              MR. ALBERT:  Objection to the form.

17         Q.   You can answer that.

18         A.   Most certainly.

19         Q.   And, in fact, it could include information

20    that was not prior art, technically prior art, but

21    would be of importance to the examiner in

22    determining patentability; isn't that correct?

23              MR. ALBERT:  Objection to the form.

24         A.   If it would be important to the examiner in

25    his deliberation of patentability, we would provide

```
 1                    GAUTHIER
 2    it.
 3       Q.  Right.
 4              THE WITNESS:  Do you suppose I might
 5    have one of those bottles of water?
 6              MR. ALBERT:  Certainly.  Should we take
 7    a short recess?
 8              MR. SCHLITZ:  Yes, certainly.  Yes.
 9              THE VIDEOGRAPHER:  Going off the record.
10    The time is 10:39.
11              (Recess taken)
12              THE VIDEOGRAPHER:  We're back on the
13    record.  The time is 10:42.
14       BY MR. SCHLITZ:
15       Q.  Mr. Gauthier, with regard to your -- the
16    policy that we spoke about about turning over prior
17    art, if you had it, to the Patent Office, can you
18    elaborate a little bit on how you would make a
19    determination whether to produce information to the
20    Patent Office?
21       A.  Well, to begin with, you -- if you err,
22    you're going to err on the side of giving more than
23    not enough, and the only thing I would be careful of
24    is not to overwhelm the patent examiner with a lot
25    of prior art and then somehow be accused that I was
```

```
 1                      GAUTHIER

 2    hiding something in the bushes.

 3            So if it's simply duplicative of what's

 4    already there, then we would not provide it.  But

 5    our policy was to err on the side of giving more

 6    than less.

 7       Q.  Okay.

 8            MR. SCHITZ:  Mr. Gauthier, you will be

 9    pleased to know that that's all the questions I

10    have, and you've been very forthright, and I very

11    much appreciate that.

12            THE WITNESS:  Well, thank you.  I'm

13    released?

14            MR. ALBERT:  You are.

15            THE VIDEOGRAPHER:  This marks the end of

16    Videotape No. 1 in the deposition of Maurice E.

17    Gauthier.  The time is 10:44.  We're going off the

18    record.

19            (Whereupon the deposition was concluded

20             at 10:44 a.m.)

21

22

23

24

25
```