## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT DELAWARE

KEURIG, INCORPORATED,

     Plaintiff,

     v.

KRAFT FOODS GLOBAL, INC.,
TASSIMO CORPORATION, and
KRAFT FOODS INC.,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 07-17 (GMS)

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## DEFENDANTS' MOTION IN LIMINE TO LIMIT EXPERT
## TESTIMONY OF DR. ALEXANDER SLOCUM

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700

Dated:  August 4, 2008
Public Version Dated: August 11, 2008
877077 / 31118

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel:  302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

Defendants Kraft Foods Global, Inc., Tassimo Corporation, and Kraft Foods, Inc. (collectively "Kraft"), by counsel, states the following in support of its Motion *in Limine* to limit the Expert Testimony of Dr. Alexander Slocum, serving as a technical expert for Plaintiff Keurig, Incorporated ("Keurig").[1]  In particular, Kraft respectfully moves to preclude any testimony: (1) based upon or relying upon the inadmissible opinions of Ted Lingle related to his specialized definition of claim term "beverage" in the asserted claims of U.S. Patent No. 6,707,762 ("the '762 Patent") as well as Mr. Lingle's inadmissible opinion applying his claim construction of the term "beverage" to the prior art; and (2) regarding the relative aspect ratios of beverage filter cartridges.

**ARGUMENT**

**I.      Dr. Slocum Cannot Rely Upon the Inadmissible Opinions of Ted Lingle**



In his Rebuttal report and at his deposition, Dr. Slocum relies upon the opinions of Ted Lingle regarding the definition of the claim term beverage.

In his Rebuttal report, Dr. Slocum states

But this statement was based on Mr. Lingle's inadmissible opinion he did

In his deposition, Dr. Slocum acknowledges that:

> Well, my understanding for the term beverage -- because I'm not
> an expert in that area, I relied -- the Court itself didn't give me an
> exact definition of what beverage is.  I have to refer back explicitly

---

[1] Pursuant to D. Del. LR 7.1.1, the parties met and conferred, and Plaintiff will oppose the motion.

> to that document, but in that respect, I relied on Mr. Lingle, who is
> an acknowledged expert in the field of coffee beverages.

Slocum Dep. Tr. (Ex. 3) at 8. Accordingly, Dr. Slocum reveals Keurig's gambit of using expert

testimony to usurp the Court's role in claim construction in view of Kraft's prior art, which

clearly anticipates the '762 Patent under the Court's *Markman* Order.   As discussed in a

companion motion *in limine*, Mr. Lingle should be precluded from testifying at trial.

Accordingly, Dr. Slocum should be barred from testifying at trial with regard to Mr. Lingle's

opinion or from relying upon Mr. Lingle's opinion.

## II.   Dr. Slocum Failed to Identify His Aspect Ratio Theory in Both His Expert and Rebuttal Reports

Kraft is relying upon the Singles cartridge as anticipatory prior art.   In all material

respects the Singles cartridge is virtually identical to the only disclosed embodiment in the

provisional application from which the '762 Patent claims priority and to the first disclosed

embodiment in the '762 Patent.

In this litigation, Keurig has maintained that the lid of the Singles cartridge is not

piercable to accommodate an inflow of liquid.   ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████   But neither does the disclosure of the '762 Patent.   The

specification of the '762 Patent states:

> The lid material has a lesser resistance to being yieldably pierced
> as compared to the resistance of the container bottom, and is thus
> less prone to inward distortion with accompanying buckling of the
> container sidewall. The net result is a cleaner puncture and in
> improved seal around the outlet probe.

'762 Patent, Col. 2, Lines 14-20.  The figures for the two disclosed embodiments do not disclose a support structure against which to press a gasket or other device to form a seal.



FIG. 5

FIG. 13

Thus, Dr. Slocum's opinion as to why Kraft's asserted prior art is not suitable for same-side piercing, if correct, would also apply to the '762 Patent, thereby rendering the asserted claims invalid for lack of enablement.  Realizing the dilemma his opinion placed Keurig in, at his deposition, Dr. Slocum on the spot abandoned his argument regarding the need for a support structure and invented a new theory why Kraft's prior art would not invalidate the '762 Patent's claims.  He raised his new "aspect ratio" theory.

He proceeded to opine that the '234 Patent and Singles cartridge, as well as the first embodiment of the '762 Patent, are not suitable for same side piercing because the cartridges have a flat aspect ratio.  Slocum Dep. Tr. (Ex. 3) 27-28, 31-32.  Dr. Slocum then asserted that a cartridge must have a one-to-one aspect ratio, like the embodiment shown in Figs. 7-9 of the '762 Patent, to directly inject fluid into the coffee bed for same side piercing.  *Id.* at 27.  But nowhere in his Expert or Rebuttal report does Dr. Slocum assert that Kraft's prior art fails to anticipate the '762 Patent due to its aspect ratio, nor does he discuss that for the same reason the first embodiment of the '762 Patent is inoperative.  Plain and simple, Kraft was ambushed by Dr. Slocum at his deposition.

Rule 26 requires that expert reports "must contain: a *complete* statement of *all* opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B) (emphases added). Keurig's violation requires the exclusion of these previously undisclosed opinions. Rule 37, which requires the exclusion of all opinions not disclosed as required by Rule 26, states:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(l); *see also Inline Connection Corp. v. AOL Time Warner, Inc.*, 472 F. Supp. 2d 604, 612 (D. Del. 2007); *Johnson v. Vanguard Mfg., Inc.*, 34 Fed. Appx. 858, 859 (3d. Cir. 2002) (Trial court did not abuse its discretion by excluding expert opinion testimony not included in report). Accordingly, Dr. Slocum should not be permitted to testify at trial regarding the previously undisclosed aspect ratio theory.

Dr. Slocum's raised the issue of "aspect ratio" on his own accord. Neither Kraft nor its technical expert, Malcolm Taylor, discussed the aspect ratio of beverage cartridges. To the contrary, Dr. Slocum simply sprung his revised opinion upon Kraft when questioned as to why he believed Kraft's prior art did not anticipate the asserted claims of the '762 Patent. Thus, Dr. Slocum was not prompted by Kraft when presenting his new opinions with regard to invalidity.

Moreover, Dr. Slocum's "aspect ratio" theory completely contradicts the originally filed disclosure of the '762 Patent, which shows only the first embodiment of the '762 that looks just like the Singles cartridge. *See* U.S. Provisional Patent Application No. 60/183,569 (Ex. 4), Figs. 1-4. Dr. Slocum testified that the first embodiment of the '762 Patent showing a flat aspect ratio cartridge would not produce a beverage. Slocum Dep. Tr. (Ex. 3) at 31-32. He then opines that the cartridge illustrated in Figures 6-8 of the '762 patent is the "actual useful embodiment"

because its "aspect ratio is more kind of one-to-one." *Id.* at 27. But the "useful embodiment" was not disclosed until the filing date of the nonprovisional application -- February 13, 2001. Thus, allowing Dr. Slocum to present such new opinion testimony prejudices Kraft as it permits Keurig to present evidence narrowing the '762 Patent's scope to avoid Kraft's prior art, without giving Kraft an opportunity to present legal defenses related to the loss of priority.

## CONCLUSION

For the foregoing reasons, Kraft respectfully requests that the Court grant this Motion *in Limine* to limit Dr. Slocum's testimony at trial.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700


Dated: August 4, 2008
Public Version Dated: August 11, 2008
877077 / 31118

By: */s/ David E. Moore*
  Richard L. Horwitz (#2246)
  David E. Moore (#3983)
  Hercules Plaza, 6th Floor
  1313 North Market Street
  P.O. Box 951
  Wilmington, DE 19899-0951
  Tel: 302-984-6169
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 11, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on August 11, 2008, the attached document was Electronically

Mailed to the following person(s):

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391
jshaw@ycst.com
kkeller@ycst.com

Michael A. Albert
Michael N. Rader
Laura Topper
Gerald B. Hrycyszyn
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
malbert@wolfgreenfield.com
mrader@wolfgreenfield.com
ltopper@wolfgreenfield.com
ghrycyszyn@wolfgreenfield.com

By:  /s/ David E. Moore
     Richard L. Horwitz
     David E. Moore
     Potter Anderson & Corroon LLP
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

805682 / 31118

# EXHIBIT 1

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 3

Page 1

1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - x

3    KEURIG, INCORPORATED,

4                    Plaintiff,

5        v.

6    KRAFT FOODS GLOBAL, INC., TASSIMO CORPORATION, and
     KRAFT FOODS INC.,

7

                    Defendants.

8

     Civil Action No. 07-CV-0017-GMS

9    - - - - - - - - - - - - - - - - - - - - - - - x

10

11

12        VIDEOTAPED DEPOSITION OF ALEXANDER H. SLOCUM

13                    Wednesday, June 11, 2008

14                    9:10 a.m. to 5:00 p.m.

15            WOLF, GREENFIELD & SACKS, P.C.

16                    600 Atlantic Avenue

17                    Boston, Massachusetts

18

19        Reporter:  Marianne R. Wharram, CSR/RPR

20

21

22

23        ELLEN GRAUER COURT REPORTING CO. LLC
              126 East 56th Street, Fifth Floor

24              New York, New York 10022
                    212-750-6434

25                    REF: 87765

1                          SLOCUM

2     construction, or claim construction, what different

3     terms mean.  That's what I have to ultimately abide

4     by is what is the Court's claim construction.

5         Q.  In your expert report, you opine about the

6     meaning of the word beverage; is that correct?

7                   MR. RADER:  Objection to the form.  You

8     can answer.

9         A.  Well, my understanding for the term

10    beverage -- because I'm not an expert in that area,

11    I relied -- the Court itself didn't give me an

12    exact definition of what beverage is.  I have to

13    refer back explicitly to that document, but in that

14    respect, I relied on Mr. Lingle, who is an

15    acknowledged expert in the field of coffee

16    beverages.  And then, when I actually ran the

17    various tests in various scenarios, I also, because

18    I'm a fairly avid coffee drinker, would then taste

19    the stuff made by the various ways I did.

20        Q.  (BY MR. SCHLITZ)  But when you read the

21    patent, what was your understanding?  Before --

22    when did you speak to Mr. Lingle?

23        A.  I first met Mr. Lingle a couple of months

24    ago when I did my extensive tests with the hot

25    water to actually attempt to create the beverage.

1                          SLOCUM

2    referring to aspect ratio, the length and the width

3    of a coffee bed and what's those -- what are those

4    proportions with respect to the depth between where

5    you're putting in the fluid and where it wants to

6    exit.

7        Q.  All right.

8        A.  Now, all these flat cartridges, I would

9    say, have a flat aspect ratio.  The depth is

10   shallow.

11       Q.  When you say these, you were pointing to

12   something.

13       A.  I'm sorry.  The Singles cartridges or the

14   cartridge from the '234 patent.

15       Q.  Okay.

16       A.  So when you go -- or the embodiment of

17   Figure -- nominally, Figure 4.

18       Q.  Right.

19       A.  Now, compare those proportions to what I

20   think is the actual useful embodiment of Figures 6,

21   7 and 8 of the '762 patent, which is that aspect

22   ratio is more kind of one-to-one, the depth with

23   here, and in the actual, these flat type

24   cartridges, it's like three or four-to-one is the

25   characteristic aspect ratio.  The problem with just

1                              SLOCUM

2      taking something of this aspect ratio and piercing,

3      in the language of the patent, and then injecting

4      your fluid is that the water, which comes in at a

5      reasonable pressure, shoots right through the

6      coffee, or whatever your drink is, into the filter

7      and then rushes out your filter, so you don't get

8      good wetting -- that's wetting, excuse me -- of the

9      bed of -- and you end up putting through the

10     required amount of fluid to fill your cup, but it

11     really only acts on a small region of coffee, which

12     is why I think it comes out so -- so weak and why I

13     said yeck, it doesn't really taste like coffee.

14     When you have a -- and that's why I believe the

15     '234 and the Singles, they both have this

16     manifolding system --

17          Q.  All right.

18          A.  -- to evenly wet.  And I opened up

19     cartridges from the Singles machine after they were

20     used and I looked at the bed and I opened up the

21     cartridges after I would do my test and I looked at

22     the bed, and the tests I ran, you would always

23     burrow a hole.  And I can discuss more in terms of

24     scientific principles of aspect ratios if you want.

25          Q.  Please do.

1                         SLOCUM

2      you correct -- and please correct me if I'm

3      wrong -- are you of the opinion that because of the

4      aspect ratio of the first embodiment, it wouldn't

5      work?  Are we talking about the patent-in-suit?

6          A.  Okay, so if I'm looking at this guy, I

7      don't think that's a very -- now, they show two

8      nozzles here, but I still think you're going to get

9      burrowing between the two, and I don't think this

10     is a very useful embodiment, personally.

11         Q.  You said not useful.  I mean, would it

12     work?

13         A.  Well, I didn't construct this.  I just used

14     the Singles cartridge --

15         Q.  Right.

16         A.  -- and I did the Rychiger one, which is

17     back.  I'm sure I got some -- actually, I know I

18     got some flow into the manifold, but nominally,

19     like you said, if we ignore the manifold, which I'm

20     able to do by keeping it blocked, I never got what

21     I would call or Mr. Lingle called a good beverage,

22     so with that as a model of three, four, five, I --

23     I don't think this is a very good embodiment.

24         Q.  Now -- well, you say it's not very good.

25     Would it produce a beverage, in your opinion?

1                          SLOCUM

2        A.   Based on my model, I don't think three,

3    four, five makes a beverage.

4        Q.   Now, when you were talking about the aspect

5    ratio, and with regard to Figure 13, okay --

6        A.   Correct.

7        Q.   -- you say because -- in Figure 13, are you

8    aware that the -- well, in what orientation would

9    you have to use Figure 13?

10       A.   Um, I actually think it would -- it would

11   work -- this vertical orientation -- it would work

12   vertical orientation where, for example -- and it

13   would work in several.

14       Q.   Okay.

15       A.   It would work vertical orientation where

16   the gravity vector points -- I'm trying to figure

17   out how I'm going to do this with the video thing,

18   but where the area of the gravity vector would be

19   located on the lid.

20       Q.   Would the foil be down or up or sideways?

21       A.   That's a better way of putting it.  The

22   foil would be -- down would work.  I believe it

23   would work with the foil vertical.

24       Q.   Right.

25       A.   With the foil horizontal, or up, excuse me,

# EXHIBIT 4

5446
N-Cup

PROVISIONAL PATENT APPLICATION

OF

NICHOLAS G. LAZARIS

AND

RODERICK H. BEAULIEU

FOR

BEVERAGE FILTER CARTRIDGE

A32

5446
N-Cup

This invention relates generally to beverage filter cartridges of the type described in U.S. Patent No. 5,840,189, the disclosure of which is herein incorporated by reference.

A preferred embodiment of the invention is disclosed in the accompanying drawings,

5  wherein:

Figure 1 is a top plan view of the beverage filter cartridge;

Figure 2 is a longitudinal sectional view taken along line 2-2 of Figure 1;

Figure 3 is an exploded perspective view of the filter cartridge components; and

Figure 4 is a view similar to Figure 2 showing the beverage filter cartridge in use during a

10  brewing cycle.

Referring now to the drawings, a beverage filter cartridge in accordance with the present invention is generally depicted at 10.  The cartridge includes an outer container 12, a filter element 14 and a lid 16.

15  The outer container 12 is generally tray-shaped, with a bottom wall 12a, a side wall 12b, and a series of laterally spaced support ribs 12c projecting upwardly from the bottom wall and extending in parallel relationship in the lengthwise direction of the container.

As can be best seen in Figure 2, the ribs 12c join the side wall 12 as at 18, and curve downwardly and then extend in parallel relationship to the bottom wall before again curving

20  upwardly to terminate as at 20, thereby forming an open exit chamber B.

The filter element 14 is formed from sheet material shaped to conform to the shape of the upper edges of the support ribs.  The filter element is received in the container 12, with the edges 14a of its ends overlapping and sealed to the upper edge of the container side wall 12b, and with the edges 14b of its sides overlapping and sealed to outermost ribs 12c which project integrally

2

A33

Case 1:07-cv-00017-GMS     Document 47-2     Filed 11/05/2007     Page 40 of 55



5446



FIG. 4