IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KEURIG, INCORPORATED,<br><br>        Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br>TASSIMO CORPORATION, and<br>KRAFT FOODS INC.,<br><br>        Defendants. | Civil Action No. 07-017-GMS<br><br>**REDACTED –<br><u>PUBLIC VERSION</u>** |

**KEURIG'S MOTION *IN LIMINE* NO. 5 – MOTION TO PRECLUDE KRAFT FROM
<u>RELYING ON DEFENSES IDENTIFIED AFTER THE CLOSE OF DISCOVERY</u>**

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

Dated: August 15, 2008

Kraft is attempting trial-by-ambush. On August 11, Kraft for the first time disclosed four brand new defenses that it seeks to inject into the trial of this case: laches, obviousness of claim 1 of the '762 patent under 35 U.S.C. § 103, and written description and enablement under 35 U.S.C. § 112. Kraft never before mentioned any of these theories, let alone articulated a basis for them as required by Keurig's discovery requests and the Court's Scheduling Order. Keurig had no notice of the theories and no opportunity to take discovery on them. Discovery ended more than four months ago, the Pretrial Order is due in ten days, and trial starts in just over two months. Excluding Kraft's belated defenses is the only way to avoid severe prejudice to Keurig.

## I.    BACKGROUND

### A.    Kraft's Belated Disclosure of New Defenses

Keurig provided Kraft with a set of draft pretrial materials, including jury instructions, on July 25 as required by the Court's Scheduling Order. (D.I. 34). On August 11, Kraft responded with a modified set of materials. Kraft's draft included jury instructions on four defenses that had never before been raised: laches, obviousness, written description and enablement.[1] Kraft sent Keurig the jury instructions only; it still has provided no disclosure of its actual contentions.

### B.    Litigation History

#### 1.    Kraft's Answer to Keurig's Complaint

Kraft's February 28, 2007 answer to Keurig's complaint included a boilerplate affirmative defense that: "One or more claims of the '762 Patent are invalid [under 35 U.S.C.] §§ 101, 102, 103, and/or 112." (D.I. 12 ¶ 22; D.I. 13 ¶ 20; D.I. 14 ¶ 20). Kraft did not identify any specific claims or details. Kraft did not plead a laches defense.

---

[1] Keurig promptly objected and asked Kraft to drop the belated defenses. On August 13, Kraft purported to withdraw laches, not the other three. Keurig seeks an order excluding all four belated defenses. Given that Kraft continues to try to shift its theories, Keurig seeks clarity that Kraft will be limited to the defenses articulated in its invalidity contentions and expert reports.

**2.    Kraft's Responses to Keurig's Interrogatories**

Early in the case, Keurig served interrogatories requiring Kraft to:

State the basis for Defendant's [Invalidity] Defense…in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment thereon [and]

Identify all documents and things, including all Prior Art, that support your argument that one or more claims of the '762 patent is invalid.

(Ex. 1 at 4). ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

**3.    Kraft's Invalidity Contentions**

This Court's Scheduling Order required Kraft to serve, by August 10, 2007, Invalidity

Contentions specifying, *inter alia*, (1) each combination of references allegedly rendering a

claim obvious; and (2) "[a]ny grounds of invalidity based on…enablement or written description

under 35 U.S.C. § 112(1) of any of the asserted claims, including the factual and legal basis for

such invalidity contentions."  (D.I. 34 at 2-3).

Kraft's Invalidity Contentions (Ex. 3) did not say a single word about obviousness,

enablement, or written description.  Kraft identified several pieces of alleged prior art and

asserted that "the cited prior art anticipates."  (Id. at 2).

**4.    The Close of Fact Discovery**

Fact discovery closed on April 1, 2008.  (D.I. 34).  At no point before the close of

discovery (or even since then) did Kraft supplement its Invalidity Contentions or its responses to

Keurig's interrogatories.   Keurig therefore focused its discovery strategy and trial preparation on

anticipation – the sole invalidity defense that Kraft had disclosed.

---

[2] Keurig served separate interrogatories on each Kraft defendant and received answers that were identical in relevant part.  In the interest of brevity, only one set is cited and attached here.

5.    **Expert Discovery**

Pursuant to the expert discovery schedule (D.I. 80), Kraft's expert Malcolm Taylor

prepared an April 15, 2008 report asserting that



On May 13, 2008, Keurig served rebuttal expert reports from its engineering expert

Professor Alexander Slocum and its coffee expert Ted Lingle detailing their opinions that Kraft's

references do <u>not</u> anticipate.  Keurig's experts did not address obviousness, written description or

enablement, as Kraft and Mr. Taylor had never raised those defenses.

**II.    THE ONLY APPROPRIATE REMEDY IS EXCLUSION
OF KRAFT'S BELATED DEFENSES.**

Kraft's belated laches, obviousness, written description and enablement defenses should

be excluded under Fed. R. Civ. P. 37 as a sanction for Kraft's untimely disclosure.  Exclusion is

the only remedy that will prevent severe prejudice to Keurig, which had no notice of these

defenses and was unable to take discovery or prepare for trial on them.  <u>Primos, Inc. v. Hunter's</u>

<u>Specialties, Inc.</u>, 451 F.3d 841, 851 (Fed. Cir. 2006) (affirming exclusion of prior art identified

after the close of discovery to avoid unfair and prejudicial surprise:  "[T]he purpose of discovery

is to enable parties to obtain the factual information needed to prepare their cases for trial.");

---

[3] Mr. Taylor discussed obviousness with respect to a dependent claim, but not claim 1.  Keurig
has since dropped the dependent claims to streamline the trial, leaving just claim 1 at issue.

Bridgestone Sports Co. v. Acushnet Co., C.A. No. 05-132, 2007 WL 521894, *4-5 (D. Del. Feb. 15, 2007) (precluding the defendant from relying on prior art disclosed after the close of discovery but six months before trial; noting that the plaintiff had "focused its attention during discovery on the numerous references identified by Acushnet in its validity contentions and not on these undisclosed references"); Edizone, L.C. v. Cloud Nine, C.A. 04-117, 2008 WL 584991, *3 (D. Utah Feb. 29, 2008) (granting motion to preclude invalidity theories disclosed "a few months" before trial: "Allowing Defendants to…add new theories at this late stage would have drastic consequences. The Court would be required to allow additional time for fact and expert discovery…"); Astrazeneca AB v. Mutual Pharm. Co., 278 F. Supp. 2d 491, 507 (E.D. Pa. 2003) ("To require Plaintiff to re-open depositions and attempt to secure fact discovery (and expert opinions), at this time, on a [belated] theory of invalidity…would be decidedly unfair.").

Had Keurig known about Kraft's theories, it would have conducted discovery differently. For example, the enablement defense would have led Keurig to question Kraft's engineers about whether undue experimentation would be needed to make the claimed invention work. Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., 42 U.S.P.Q. 2d 1369, 1377 (N.D. Ill. 1996) (granting motion to exclude untimely Section 112 defense: "Had Plaintiff been aware of Defendants' intention to raise this defense, it would have…deposed Sumitomo personnel on the issue of whether…undue experimentation would be necessary."); see also Convolve, Inc. v. Compaq Computer Corp., C.A. No. 00-5141, 2007 WL 2687629, *3 (S.D.N.Y. Sept. 12, 2007) (denying leave to amend invalidity contentions to assert obviousness on the basis of earlier materials addressing only anticipation: "[P]roof of obviousness involves evidence that would be irrelevant to anticipation.  Accordingly, a patent holder needs to know which defense it will face in order to prepare its rebuttal.").

Preclusion is particularly important here because Kraft <u>still</u> has not articulated the substance of its contentions. Kraft has merely prepared draft jury instructions belying its plans to argue the new defenses at trial – without telling Keurig anything about how those arguments will unfold. This late, bare disclosure by Kraft is insufficient to support the new defenses as a matter of law. <u>Omegaflex, Inc. v. Parker Hannifin Corp.</u>, 425 F. Supp. 2d 171, 187 (D. Mass. 2006) (generic disclosure of possible defense "does not constitute the kind of support in the record necessary to sustain a theory's viability"), <u>reversed on other grounds</u>, 243 Fed. Appx. 592 (Fed. Cir. 2007); <u>Moore N.A., Inc. v. Poser Business Forms, Inc.</u>, C.A. No. 97-712, 2001 WL 253117, *7 (D. Del. Mar. 8, 2001) (since defendant's expert reports contained no discussion of enablement, defendant "will not be permitted to go forward with this defense.").

Kraft apparently intends to justify its late disclosure by arguing that it first realized it had an enablement defense during the June 11 deposition of Keurig's expert Professor Slocum, who explained that Singles cartridges are not suitable for same-side piercing. Because Kraft contends that Singles is similar to the '762 patent invention in its piercability, Kraft reasons that Professor Slocum must agree the patent is not enabled.[4] But Kraft has known Keurig's core contention that the Singles cartridges are not suitable for same-side piercing since the outset of the case. (Ex. 5 at 3). Accordingly, Kraft could not have been surprised by Prof. Slocum's testimony. <u>Cf.</u> <u>Heidelberg</u>, 42 U.S.P.Q. 2d at 1376 (excluding untimely defense because "there is no indication that the depositions did anything to enhance the Defendants' understanding of this defense...").

## III.    CONCLUSION

Keurig requests that Kraft be limited to the defenses that it disclosed during discovery.

---

[4] Kraft is wrong, but the Court need not reach the merits of the enablement issue to decide this motion. <u>Omegaflex</u>, 425 F. Supp. 2d at 187 ("Notwithstanding Plaintiff's strong opposition to Defendant's section 112 allegations on the merits, it would be next to impossible for Plaintiff to overcome the adverse effects of Defendant's late assertion of a written description deficiency.").

- 5 -

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

Dated: August 15, 2008

- 6 -

**CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire, hereby certify that on August 22, 2008, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire [*rhorwitz@potteranderson.com*]
> David E. Moore, Esquire [*dmoore@potteranderson.com*]
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street, 6th Floor
> Wilmington, Delaware 19801

Additionally, I hereby certify that on August 22, 2008, copies of the foregoing document were served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

**BY E-MAIL**

> David Schlitz, Esquire [*david.schlitz@bakerbotts.com*]
> Baker Botts L.L.P
> The Warner
> 1299 Pennsylvania Ave., NW
> Washington, D.C. 20004-2400

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen E. Keller*
John W. Shaw (No 3362)  [*jshaw@ycst.com*]
Adam W. Poff (No. 3990) [*apoff@ycst.com*]
Karen E. Keller (No. 4489) [*kkeller@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302)-571-6600

*Attorneys for Plaintiff Keurig, Incorporated*

Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEURIG, INCORPORATED,

       Plaintiff,

v.

KRAFT FOODS GLOBAL, INC.,
TASSIMO CORPORATION, and
KRAFT FOODS INC.,

       Defendants.

Civil Action No. 07-017 GMS

## KEURIG'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT KRAFT FOODS GLOBAL, INC.

Pursuant to Fed. R. Civ. P. 33, Plaintiff, Keurig, Inc. ("Plaintiff" or "Keurig"), hereby

requests that Defendant, Kraft Foods Global, Inc. answer under oath the following Interrogatories

within thirty (30) days from the date of service hereof.

### INSTRUCTIONS AND DEFINITIONS

1.      When referring to a person, "identify" means to give, to the extent known,

the person's full name, present or last known address, and, when referring to a natural

person, the present or last known place of employment.

2.      When referring to documents, "identify" means to give, to the extent known,

the (a) type of document; (b) general subject matter; (c) date of the document; and (d)

author(s), addressee(s), and recipient(s).

3.      "Concerning" means referring to, describing, evidencing, or constituting.

4.      The terms "Defendant," "you," "yours," "Kraft Foods Global" and related

terms shall mean Kraft Foods Global, Inc., any parent corporations or organizations,

1

      

8.    Identify all persons who act or have acted as spokespeople for, or who consult or have consulted with, Defendant concerning Defendant's Products.

9.    Identify all studies, analyses or other evaluations of the '762 patent, and any other patent(s) concerning beverage filter cartridges and/or beverage dispensers that utilize beverage filter cartridges, and set forth in detail whether, and if so how, any such documents support or otherwise relate to your defense against the charge of infringement of the '762 patent.

10.    State the basis for Defendant's Second Affirmative Defense and Counterclaim for Declaratory Relief Regarding Invalidity, in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment thereon, including a claim chart setting forth the limitations of each claim of the '762 patent, your proposed construction of each such limitation, and the Prior Art that you believe invalidates each claim.

11.    State the basis for Defendant's Third Affirmative Defense, in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment thereon.

12.    State the basis for Defendant's First Affirmative Defense and Counterclaim for Declaratory Relief Regarding Non-Infringement, in detail sufficient for the Court to decide whether to grant or deny a motion for summary judgment thereon, including a claim chart setting forth the limitations of each claim of the '762 patent, your proposed construction of each such limitation, and an explanation of why you contend that Defendant has not infringed each claim (both literally and under the doctrine of equivalents).

13.    Identify all documents and things, including all Prior Art, that support your argument that one or more claims of the '762 patent is invalid.

14.    Identify all Keurig products ever in your possession, custody, or control, state the date on which each such Keurig product was acquired, and identify all persons having knowledge of Defendant's decision to acquire each such Keurig product.

4

Exhibit 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEURIG, INCORPORATED,                          )
                                               )
            Plaintiff,                         )
                                               )
      v.                                       )      C. A. No. 07-17 (GMS)
                                               )
KRAFT FOODS GLOBAL, INC.,                      )      **JURY TRIAL DEMANDED**
TASSIMO CORPORATION, and                       )
KRAFT FOODS INC.,                              )
                                               )
            Defendants                         )

## DEFENDANTS KRAFT FOODS GLOBAL, INC., TASSIMO CORPORATION, AND KRAFT FOODS INC.'S JOINT INVALIDITY CONTENTIONS

Pursuant to the Court's Scheduling Order of July 17, 2007, Defendants Kraft Foods Global, Inc., Tassimo Corporation, and Kraft Foods Inc. (collectively, "Kraft"), submits the following invalidity contentions for claims 1, 2, and 8-10 of U.S. Patent No. 6,607,762 ("'762 Patent") asserted by Plaintiff Keurig. Kraft reserves the right to supplement these invalidity contentions, or cite additional prior art, as discovery progresses or if Plaintiff Keurig modifies its disclosure of asserted claims or infringement contentions.

Kraft provides its invalidity contentions in the claim chart below. Kraft cites three (3) pieces of prior art, and submits four (4) invalidity contentions based on the cited prior art: the Kenco Singles® capsules in public use in the United States prior to the December 1, 1999 date of invention of the '762 Patent alleged by Plaintiff Keurig, as shown in Exhibit A; U.S. Patent No. 4,853,234 ("'234 Patent") to Bentley *et al.* entitled "Beverage Packages," as shown in Exhibit B; U.S. Patent No. U.S. Patent No. 4,452,130 to Klein entitled "Electrical Apparatus Useful to Prepare a Hot Beverage" ("'130 Patent"), as shown in Exhibit C; and as

further shown when inverted in Exhibit D; and, finally, the '130 Patent in view of its operation as disclosed.

These invalidity contentions are consistent with Keurig's infringement contentions in Keurig's Disclosure of Infringement Contentions served on July 27, 2007. As indicated in the Kraft defendants' non-infringement claim charts, the Tassimo® Discs do not infringe the '762 patent. Nevertheless, as shown by the following invalidity contentions, if claims 1, 2 and 8-10 of the '762 Patent are applied as Keurig applied these claims in its infringement claim charts, and reiterated in its counsel's letter dated August 3, 2007, then the cited prior art anticipates.

### Invalidity Claim Charts

### A. Kenco Singles™ Capsule

| Claim Language - '762 Patent | Kenco Singles™ Capsule |
|---|---|
| **Claim 1** | |
| A beverage filter cartridge comprising: | **YES.** The Kenco Singles capsule is a beverage filter cartridge. |
| an outer container having an access opening: | **YES.** The Singles capsule has an outer container with an access opening. |
| a filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** The Kenco Singles includes a permeable filter received in and configured and arranged in the inner container such that it separates two chambers in the interior of the container so that infused beverage created in the first chamber must flow through the filter element before it can enter the second chamber. |
| a soluble beverage medium stored in said first chamber; and | **YES.** The Kenco Singles include a first chamber in which a beverage medium is stored. Beverage media suitable for use with Singles capsules include, for example, roast and ground coffee, tea, and powdered chocolate. |

| Claim Language - '762 Patent | Kenco Singles™ Capsule |
|---|---|
| a lid closing said access opening, said lid having a first section overlying said first chamber and a second section overlying said second chamber, | **YES.** The Kenco Singles capsule includes an aluminum foil lid closing the access opening. The Singles' lid having a section that directly covers the first chamber, in which beverage medium is stored and infused with liquid, and another section that directly covers the second chamber including the outlet. |
| the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** The section of the Singles' foil lid directly covering the first chamber is *piercable* to accommodate an inflow of liquid for infusion with the stored beverage medium to produce a beverage in the same manner as depicted in the '762 Patent. *Cf.* '762 Patent, Column 3, Lines 40-46; **Fig. 5.** |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** The Singles' filter welded to the communication channels is a paper filter that permits a flow of brewed beverage from the first chamber to the second chamber. |
| the second section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge. | **YES.** The section of the Singles' foil lid directly covering the second chamber is piercable to expose to the outlet and permit an outflow of the brewed beverage to the exterior of the capsule. |
| **Claim 2** | |
| The beverage filter cartridge of claim 1 wherein said lid has less resistance to being pierced as compared to the resistance to piercing of said container. | **YES.** The Singles capsule has a hard plastic outer container made of polypropylene that has a greater resistance to piercing than the aluminum foil lid. |
| **Claim 8** | |
| The beverage filter cartridge of claim 1 wherein said outer container is impermeable to liquids and gases. | **YES.** The Singles capsule has a hard plastic outer container made of polypropylene that is impermeable to liquids and gases. |
| **Claim 9** | |
| The beverage filter cartridge of claim 1 or 8 wherein said lid is impermeable to liquids and gases. | **YES.** The Singles capsule has a lid comprising a layer of aluminum foil that is impermeable to liquids and gases. |
| **Claim 10** | |
| A beverage filter cartridge comprising: | **YES.** The Kenco Singles capsule is a beverage filter cartridge. |
| an outer container having a access opening; | **YES.** The Singles capsule has an outer container with an access opening. |

| Claim Language - '762 Patent | Kenco Singles™ Capsule |
|---|---|
| a planar filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** The Kenco Singles includes a permeable planar filter received in and configured and arranged in the inner container such that it separates two chambers in the interior of the container so that infused beverage created in the first chamber must flow through the filter element before it can enter the second chamber. |
| a soluble beverage medium stored in said first chamber; and | **YES.** The Kenco Singles include a first chamber in which a beverage medium is stored. Beverage media suitable for use with Singles capsules include, for example, roast and ground coffee, tea, and powdered chocolate. |
| a lid closing said access opening, said lid and said outer container being impermeable to liquids and gases, | **YES.** The Kenco Singles capsule includes an aluminum foil lid closing the access opening. The aluminum foil lid and the polypropylene outer container are both impermeable to liquids and gases. |
| said lid having first section overlying said first chamber and a second section overlying said second chamber, | **YES.** The Singles' lid includes a section that directly covers the first chamber, in which beverage medium is stored and infused with liquid, and another section that directly covers the second chamber including the outlet. |
| the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** The section of the Singles' foil lid directly covering the first chamber is *piercable* to accommodate an inflow of liquid for infusion with the stored beverage medium to produce a beverage in the same manner as depicted in the '762 Patent. *Cf.* '762 Patent, Column 3, Lines 40-46; **Fig. 5.** |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** The Singles' filter welded to the communication channels is a paper filter that permits a flow of brewed beverage from the first chamber to the second chamber. |
| the and section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge, | **YES.** The section of the Singles' foil lid directly covering the second chamber is piercable to expose to the outlet and permit an outflow of the brewed beverage to the exterior of the capsule. |
| said lid having less resistance to being pierced as compared to the resistance to piercing of said container. | **YES.** The Singles capsule has a hard plastic outer container made of polypropylene that has a greater resistance to piercing than the aluminum foil lid. |

**B.  U.S. Patent No. 4,853,234**

| Claim Language - '762 Patent | U.S. Patent No. 4,853,234 |
|---|---|
| **Claim 1** | |
| A beverage filter cartridge comprising: | **YES.** The '234 Patent discloses "a sealed beverage package containing one or more beverage ingredients and being formed from substantially air-and water-impermeable materials." '234 Patent, Abstract. |
| an outer container having an access opening: | **YES.** The '234 Patent discloses an outer container 20, that includes a lower edge 23 that defines an access opening. *See* Column 7, Lines 9-17; **Fig. 5.** |
| a filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** The '234 Patent discloses that a filter 36 separates a first chamber 21, which contains beverage ingredients, from a second chamber 37, so that infused beverage created in the first chamber 21 must flow through the filter 36 before it can enter the second chamber 37. *See* '234 Patent, Column 7, Lines 41-46; **Fig. 4.** In addition, outlet channels 31, 32, 33 comprise slots 30 that can be formed of a dimension that acts as a filter to separate collection chamber 35, in fluid communication with second chamber 37, from first chamber 21. *See* '234 Patent, Column 7, Lines 27-30, 41-42. |
| a soluble beverage medium stored in said first chamber; and | **YES.** First chamber 21 contains beverage ingredients, such as roast and ground coffee particles. *See* '234 Patent, Column 7, Lines 12-15. |
| a lid closing said access opening, said lid having a first section overlying said first chamber and a second section overlying said second chamber, | **YES.** A foil 25 is sealed along the lower edge 23 of outer container 20. *See* '243 Patent, Column 7, Lines 17-21; **Fig. 6.** Foil 25 has a section directly covering the first chamber 21 and another section directly covering the second chamber 37. |
| the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** Foil 25 is formed of a *piercable* material and includes a section overlying first chamber 21 that can be pierced to permit an inflow of liquid directly into chamber 21 to infuse the beverage ingredient stored therein. |

| Claim Language - '762 Patent | U.S. Patent No. 4,853,234 |
|---|---|
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** Filter 26 is a permeable filter, made of a conventional filter material, that accommodates a flow of brewed beverage from the first chamber 21 to the second chamber 37. *See* '234 Patent, Column 4, Lines 9-12. |
| the second section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge. | **YES.** Foil 25 is formed of a piercable material and includes another section overlying second chamber 37 that can be pierced to permit an outflow of brewed beverage to the exterior of outer container 20. |
| **Claim 2** | |
| The beverage filter cartridge of claim 1 wherein said lid has less resistance to being pierced as compared to the resistance to piercing of said container. | **YES.** Outer container 20, which is formed of rigid polypropylene, has a greater resistance to piercing than foil 25, which can be aluminum or a laminated material. *See* '243 Patent, Column 2, Lines 15-19. |
| **Claim 8** | |
| The beverage filter cartridge of claim 1 wherein said outer container is impermeable to liquids and gases. | **YES.** Outer container 20 is formed of a rigid plastic material, such as polypropylene, that is impermeable to liquids and gases. |
| **Claim 9** | |
| The beverage filter cartridge of claim 1 or 8 wherein said lid is impermeable to liquids and gases. | **YES.** Foil 25 is formed of an aluminum sheet or a laminated material that is impermeable to liquids and gases. |
| **Claim 10** | |
| A beverage filter cartridge comprising: | **YES.** The '234 Patent discloses "a sealed beverage package containing one or more beverage ingredients and being formed from substantially air-and water-impermeable materials." '234 Patent, Abstract. |
| an outer container having a access opening; | **YES.** The '234 Patent discloses an outer container 20, that includes a lower edge 23 that defines an access opening. *See* Column 7, Lines 9-17; **Fig. 5.** |
| a planar filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** The '234 Patent discloses that a planar filter 36 separates a first chamber 21, which contains beverage ingredients, from a second chamber 37, so that infused beverage created in the first chamber 21 must flow through the filter 36 before it can enter the second chamber 37. *See* '234 Patent, Column 7, Lines 41-46; **Fig. 4.** |

| Claim Language - '762 Patent | U.S. Patent No. 4,853,234 |
|---|---|
| a soluble beverage medium stored in said first chamber; and | **YES.** First chamber 21 contains beverage ingredients, such as roast and ground coffee particles. *See* '234 Patent, Column 7, Lines 12-15. |
| a lid closing said access opening, said lid and said outer container being impermeable to liquids and gases, | **YES.** A foil 25 is sealed along the lower edge 23 of outer container 20. *See* '243 Patent, Column 7, Lines 17-21; **Fig. 6.** Both the outer container 20, which is formed of a rigid plastic material, and the foil 25, which is formed of aluminum or a laminate material, are impermeable to liquids and gases. |
| said lid having first section overlying said first chamber and a second section overlying said second chamber, | **YES.** Foil 25 has a section directly covering the first chamber 21 and another section directly covering the second chamber 37. |
| the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** Foil 25 is formed of a *piercable* material (aluminum or a laminate) and includes a section overlying first chamber 21 that can be pierced to permit an inflow of liquid directly into chamber 21 to infuse the beverage ingredient stored therein. |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** Filter 26 is a permeable filter, made of a conventional filter material, that accommodates a flow of brewed beverage from the first chamber 21 to the second chamber 37. *See* '234 Patent, Column 4, Lines 9-12. |
| the and section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge, | **YES.** Foil 25 is formed of a piercable material and includes another section overlying second chamber 37 that can be pierced to permit an outflow of brewed beverage to the exterior of outer container 20. |
| said lid having less resistance to being pierced as compared to the resistance to piercing of said container. | **YES.** Outer container 20, which is formed of rigid polypropylene, has a greater resistance to piercing than foil 25, which can be aluminum or a laminated material. *See* '243 Patent, Column 2, Lines 15-19. |

### C.  U.S. Patent No. 4,452,130 (Inverted)

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 (Inverted) |
|---|---|
| **Claim 1** | When inverted, the beverage filter cartridge disclosed in the '130 Patent has all of the elements of claim 1 of the '762 Patent. This can be readily seen from the cartridge structure illustrated in an inverted posture depicted in Exhibit D. |
| A beverage filter cartridge comprising: | **YES.** The '130 Patent discloses a beverage filter cartridge, which is described as a filter carrier useful to prepare a hot beverage from a flavor substance. *See* '130 Patent, Abstract. An inverted filter carrier is depicted in Exhibit D. |
| an outer container having an access opening: | **YES.** An outer container 11 has an access opening. *See* '130 Patent; Column 2, Lines 6-9; **Fig. 1.** |
| a filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** A filter 12 separates a first chamber storing a flavor substance 15 from a collecting channel 18 in fluid communication with a second chamber 17 via a passageway 19, so that infused beverage created in the first chamber must flow through the filter 12 before it can enter the second chamber 17. |
| a soluble beverage medium stored in said first chamber; and | **YES.** The '130 Patent discloses that the flavor substance 15 is infused with water to brew a beverage. *See* '130 Patent, Column 2, Lines 55-65. |
| a lid closing said access opening, said lid having a first section overlying said first chamber and a second section overlying said second chamber, | **YES.** A lid 14 seals the access opening of the outer container. *See* '130 Patent Column 2, Lines 12-15. The lid 14 includes a section that directly covers the first chamber storing the flavor substance 15 and another section that directly covers the second chamber 17. |
| the first section of said lid being pierceable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** A section of the lid 14 overlying the chamber storing the flavor substance 15 is *pierceable* to accommodate an inflow of liquid, such as hot water, to infuse the flavor substance 15 to produce a brewed beverage. *Cf.* '130 Patent, Column 2, Lines 37-38 and 55-60; **Fig. 2.** |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** A brewed beverage can pass through filter 12 into collecting channel 18 through the passageway 19 and into the second chamber 17. *See* '130 Patent, Column 2, Lines 60-63. |

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 (Inverted) |
|---|---|
| the second section of said lid being pierceable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge. | **YES.** A section of lid 14 overlying second chamber 17 is *pierceable* to accommodate an outflow from the outside container 11. *Cf.* '130 Patent, Column 2, Lines 25-29. After a liquid under pressure is injected into the first chamber storing the flavor substance, brewed beverage can pass through the filter 12, and flow through the collecting channel 18 to a passageway 19. The brewed beverage can then flow to the second chamber 17 and exit the filter cartridge 11 at the outlet formed by the piercing of the lid 14 at the section overlying the second chamber. *See* Exhibit D; *cf.* '130 Patent, Column 2, Lines 61-65. |
| **Claim 2** | |
| The beverage filter cartridge of claim 1 wherein said lid has less resistance to being pierced as compared to the resistance to piercing of said container. | **YES. Fig. 1** of the '130 patent shows that the lid 14 is a thinner layer than the outer container 11, which must be sufficiently rigid to withstand the piercing force of the tube 27 as it pierces lid 14. In addition, the '740 Patent, which incorporates the filter carrier of the '130 Patent by reference, describes that the lid is made of foil. *See* '740 Patent, Column 2, Lines 60-66. |
| **Claim 8** | |
| The beverage filter cartridge of claim 1 wherein said outer container is impermeable to liquids and gases. | **YES.** The lid 14 and a lower lid 13, which closes a lower portion of second chamber 17, seals the flavor substance stored in the filter unit 11 from the atmosphere and the water stored in cup 10. *See* '130 Patent, Column 2, Lines 12-15. |
| **Claim 9** | |
| The beverage filter cartridge of claim 1 or 8 wherein said lid is impermeable to liquids and gases. | **YES.** The lid 14 closes the access opening of filter unit 11 to seal the flavor substance 15 stored therein from the atmosphere and the water stored in the cup 10. *See* '130 Patent, Column 2, Lines 12-15. |

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 (Inverted) |
|---|---|
| **Claim 10** | When inverted, the beverage filter cartridge disclosed in the '130 Patent has all of the elements of claim 10 of the '762 Patent. This can be readily seen from the cartridge structure illustrated in an inverted posture depicted in Exhibit D. |
| A beverage filter cartridge comprising: | **YES.** The '130 Patent discloses a beverage filter cartridge, which is described as a filter carrier useful to prepare a hot beverage from a flavor substance. *See* '130 Patent, Abstract. An inverted filter carrier is depicted in Exhibit D. |
| an outer container having a access opening; | **YES.** An outer container 11 has an access opening. *See* '130 Patent; Column 2, Lines 6-9; **Fig. 1.** |
| a planar filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** A planar filter 12 separates a first chamber storing a flavor substance 15 from a collecting channel 18 in fluid communication with a second chamber 17 via a passageway 19, so that infused beverage created in the first chamber must flow through the filter 12 before it can enter the second chamber 17. The planar filter 12 assumes a frustoconical shape of the filter carrier 11. |
| a soluble beverage medium stored in said first chamber; and | **YES.** The '130 Patent discloses that the flavor substance 15 is infused with water to brew a beverage. *See* '130 Patent, Column 2, Lines 55-65. |
| a lid closing said access opening, said lid and said outer container being impermeable to liquids and gases, | **YES.** A lid 14 seals the access opening of the outer container. *See* '130 Patent Column 2, Lines 12-15. The lid 14 and the lower lid 13 seal the flavor substance 15 stored in the filter carrier 11 from the atmosphere and the water stored in a cup 10. *See* '130 Patent, Column 2, Lines 12-15. |
| said lid having first section overlying said first chamber and a second section overlying said second chamber, | **YES.** The lid 14 includes a section that directly covers the first chamber storing the flavor substance 15 and another section that directly covers the second chamber 17. |

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 (Inverted) |
|---|---|
| the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** A section of the lid 14 overlying the chamber storing the flavor substance 15 is *piercable* to accommodate an inflow of liquid, such as hot water, to infuse the flavor substance 15 to produce a brewed beverage. *Cf.* '130 Patent, Column 2, Lines 37-38 and 55-60; **Fig. 2.** |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** A brewed beverage can pass through filter 12 into collecting channel 18 through the passageway 19 and into the second chamber 17. *See* '130 Patent, Column 2, Lines 60-63. |
| the and section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge, | **YES.** A section of lid 14 overlying second chamber 17 is *piercable* to accommodate an outflow from the outside container 11. *Cf.* '130 Patent, Column 2, Lines 25-29. After a liquid under pressure is injected into the first chamber storing the flavor substance, brewed beverage can pass through the filter 12, and flow through the collecting channel 18 to a passageway 19. The brewed beverage can then flow to the second chamber 17 and exit the filter cartridge 11 at the outlet formed by the piercing of the lid 14 at the section overlying the second chamber. *See* Exhibit E; *cf.* '130 Patent, Column 2, Lines 61-65. |
| said lid having less resistance to being pierced as compared to the resistance to piercing of said container. | **YES.** Fig. 1 of the '130 patent shows that the lid 14 is a thinner layer than the outer container 11, which must be sufficiently rigid to withstand the piercing force of the tube 27 as it pierces lid 14. In addition, the '740 Patent, which incorporates the filter carrier of the '130 Patent by reference, describes that the lid is made of foil. *See* '740 Patent, Column 2, Lines 60-66. |

### D.  U.S. Patent No. 4,452,130

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 |
|---|---|
| **Claim 1** | |
| A beverage filter cartridge comprising: | **YES.** The '130 Patent discloses a beverage filter cartridge, which is described as a filter carrier useful to prepare a hot beverage from a flavor substance. *See* '130 Patent, Abstract. |

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 |
|---|---|
| an outer container having an access opening: | **YES.** An outer container 11 has an access opening. *See* '130 Patent; Column 2, Lines 6-9; **Fig. 1.** |
| a filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** A filter 12 separates two chambers in the interior of the container so that infused beverage created in a first chamber, storing a flavor substance 15, must flow through the filter 12 before it can enter the second chamber 17. The filter 12 separates the first chamber from a collecting channel 18 in fluid communication with the second chamber 17 via a passageway 19. |
| a soluble beverage medium stored in said first chamber; and | **YES.** The '130 Patent discloses that the flavor substance 15 is infused with water to brew a beverage. *See* '130 Patent, Column 2, Lines 55-65. |
| a lid closing said access opening, said lid having a first section overlying said first chamber and a second section overlying said second chamber, | **YES.** A lid 14 seals the access opening of the outer container. *See* '130 Patent Column 2, Lines 12-15. The lid 14 includes a section that directly covers the first chamber storing the flavor substance 15 and another section that directly covers the second chamber 17. |
| the first section of said lid being piercable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** Hot water outlets 25 pierce a section of the lid 14 overlying the chamber storing the flavor substance 15. *See* '130 Patent, Column 2, Lines 37-38; **Fig. 2.** |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** A brewed beverage can pass through filter 12 into collecting channel 18 through the passageway 19 and into the second chamber 17. *See* '130 Patent, Column 2, Lines 60-63. |
| the second section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge. | **YES.** A tube 27 penetrates a section of lid 14 overlying second chamber 17 to access a lower lid 13 at a bottom portion of section of the second chamber 17 to accommodate an outflow from the outside container 11. *See* '130 Patent, Column 2, Lines 25-29. After brewed beverage drips through the filter 12, the beverage collects in the channel 18, flows through a passageway 19, and exits a hole at the bottom of second chamber 17. *Id.*, Column 2, Lines 61-65. |

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 |
|---|---|
| **Claim 2** | |
| The beverage filter cartridge of claim 1 wherein said lid has less resistance to being pierced as compared to the resistance to piercing of said container. | **YES.** **Fig. 1** of the '130 patent shows that the lid 14 is a thinner layer than the outer container 11, which must be sufficiently rigid to withstand the piercing force of the tube 27 as it pierces lid 14. In addition, U.S. Patent No. 5,111,740 to Klein ("'740 Patent"), which incorporates the filter carrier of the '130 Patent by reference, describes that the lid is made of foil. *See* '740 Patent, Column 2, Lines 60-66. The '740 Patent is attached as Exhibit E. |
| **Claim 8** | |
| The beverage filter cartridge of claim 1 wherein said outer container is impermeable to liquids and gases. | **YES.** The lid 14 and a lower lid 13, which closes a lower portion of second chamber 17, seals the flavor substance stored in the filter unit 11 from the atmosphere and the water stored in cup 10. *See* '130 Patent, Column 2, Lines 12-15. |
| **Claim 9** | |
| The beverage filter cartridge of claim 1 or 8 wherein said lid is impermeable to liquids and gases. | **YES.** The lid 14 closes the access opening of filter unit 11 to seal the flavor substance 15 stored therein from the atmosphere and the water stored in the cup 10. *See* '130 Patent, Column 2, Lines 12-15. |
| **Claim 10** | |
| A beverage filter cartridge comprising: | **YES.** The '130 Patent discloses a beverage filter cartridge, which is described as a filter carrier useful to prepare a hot beverage from a flavor substance. *See* '130 Patent, Abstract. |
| an outer container having a access opening; | **YES.** An outer container 11 has an access opening. *See* '130 Patent; Column 2, Lines 6-9; **Fig. 1.** |
| a planar filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers; | **YES.** A planar filter 12 separates two chambers in the interior of the container so that infused beverage created in a first chamber, storing a flavor substance 15, must flow through the filter 12 before it can enter the second chamber 17. The filter 12 separates the first chamber from a collecting channel 18 in fluid communication with the second chamber 17 via a passageway 19. The planar filter 12 assumes a frustoconical shape of the filter carrier 11. |

| Claim Language - '762 Patent | U.S. Patent No. 4,452,130 |
|---|---|
| a soluble beverage medium stored in said first chamber; and | **YES.** The '130 Patent discloses that the flavor substance 15 is infused with water to brew a beverage. *See* '130 Patent, Column 2, Lines 55-65. |
| a lid closing said access opening, said lid and said outer container being impermeable to liquids and gases, | **YES.** A lid 14 seals the access opening of the outer container. *See* '130 Patent Column 2, Lines 12-15. The lid 14 and the lower lid 13 seal the flavor substance 15 stored in the filter carrier 11 from the atmosphere and the water stored in a cup 10. *See* '130 Patent, Column 2, Lines 12-15. |
| said lid having first section overlying said first chamber and a second section overlying said second chamber, | **YES.** The lid 14 includes a section that directly covers the first chamber storing the flavor substance 15 and another section that directly covers the second chamber 17. |
| the first section of said lid being pierceable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage, | **YES.** Hot water outlets 25 pierce a section of the lid 14 overlying the chamber storing the flavor substance 15. *See* '130 Patent, Column 2, Lines 37-38; **Fig. 2.** |
| said filter element being permeable to liquid to accommodate a flow of the beverage from said first chamber into said second chamber, and | **YES.** A brewed beverage can pass through filter 12 into collecting channel 18 through the passageway 19 and into the second chamber 17. *See* '130 Patent, Column 2, Lines 60-63. |
| the and section of said lid being pierceable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge, | **YES.** A tube 27 penetrates a section of lid 14 overlying second chamber 17 to access a lower lid 13 at a bottom portion of section of the second chamber 17 to accommodate an outflow from the outside container 11. *See* '130 Patent, Column 2, Lines 25-29. After brewed beverage drips through the filter 12, the beverage collects in the channel 18, flows through a passageway 19, and exits a hole at the bottom of second chamber 17. *Id.*, Column 2, Lines 61-65. |
| said lid having less resistance to being pierced as compared to the resistance to piercing of said container. | **YES. Fig. 1** of the '130 patent shows that the lid 14 is a thinner layer than the outer container 11, which must be sufficiently rigid to withstand the piercing force of the tube 27 as it pierces lid 14. In addition, the '740 Patent", which incorporates the filter carrier of the '130 Patent by reference, describes that the lid is made of foil. *See* '740 Patent, Column 2, Lines 60-66. |

POTTER ANDERSON & CORROON LLP

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700

Dated:  August 10, 2007
812042 / 31118

By:  */s/ Kenneth L. Dorsney*
    Richard L. Horwitz (#2246)
    Kenneth L. Dorsney (#3726)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, DE  19899-0951
    Tel:  302-984-6169
    rhorwitz@potteranderson.com
    kdorsney@potteranderson.com

*Attorneys for Defendants Kraft Foods Global, Inc.,*
*Tassimo Corporation, and Kraft Foods Inc.*

## CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on August 10, 2007, a true and correct copy of

the within document was caused to be served on the attorney of record at the following addresses

as indicated:

## VIA HAND DELIVERY

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391
jshaw@ycst.com
kkeller@ycst.com

## VIA ELECTRONIC MAIL

Michael A. Albert
Michael N. Rader
Laura Topper
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210
malbert@wolfgreenfield.com
mrader@wolfgreenfield.com
ltopper@wolfgreenfield.com

/s/ Kenneth L. Dorsney
Kenneth L. Dorsney

799719 / 31118

Exhibit 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>     Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br>TASSIMO CORPORATION, and<br>KRAFT FOODS INC.,<br><br>     Defendants. | Civil Action No. 07-017-GMS |

**PLAINTIFF'S RESPONSE TO DEFENDANTS KRAFT FOODS GLOBAL, INC.,
TASSIMO CORP., AND KRAFT FOODS INC.'S JOINT INVALIDITY CONTENTIONS**

In response to Defendants Kraft Foods Global, Inc., Tassimo Corp., and Kraft Foods Inc.'s Joint Invalidity Contentions ("Invalidity Contentions"), Plaintiff Keurig, Incorporated ("Plaintiff" or "Keurig") provides the following validity contentions for asserted claims 1, 2, 8, 9, and 10 of United States Patent No. 6,607,762 (the "'762 patent").

Plaintiff bases these validity contentions on its current knowledge, understanding and belief as to the facts and information available to it as of the date of these disclosures. This case is still in the early stages of discovery and Plaintiff has not yet completed its investigation, collection of information, discovery or analysis related to this action. Accordingly, Plaintiff reserves the right to supplement, amend or modify the information contained herein and introduce such information and any subsequently-identified documents at trial. As discovery is taken, and additional details are provided regarding the alleged prior public use or if Defendants modify their invalidity contentions, Plaintiff's validity contentions may need to be amended, supplemented and/or corrected.

## I.    THE '762 PATENT IS VALID IN LIGHT OF THE ALLEGED PRIOR ART IDENTIFIED BY DEFENDANTS

The alleged prior art identified in Defendants' Invalidity Contentions *inter alia* does not

disclose each and every element of the claimed invention of the '762 patent.  Defendants, in their

Invalidity Contentions, allege that the '762 patent is invalid under four separate bases of

invalidity.  Defendants contend that the '762 patent is anticipated by a capsule called Kenco

Singles which was allegedly in public use in the United States prior to the invention of the

claimed matter of the '762 patent.[1]  Defendants also identify two prior art patents that allegedly

anticipate the '762 patent, including United States Patent No. 4,853,234, entitled "Beverage

Packages" (the "'234 patent"), and United States Patent No. 4,452,130, entitled "Electrical

Apparatus Useful to Prepare a Hot Beverage" (the "'130 patent").[2]  Defendants also allege that

the '130 patent anticipates the '762 patent in a different configuration than disclosed in the '130

patent – a configuration Defendants have dubbed "inverted."

---

[1] Defendants contend that the Kenco Singles capsule was in public use in the United States more than one year prior to the date of filing of the application that issued as the '762 patent. However, Defendants have provided no evidence supporting this contention and Keurig does not concede this issue.

[2] Defendants also included a copy of United States Patent No. 5,111,740, entitled "Electrical Apparatus Useful to Prepare a Hot Beverage" (the "'740 patent"), in the Exhibits to their Invalidity Contentions.  However, Defendants' Invalidity Contentions provide no separate allegations of invalidity with respect to this patent.  Defendants' Invalidity Contentions simply refer to the '740 patent in their contentions for the '130 patent.  Accordingly, Keurig has not provided a detailed response as to which elements are not taught or disclosed in this patent. However, it is clear that the '740 patent does not disclose each and every element of the claimed invention of the '762 patent.  Keurig reserves the right to supplement this response if Defendants supplement or otherwise amend their invalidity contentions to allege that the '740 patent invalidates the '762 patent.

2

065927.1001

### A.    Kenco Singles Capsules Do not Anticipate the '762 Patent

Kenco Singles capsules do not anticipate the '762 patent under 35 U.S.C. § 102 because the Kenco Singles capsules do not include each and every element of the claimed invention of the '762 patent.  With respect to independent claims 1 and 10 of the '762 patent, the Kenco Singles capsules do not include a single lid that is both: (1) piercable to accommodate an inflow of liquid into a first chamber for infusion with a beverage medium to produce a beverage; and (2) piercable to accommodate an outflow of a beverage from a second chamber to the exterior of the cartridge.  Claims 2, 8 and 9, which depend from claim 1, are also not anticipated by the Kenco Singles capsules for at least these same reasons.  Accordingly, for at least these reasons, the Kenco Singles capsules do not anticipate the '762 patent.

### B.    The '234 Patent Does not Anticipate the '762 Patent

The '234 patent does not anticipate the '762 patent under 35 U.S.C. § 102 because the '234 patent does not disclose each and every element of the claimed invention of the '762 patent.  With respect to independent claims 1 and 10 of the '762 patent, the '234 patent does not disclose a single lid that is both: (1) piercable to accommodate an inflow of liquid into a first chamber for infusion with a beverage medium to produce a beverage; and (2) piercable to accommodate an outflow of a beverage from a second chamber to the exterior of the cartridge.  Claims 2, 8 and 9, which depend from claim 1, are also not anticipated by the '234 patent for at least these same reasons.  Accordingly, for at least these reasons, the '234 patent does not anticipate the '762 patent.

### C.    The '130 Patent Does not Anticipate the '762 Patent

The '130 patent does not anticipate the '762 patent under 35 U.S.C. § 102 because the '130 patent does not disclose each and every element of the claimed invention of the '762 patent.

3

With respect to independent claims 1 and 10 of the '762 patent, the '130 patent does not disclose a single lid that is both: (1) piercable to accommodate an inflow of liquid into a first chamber for infusion with a beverage medium to produce a beverage; and (2) piercable to accommodate an outflow of a beverage from a second chamber to the exterior of the cartridge. Claims 2, 8 and 9, which depend from claim 1, are also not anticipated by the '234 patent for at least these same reasons. Accordingly, for at least these reasons, the '234 patent does not anticipate the '762 patent.

### D.    The '130 Patent Does not Anticipate the '762 Patent in an "Inverted" Configuration

The '130 patent in an "inverted" configuration does not anticipate the '762 patent under 35 U.S.C. § 102. Defendants allege that the filter carrier unit disclosed in the '130 patent can be "inverted," *i.e.*, turned upside down, to anticipate the '762 patent. However, this "inverted" configuration is not disclosed or in any way suggested in the '130 patent. And the disclosure of the '130 patent does not enable a functioning beverage filter cartridge in the "inverted" configuration. In addition, with respect to independent claims 1 and 10 of the '762 patent, Defendants' "inverted" configuration of the '130 patent does not disclose a single lid that is both: (1) piercable to accommodate an inflow of liquid into a first chamber for infusion with a beverage medium to produce a beverage; and (2) piercable to accommodate an outflow of a beverage from a second chamber to the exterior of the cartridge. Claims 2, 8 and 9, which depend from claim 1, are also not anticipated by the '130 patent in Defendants' "inverted" configuration for at least these same reasons. Accordingly, for at least these reasons, Defendants' "inverted" configuration of the '130 patent does not anticipate the '762 patent.

4

## II.     CLAIM 10 OF THE '762 PATENT IS NOT INDEFINITE

Defendants, in their Invalidity Contentions, do not assert that any terms in the claims of the '762 patent are indefinite under 35 U.S.C. § 112(2). Indeed, Defendants, in their Invalidity Contentions, were able to identify where each of the elements of the claimed invention of the '762 patent are allegedly disclosed in the identified prior art, admitting that Defendants can (or at least claim to be able to) understand the claim language.

In Defendants Kraft Foods Global, Inc., Tassimo Corp., and Kraft Foods Inc.'s Joint Response to Plaintiff's Disclosures of Asserted Claims and Infringement Contentions, Defendants allege that the claim language "and the **and** [SIC] section of said lid being piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge" is indefinite. Defendants' suggestion that a minor typographical error evident from the face of the patent renders the patent claims indefinite is contrary to well established law.[3] This claim language includes a typographical error that was introduced during printing of the patent – "and the **and** section" should read "and the **second** section." It is clear from the context of the claim language and the disclosure in the specification that the second section of the lid is being referred to. Indeed, the prosecution history confirms that "and" was supposed to be "second." This claim language is from a claim added during prosecution of the application that issued as the '762 patent.[4] In the amendment where this language was added, the correct language ("second") appears. This amendment is part of the prosecution history and makes clear what the correct word is. Accordingly, this claim language is not insolubly ambiguous.

---

[3] *See, e.g., Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003) (holding that a district court can retroactively correct errors in claim language when the error is evident from the face of the patent).

[4] *See* Amendment to Office Action Mailed on September 24, 2002 at 4.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
*msquire@ycst.com*

*Attorneys for Plaintiff Keurig, Incorporated*

OF COUNSEL:

Michael A. Albert
Michael N. Rader
Laura E. Topper
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

Dated: August 31, 2007

065927.1001

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on August 31, 2007, I caused copies

of the foregoing document to be served upon the following counsel in the manner indicated:

### BY E-MAIL AND HAND DELIVERY

Richard L. Horwitz, Esquire
*rhorwitz@potteranderson.com*
David E. Moore, Esquire
*dmoore@potteranderson.com*
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801

### BY E-MAIL

David Schlitz, Esquire
*david.schlitz@bakerbotts.com*
Baker Botts L.L.P
The Warner
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302)-571-6600

*Attorneys for Plaintiff Keurig, Incorporated*