IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEURIG, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-17 (GMS) |
| | ) | |
| KRAFT FOODS GLOBAL, INC., | ) | **JURY TRIAL DEMANDED** |
| TASSIMO CORPORATION, and | ) | |
| KRAFT FOODS INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

### **DEFENDANTS' OPPOSITION TO KEURIG'S MOTION *IN LIMINE* NO.1**

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel: 302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

Dated: August 15, 2008
Public Version Dated: August 22, 2008
878767 / 31118

BACKGROUND

Kraft opposes Keurig's motion *in limine* to preclude Kraft from offering any evidence of its testing of the Kenco Singles Cartridges ("Singles Cartridges").[1] Keurig's motion must be denied as it received more than adequate opportunity to discover the surrounding circumstances and substance of Kraft's tests, and, in fact, took full advantage of the discovery opportunities it received. Keurig's counsel claims to have declined to accept a partial waiver of work product privilege. Yet, Keurig extensively deposed Andrew Bentley on the design and construction of the testing apparatus and on the Singles Cartridge testing results. Keurig also inspected the testing apparatus and received the full results from the tests. Simply put, there is no risk of surprise or unfairness, and, therefore, no prejudice, in allowing Kraft to offer evidence of its testing of the Singles Cartridges.

ARGUMENT

I. **Evidence of Mr. Bentley's Testing Should Not Be Excluded.**

[REDACTED] Keurig concludes, relying on three cases that pertain to attorney client privilege, that the proper remedy is exclusion of all evidence of Kraft's testing of the Singles Cartridges, including Mr. Bentley's first and second tests. *Id.*

To the contrary, Keurig will not be prejudiced if Kraft offers evidence of Mr. Bentley's testing. Keurig engaged in extensive discovery of the circumstances and substance of the testing. Keurig deposed Mr. Bentley twice, on February 27, 2008, and again on April 2, 2008. During

---

[1] Kraft maintains that the Singles cartridges constitute prior art to Keurig's '762 Patent. Kraft intends to establish at trial that the Singles cartridges embody each and every limitation, and, thus, anticipate, claim 1 of the '762 Patent.

the first deposition, despite Keurig's counsel's assertion that he declined a partial waiver of work product privilege, Keurig's counsel took over 25 pages of testimony about the design and construction of the testing apparatus, the testing methodology used, and the test results from the report. ███████████████████ For example:



███████████████ Keurig's counsel also fully deposed Mr. Bentley on the design of the apparatus:





Kraft's counsel did not object to any questions from Keurig's counsel about the Singles Cartridge testing on the basis of privilege. Further, Keurig's counsel inspected the actual apparatus that Mr. Bentley used. *See* Bentley Depo. Tr., April 2, 2008 (Ex. 3) at 25:20-26:4. ▮▮▮ With respect to Mr. Bentley's second round of testing, the tests were conducted independently from the first round, and in no way depended upon Mr. Bentley's report. On April 2, 2008, Keurig deposed Mr. Bentley after the second test; the entirety of that deposition focused on Mr. Bentley's tests. Ex. 3 at 4-30.

Unlike the defendant in *Columbia*, who offered "at the eleventh hour, to make himself available for deposition" and the defendant in *Mobil Oil*, who waived privilege immediately before the pretrial conference, Kraft never used the work product privilege to prevent Keurig from engaging in discovery of Kraft's testing during the discovery period. *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001); *Mobil Oil Corp. v. Amoco Chem. Corp.*, 779 F. Supp. 1429, 1485 n.43 (D. Del. 1991). Instead, Kraft fully cooperated with Keurig's extensive discovery of its testing. Furthermore, unlike the defendants in the cases cited above, Kraft is not attempting to rely at trial on documents it has not produced, *i.e.*, the report itself. Accordingly, it cannot be said that Kraft has used work

product as both a sword and a shield. *See, e.g., Frontier Refining v. Gorman-Rupp*, 136 F.3d 695, 704 (10th Cir. 1998) (finding that a defendant did not use work product privilege as a sword where the defendant did not rely on the protected evidence to prove or to respond to any claim). The cases cited by Keurig do not support finding prejudice and excluding underlying facts merely because a party has asserted work product privilege as to one document, especially where there has been extensive discovery of the underlying facts. As clearly shown in all four of its motions *in limine*, Keurig wants to have its cake and eat it too by attempting to exclude damaging evidence after taking full discovery of such evidence under the guise of "prejudice."

Further, Kraft's counsel never stated that Andrew Bentley would not testify at trial. Keurig should not have assumed from the discussion of work product privilege that Mr. Bentley would not testify at trial. The work product doctrine protects only "documents and tangible things." Fed. R. Civ. P. 26(b)(3). The assertion of work product privilege as to one of Mr. Bentley's documents does not completely bar him from testifying at trial.

Through the depositions, the inspection of the apparatus, and the documents produced, Keurig engaged in extensive discovery regarding the surrounding circumstances and substance of the testing. This discovery enables Keurig to pursue vigorous cross-examination of Kraft witnesses concerning the testing. Moreover, Keurig's technical experts cited in their rebuttal reports both Bentley's testimony and the results from the Singles Cartridge testing. Accordingly, there is no need to "fashion remedies to prevent unfair surprise and unfairness." *Columbia Pictures*, 259 F.3d at 1196. Therefore, this Court should deny Keurig's request that it exclude evidence of Kraft's testing.[2]

---

[2] If the Court would find an *in camera* inspection of Andrew Bentley's report helpful in deciding this motion, Kraft is willing to provide the report for such inspection. The report has been withheld solely for purposes of preserving work product privilege.

## II. Evidence of Mr. Rowan's Testing of the Singles Cartridges Should Not Be Excluded.

Kraft has never asserted work product privilege with respect to any document created by Mr. Rowan. But Keurig argues that because of Kraft's assertion of privilege with respect to Mr. Bentley's report, Keurig would be prejudiced if Kraft presented evidence of Mr. Rowan's testing. Mot. at 4.

Mr. Rowan's testing was conducted independently from that of Mr. Bentley's testing. Rowan Depo. (Ex. 4) at 75:17-22, 77:11-13. In no respect does Mr. Bentley's report regarding his initial testing "underlie" Mr. Rowan's testing as he did not construct the testing apparatus. Instead, Mr. Rowan's testing focused on the cartridges because the '762 Patent discloses cartridges, not a brewer or brewing method, and, thus, the apparatus is largely irrelevant. Nonetheless, Keurig has inspected the testing apparatus, received photographs of the apparatus in use, and has twice deposed Mr. Bentley, the maker of the apparatus. Keurig has had full opportunity to engage in discovery as to the design and construction of the apparatus. Further, Keurig deposed Mr. Rowan on this issue. *Id.* at 64-110.

Keurig should not be allowed to prevent Kraft from presenting evidence of Mr. Rowan's testing because of an alleged, tenuous relationship between Mr. Bentley's report and Mr. Rowan's testing. Mr. Rowan's test of the Singles Cartridges is independent of Mr. Bentley's report. Accordingly, there is no basis upon which to exclude evidence of Mr. Rowan's test.

## CONCLUSION

For the above reasons, Kraft requests that Keurig's motion *in limine* to preclude Kraft from offering any evidence of its testing of the Kenco Singles Cartridges be denied.

- 6 -

|  | POTTER ANDERSON & CORROON LLP |
|---|---|
| OF COUNSEL | By: /s/ David E. Moore |
|  | Richard L. Horwitz (#2246) |
| David M. Schlitz | David E. Moore (#3983) |
| William S. Foster, Jr. | Hercules Plaza, 6th Floor |
| C. John Brown | 1313 North Market Street |
| BAKER BOTTS L.L.P. | P.O. Box 951 |
| 1299 Pennsylvania Ave., N.W. | Wilmington, DE 19899-0951 |
| Washington, D.C. 20004-2400 | Tel: 302-984-6169 |
| Tel. 202-639-7700 | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |

Dated: August 15, 2008
Public Version Dated: August 22, 2008
8787467 / 31118

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 22, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 22, 2008, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| John W. Shaw | Michael A. Albert |
| Karen E. Keller | Michael N. Rader |
| Young Conaway Stargatt & Taylor | Laura Topper |
| The Brandywine Building | Gerald B. Hrycyszyn |
| 1000 West Street, 17th Floor | Wolf, Greenfield & Sacks, P.C. |
| P. O. Box 391 | 600 Atlantic Avenue |
| Wilmington, DE 19899-0391 | Boston, MA 02210 |
| jshaw@ycst.com | malbert@wolfgreenfield.com |
| kkeller@ycst.com | mrader@wolfgreenfield.com |
| | ltopper@wolfgreenfield.com |
| | ghrycyszyn@wolfgreenfield.com |

By: /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

805682 / 31118

# Exhibit 1

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**

# Exhibit 2

## Kenco Singles capsule brewing experiment using same-side piercing

### Test results

| Test # (position) | Sample | Beverage Volume /ml | Water Temp./ °C | Soluble Solids/ % |
|---|---|---|---|---|
| 1 (A&C) | 1 | 170 | 94 | 0.54 |
| | 2 | 165 | 93 | 0.51 |
| | 3 | 165 | 93 | 0.55 |
| 2 (B) | 1 | 165 | 93 | 0.74 |
| | 2 | 160 | 93 | 0.79 |
| | 3 | 165 | 93 | 0.79 |
| 3 (D) | 1 | 165 | 93 | 0.86 |
| | 2 | 165 | 93 | 0.85 |
| | 3 | 165 | 93 | 0.85 |
| 4 (E) | 1 | 160 | 93 | 0.89 |
| | 2 | 160 | 93 | 0.89 |
| | 3 | 160 | 93 | 0.89 |



Inlet piercer positions



EXHIBIT

K-DS-1

THIS PAGE HAS BEEN REDACTED FROM THIS EXHIBIT

THIS PAGE HAS BEEN REDACTED FROM THIS EXHIBIT

# Exhibit 3

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**

# Exhibit 4

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**