## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEURIG, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-17 (GMS) |
| | ) | |
| KRAFT FOODS GLOBAL, INC., | ) | **JURY TRIAL DEMANDED** |
| TASSIMO CORPORATION, and | ) | |
| KRAFT FOODS INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 5

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel:  302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

Dated:  August 21, 2008
Public Version Dated: August 28, 2008
880384 / 31118

In its *Motion in Limine* No. 5, Keurig misleadingly tells only a small part of the story, leaving out the parts that should be fatal to its motion. After the close of fact discovery, Keurig, through its two technical experts, raised new theories as to why Kraft's asserted prior art does not anticipate claim 1 of the '762 Patent. When Keurig's technical experts were deposed regarding their respective rebuttal reports, they each made statements fatal to the validity of the '762 Patent. Accordingly, Kraft now asserts the defenses of lack of enablement and lack of written description, ***based upon admissions made by Keurig's own technical experts at their deposition.*** In addition, Kraft is asserting the defense of obviousness in response to assertions made by one of Keurig's technical experts for the first time in his rebuttal report.[1]

BACKGROUND

As Keurig concedes, Kraft pled in its Answers that the asserted claims of the '762 Patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112. Pursuant to the Court's Scheduling Order, Kraft disclosed three pieces of prior art as anticipating claim 1. In turn, Keurig replied why the disclosed prior art is not anticipatory. Based upon the parties' contentions, Keurig asked the Court to construe the claim term "piercable to accommodate an inflow of liquid". Keurig argued that the term means, "designed to be pierced to form an inlet that allows an inflow of liquid without leakage." D.I. 43 (Ex. 1) at 10. The Court rejected this argument in its claim construction order. D.I. 53 (Ex. 2) at 2, n. 7. Thus, seemingly, the issue of whether the prior art disclosed a lid that when pierced formed a seal that allowed an inflow of liquid without leakage was no longer in the case.

Nevertheless, Keurig's technical expert, Dr. Slocum stated with regard to the prior art Kenco Singles Cartridge ("Singles Cartridge"), "The foil over the coffee bed lacks any kind of

---

[1] As stated in footnote 1 of its *Motion in Limine* No. 5, Kraft informed Keurig it would drop its laches defense. Nevertheless, Keurig continues to argue about that withdrawn defense.

support structure against which to press a gasket or other device to form a seal." Slocum Rebuttal Rep. (Ex. 3) at 21. Perhaps Dr. Slocum did not realize at the time of writing his rebuttal expert report that this argument invalidates the '762 patent. Neither of the two disclosed embodiments in the '762 Patent include a support structure against which to press a gasket or other device to form a seal. Thus, at his deposition, Dr. Slocum was forced to contrive his new "aspect ratio" theory.[2] Dr. Slocum had to concede, "Based on my model, I don't think [the cartridge shown in figures] three, four, or five makes a beverage." Slocum Depo. Tr. (Ex. 4) at 32:2-3. Thus, if Dr. Slocum is correct, then the '762 Patent is inoperable.

To avoid an invalidity determination, Keurig is trying to argue through its expert that the prior art Singles Cartridge does not produce a beverage. Keurig did not make this assertion in its reply to Kraft's invalidity contentions. Nor did it ask the Court to construe the term "beverage." But now they seek to present the expert testimony of Ted Lingle to construe the term "beverage", and provide the criteria for determining whether a drink is a beverage under that construction.[3] The '762 Patent does not disclose any criteria for determining if a drink is a beverage. At his deposition, Mr. Lingle testified that a person of ordinary skill in the art would not know if a particular cartridge produces a "beverage" without consulting a beverage expert. Lingle Depo Tr. (Ex. 5) at 76:2-7. If Mr. Lingle is correct, then the '762 Patent is invalid because it does not enable a person of ordinary skill in the art to construct a cartridge that produces a beverage.

Finally, at the beginning of this litigation Kraft asserted that U.S. Patent No. 4,853,234 ("the '234 Patent") discloses each and every limitation of claim 1 of the '762 Patent. In its

---

[2] At his deposition Dr. Slocum realized that he had unwittingly invalidated the '762 Patent, and, thus on the spot he shifted gears arguing that the second disclosed embodiment was operable due to its aspect ratio, which he had not discussed in his rebuttal report. Ex. 4 at 25:3-28:17.

[3] Kraft filed a motion *in limine* to exclude Mr. Lingle's testimony because he tries to provide a specialized definition of "beverage" and is not an expert in the relevant art of the '762 Patent.

response to Kraft's invalidity contentions, Keurig asserted that the '234 Patent does not anticipate claim 1 because it does not disclose "a single lid that is both: (1) pierceable to accommodate an inflow of liquid into said first chamber for infusion with the beverage medium to produce a beverage; and (2) pierceable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge." But Keurig did not allege that Kraft's asserted prior art does not disclose the "lid having a first section overlying said first chamber and a second section overlying said second chamber," and Keurig has not amended its responses to Kraft's invalidity contentions to so state. After the close of fact discovery, Dr. Slocum opined that the '234 Patent does not disclose a lid overlying the first and second chambers. Ex. 3 at 3. Kraft is asserting the defense of obviousness, which is clearly pled in its Answers, in response to Keurig's newly raised theory of its own expert. In doing so, Kraft will rely on prior art and evidence produced during discovery.

ARGUMENT

## I.    Keurig Cannot be Prejudiced By Issues Raised By Its Own Experts

Keurig has proffered expert opinions that raise new issues pertaining to the validity of the '762 Patent. Now, Keurig attempts to claim it is somehow "prejudiced" by its own experts' opinions and disingenuously suggests that Kraft has not articulated the substance of its contentions. Kraft clearly set forth the basis of its Section 112 defenses in its motions *in limine* by noting that Keurig's expert testimony, if true, invalidates the '762 Patent. D.I. 106 at 3 (Ex. 6), D.I. 107 (Ex. 7) at 4. Moreover, Keurig even addresses Kraft's enablement defense in its opposition to the Slocum motion. D.I. 118 (Ex. 8) at 4, n.2. When asked the basis for its obviousness defense prior to Keurig's motion, Kraft pointed to Dr. Slocum's statements in his rebuttal report. (Ex. 9).

As clearly recognized within the Third Circuit, a defendant may raise an affirmative defense so long it is raised at a sufficiently pragmatic time, and the plaintiff is not prejudiced in its ability to respond. *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991). Here, Keurig not only has notice at a sufficiently pragmatic time, it has timely notice considering that Keurig's Section 112 defense is based on recent admissions by Keurig's technical experts and the Section 103 defense is in response to a new theory raised for the first time by one of Keurig's technical experts in his rebuttal report.

Furthermore, during Kraft's technical expert's deposition, Keurig's counsel elicited testimony from Mr. Taylor indicating that one of skill in the art would recognize that a single lid is needed to achieve a reliable seal with the cartridge disclosed by the '234 Patent. Taylor Depo. Tr. at (Ex. 10) 135:2-136:5. Mr. Taylor repeatedly notes that a design engineer would see that the cartridge was "designed for" a single lid. Ex. 10 at 141:8-18, 143:19-144:11, 180:10-11. Accordingly, Keurig is clearly on notice of Mr. Taylor's expert opinion that a consumer packaging engineer would choose a single lid to close the access opening of a cartridge.

While Keurig would not be prejudiced by allowing Kraft to assert defenses that arise out of assertions and admissions recently made by Keurig's technical experts, Kraft would be prejudiced if it is not allowed to assert those defenses. Keurig should not be allowed to rely on statements by its technical experts that are designed to help it avoid anticipation, and yet not suffer the consequences of the statements by those same experts that invalidate the patent under Section 112 as a matter of law.

## II.    Kraft Relies Solely on Evidence Already Produced In Discovery

Keurig seeks the extraordinary remedy of barring Kraft from asserting defenses based solely on evidence produced during discovery and upon which its technical experts have opinied.

The cases that Keurig cites in support of its motion, which address the late disclosure of new evidence or prior art, are inapposite. In *Primos, Inc. v. Hunter's Specialties, Inc.*, the Federal Circuit held that the trial court did not abuse its discretion by excluding a prior art device that was not disclosed until just before trial. 451 F.3d 841, 851 (Fed. Cir. 2006). Hunter's Specialties failed to disclose the device even though they were aware of its existence over many years of discovery. Each of the *Bridgestone*, *Edizone*, and *Astrazeneca* decisions also were based on the late disclosure of prior art references. Here, Kraft is not asserting new prior art, but is simply relying upon the evidence already known to Keurig and discussed by its technical experts. Kraft is simply relying on the statements of Keurig's technical experts, which if true, render that patent *per se* invalid under Section 112.

In the opinion most directly on point from the District of Delaware, *Cordis Corp. v. Boston Scientific Corp.*, C.A. No. 03-27-SLR, 2005 WL 1331172, at *5 n. 10 (D. Del. June 3, 2005) (citing *Charpentier*, 937 F.2d at 864), the Court found that Boston Scientific (BSC) had not been prejudiced by Cordis' failure to raise a defense in its answer because Cordis provided notice of the defense at pretrial, which gave BSC an opportunity to respond at trial *Id.*; *see also Boehringer Ingelheim Int'l GmbH v. Barr Labs.*, C.A. No. 05-700-JJF, 2008 WL 2756127, at *2 (D. Del. July 15, 2008) (defendant permitted to assert invalidity defense raised in pre-trial order)[4]. Here, Keurig will have an adequate opportunity to respond to Kraft's defenses at trial based on the evidence and prior art already produced in this case.

## CONCLUSION

For the foregoing reasons, Keurig's Motion *in Limine* No. 5 should be denied.

---

[4] The purpose of the joint pre-trial order is to give each party sufficient notice of the opposing party's contentions and an opportunity to respond to such contentions at trial. *Thorn EMI N. Am., Inc. v. Intel Corp.*, 936 F. Supp. 1186, 1191 (D. Del. 1996)(citations omitted).

POTTER ANDERSON & CORROON LLP

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700

Dated:  August 21, 2008
Public Version Dated: August 28, 2008
880384 / 31118

By:   /s/ David E. Moore
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 North Market Street
        P.O. Box 951
        Wilmington, DE  19899-0951
        Tel:  302-984-6169
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 28, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 28, 2008, the attached document was Electronically Mailed to the following person(s):

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391
jshaw@ycst.com
kkeller@ycst.com

Michael A. Albert
Michael N. Rader
Laura Topper
Gerald B. Hrycyszyn
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210
malbert@wolfgreenfield.com
mrader@wolfgreenfield.com
ltopper@wolfgreenfield.com
ghrycyszyn@wolfgreenfield.com

By:  /s/ David E. Moore
     Richard L. Horwitz
     David E. Moore
     Potter Anderson & Corroon LLP
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE  19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

805682 / 31118

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED, <br><br> Plaintiff, <br><br> v. <br><br> KRAFT FOODS GLOBAL, INC., <br> TASSIMO CORPORATION, and <br> KRAFT FOODS INC., <br><br> Defendants. | Civil Action No. 07-017-GMS |

## KEURIG INCORPORATED'S OPENING CLAIM CONSTRUCTION BRIEF

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Chad S.C. Stover (No. 4919)
*cstover@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
Gerald B. Hrycyszyn
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

Dated:   October 15, 2007

A.    **"piercable to accommodate an inflow of liquid" and
"piercable to accommodate an outflow of beverage"**

| Language from Claims 1 and 10 that Keurig Suggests Requires Construction | Keurig's Proposed Construction |
|---|---|
| piercable to accommodate an inflow of liquid | designed to be pierced to form an inlet that allows an inflow of liquid without leakage |
| piercable to accommodate an outflow of beverage | designed to be pierced to form an outlet that allows an outflow of beverage without leakage |

The claim language "piercable to accommodate an inflow of liquid" and "piercable to accommodate an outflow of beverage" should be construed as complete phrases and in the context of the entire claim, as clarified by the specification. The adjective "piercable" cannot be taken in isolation and construed in a vacuum as Kraft urges the Court to do. This word is part of larger phrases whose meaning lies at the heart of the claimed invention of the '762 patent, which is directed to **same-side piercing** of a single-serve beverage filter cartridge lid to create "a cleaner puncture and an improved seal" that avoids leakage.

While just about anything is theoretically "piercable" if given the right tools and enough force, the patent plainly does not cover any and all lids that can somehow be pierced. Rather, it covers a cartridge with a lid that is piercable in a particular manner, namely "to accommodate an inflow" or "outflow." What does this qualification to the word "piercable" require? As discussed below, the patent specification answers this question by clarifying that it must be designed to be pierced **so as to form** a particular type of seal onto an **inlet and outlet**, avoiding leakage.

The adjective "piercable" in claims 1 and 10 must be construed along with the claim language that it modifies, "to accommodate an inflow of liquid" and "to accommodate an outflow of beverage," in the context of the entire claim. "Proper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation." Pause Tech. LLC

- 10-

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEURIG, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-017 (GMS) |
| | ) | |
| KRAFT FOODS GLOBAL, INC., | ) | |
| TASSIMO CORPORATION, and | ) | |
| KRAFT FOODS INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NO. 6,607,762

On December 3, 2007, the court held a *Markman* hearing in this patent infringement action concerning U.S. Patent No. 6,607,762 (the "'762 patent" or the "patent-in-suit"). After having considered the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of the '762 patent:

1. The term "first and second chambers" is construed to mean, with regard to the first chamber, "the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter," and, with regard to the second chamber, "the part of the cartridge out of which the beverage flows after having passed through the filter."[1]

---

[1] In the court's view, Keurig's proposed construction better comports with the claim language and the specification, which disclose a filter defining two chambers both covered by a lid through which liquid enters one chamber and exits the other. '762 patent at 04:60-05:12; *see also id.* at 03:15-20 (embodiment in which filter defines one chamber, which receives the liquid, separate from the second chamber, from which the beverage exits). Accordingly, the court adopts this construction. *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (construing terms to have the meaning presented in the patent document).

2.  The term "a [planar]² filter element received in and configured and arranged to subdivide the interior of said container into first and second chambers" is construed to have its plain and ordinary meaning.³

3.  The term "and a second section overlying said second chamber" is construed to have its plain and ordinary meaning.⁴

4.  The term "piercable"⁵ is construed below as part of the terms "piercable to accommodate an inflow of liquid into said first chamber" and "piercable to accommodate an outflow of the beverage from said second chamber to the exterior of said cartridge."⁶

5.  The term "piercable to accommodate an inflow of liquid" is construed to mean "capable of being pierced to permit a flow of liquid into."⁷

---

² Claim 10 repeats this disputed term, which first appears in Claim 1, verbatim but for the addition of the word "planar" where indicated. *Cf.* '762 patent at 04:63 *with id.* at 06:10. The parties agree that, for the purposes of this case, this difference is immaterial. (D.I. 42 at 4.).

³ This construction derives from the court's construction of "first and second chambers" and the term's otherwise ordinary meaning. *See* footnote 1; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1170.

⁴ The court declines to adopt Kraft's construction, which would impermissibly read limitations from the preferred embodiment onto the claims. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

⁵ This is the spelling used in the '762 patent.

⁶ *See* footnote 7.

⁷ Keurig argues that Kraft's proposed construction is so overbroad as to render these terms meaningless. *Cf. Nikken USA, Inc. v. Robinsons-May, Inc.*, 51 Fed. Appx. 874, 884-85 (Fed. Cir. 2002) (citing *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996)) (rejecting construction of claim term "attachable" because construction's overbreadth rendered the limitation meaningless). The court should instead adopt Keurig's proposed construction, Keurig argues, because that construction conveys the '762 patent's special, innovative purpose: avoiding leakage by locating the outlet at lid, not the cartridge base as in prior art. *See Medrad*, 401 F.3d at 1319 (claim construction must take place in context of specification and prosecution history, including invention's function, not in a vacuum). The specification does describe the invention's purpose. *E.g.*, '762 patent at 01:38-63. But certain prior art, cited in both the '762 patent's specification and prosecution history and so part of the intrinsic record, undermines the basis of Keurig's proposed construction. *Phillips*, 415 F.3d at 1317 (prosecution history, including prior art cited therein, is part of intrinsic record); *see* '762 patent at 01:17 (specifically citing as prior art U.S. Patent Nos. 5,325,765 and 5,840,189); (D.I. 47 at A19-22 (patentee citing prior art during examination).) Specifically, the prior-art '189 patent uses virtually this same disputed term to describe piercing both the lid and the base to accommodate liquid flow – even though that prior art lacks the patent-in-suit's focus on leakage and its

2

# Exhibit 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Exhibit 4

Page 1

1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - x

3    KEURIG, INCORPORATED,

4                    Plaintiff,

5        v.

6    KRAFT FOODS GLOBAL, INC., TASSIMO CORPORATION, and

     KRAFT FOODS INC.,

7

                    Defendants.

8

     Civil Action No. 07-CV-0017-GMS

9    - - - - - - - - - - - - - - - - - - - - - - - - x

10

11

12        VIDEOTAPED DEPOSITION OF ALEXANDER H. SLOCUM

13                    Wednesday, June 11, 2008

14                    9:10 a.m. to 5:00 p.m.

15              WOLF, GREENFIELD & SACKS, P.C.

16                    600 Atlantic Avenue

17                    Boston, Massachusetts

18

19        Reporter:  Marianne R. Wharram, CSR/RPR

20

21

22

23        ELLEN GRAUER COURT REPORTING CO. LLC

             126 East 56th Street, Fifth Floor

24              New York, New York 10022

                    212-750-6434

25                    REF: 87765

1                              SLOCUM

2    that.

3        Q.   We're going to get to that in length.   What

4    else do you disagree with with Mr. Taylor?

5              MR. RADER:   Same objection.   You can

6    answer.

7        A.   I want to make sure I accurately describe

8    it.

9        Q.   (BY MR. SCHLITZ)  Yeah, please do.

10       A.   Well, I think that's the -- that's the

11   primary thing, and that this device, he says on 20

12   -- excuse me, paragraph 20 --

13       Q.   Yes.

14       A.   -- he says a person skilled in the art

15   reviewing '234 would understand specifications to

16   describe a cartridge that could be used for

17   same-side piercing, even though it was designed for

18   opposite side.  And I just disagree, and my --

19   okay.  I'll --

20       Q.   On what basis do you disagree?

21       A.   Okay.  I was going to wait for you to ask

22   the next question.

23       Q.   Yeah.  Go ahead.

24       A.   Well, when I run tests -- well, so there's

25   two things.  First of all, there's some scientific

1                            SLOCUM

2    philosophies or whatever why this type of approach

3    for this type of aspect ratio cartridge I -- is my

4    opinion fundamentally doesn't work well, if at all.

5    If you delete the manifolds and you just do

6    same-side piercing and with respect to can you

7    actually same-side pierce something like this

8    without making a mess, that's a separate --

9    separate issue, but just in terms of making a

10   beverage, and I believe, as I described when I

11   wrote my report, that when I run tests, I don't get

12   a beverage in the definition of my palate or

13   Mr. Lingle's expert opinion.

14       Q.  Let me understand what you just said.

15   First of all, when you said a cartridge, a rati--

16   what did you --

17       A.  Aspect ratio.

18       Q.  What is an aspect ratio of a cartridge?

19       A.  Okay, so when you -- when you want to

20   describe the aspect ratio of something -- so if I

21   can have a pen?

22       Q.  Here's a pen.

23       A.  It's easier for me to point with this than

24   a finger.  This is a little flatter than your

25   typical cartridge, but specifically, when I'm

1                          SLOCUM

2    referring to aspect ratio, the length and the width

3    of a coffee bed and what's those -- what are those

4    proportions with respect to the depth between where

5    you're putting in the fluid and where it wants to

6    exit.

7        Q.   All right.

8        A.   Now, all these flat cartridges, I would

9    say, have a flat aspect ratio.  The depth is

10   shallow.

11       Q.   When you say these, you were pointing to

12   something.

13       A.   I'm sorry.  The Singles cartridges or the

14   cartridge from the '234 patent.

15       Q.   Okay.

16       A.   So when you go -- or the embodiment of

17   Figure -- nominally, Figure 4.

18       Q.   Right.

19       A.   Now, compare those proportions to what I

20   think is the actual useful embodiment of Figures 6,

21   7 and 8 of the '762 patent, which is that aspect

22   ratio is more kind of one-to-one, the depth with

23   here, and in the actual, these flat type

24   cartridges, it's like three or four-to-one is the

25   characteristic aspect ratio.  The problem with just

1                          SLOCUM

2      taking something of this aspect ratio and piercing,

3      in the language of the patent, and then injecting

4      your fluid is that the water, which comes in at a

5      reasonable pressure, shoots right through the

6      coffee, or whatever your drink is, into the filter

7      and then rushes out your filter, so you don't get

8      good wetting -- that's wetting, excuse me -- of the

9      bed of -- and you end up putting through the

10     required amount of fluid to fill your cup, but it

11     really only acts on a small region of coffee, which

12     is why I think it comes out so -- so weak and why I

13     said yeck, it doesn't really taste like coffee.

14     When you have a -- and that's why I believe the

15     '234 and the Singles, they both have this

16     manifolding system --

17          Q.   All right.

18          A.   -- to evenly wet.  And I opened up

19     cartridges from the Singles machine after they were

20     used and I looked at the bed and I opened up the

21     cartridges after I would do my test and I looked at

22     the bed, and the tests I ran, you would always

23     burrow a hole.  And I can discuss more in terms of

24     scientific principles of aspect ratios if you want.

25          Q.   Please do.

1                          SLOCUM

2        A.   Based on my model, I don't think three,

3    four, five makes a beverage.

4        Q.   Now, when you were talking about the aspect

5    ratio, and with regard to Figure 13, okay --

6        A.   Correct.

7        Q.   -- you say because -- in Figure 13, are you

8    aware that the -- well, in what orientation would

9    you have to use Figure 13?

10       A.   Um, I actually think it would -- it would

11   work -- this vertical orientation -- it would work

12   vertical orientation where, for example -- and it

13   would work in several.

14       Q.   Okay.

15       A.   It would work vertical orientation where

16   the gravity vector points -- I'm trying to figure

17   out how I'm going to do this with the video thing,

18   but where the area of the gravity vector would be

19   located on the lid.

20       Q.   Would the foil be down or up or sideways?

21       A.   That's a better way of putting it.  The

22   foil would be -- down would work.  I believe it

23   would work with the foil vertical.

24       Q.   Right.

25       A.   With the foil horizontal, or up, excuse me,

Exhibit 5

Page 1

```
 1    UNITED STATES DISTRICT COURT
 2    FOR THE DISTRICT OF DELAWARE
      ---------------------------------------X
 3    KEURIG, INCORPORATED,
 4                           Plaintiff,
 5    VS
 6    KRAFT FOODS GLOBAL, INC., TASSIMO
      CORPORATION, and KRAFT FOODS, INC.,
 7
                           Defendants.
 8
      Civil Action No. 07-CV-0017-GMS
 9    ---------------------------------------X
10
11
12          VIDEOTAPED DEPOSITION OF TED R. LINGLE
13                 Friday, June 27, 2008
14                  9:11 a.m. - 2:05 p.m.
15            WOLF, GREENFIELD & SACKS, P.C.
16                  600 Atlantic Avenue
17              Boston, Massachusetts 02210
18
19       Court Reporter:  Loretta Hennessey, RDR, CRR
20
21
22
23          ELLEN GRAUER COURT REPORTING CO. LLC
             126 East 56th Street, Fifth Floor
24                New York, New York 10022
                     212-750-6434
25                   REF: 87840
```

1                         LINGLE

2        Q.    Okay.  So one who is of ordinary skill in

3    the art in designing and making single-serve

4    beverage cartridges wouldn't have a metric, that

5    person would have to go to an expert in coffee; is

6    that correct?

7        A.    That's correct.

8        Q.    Okay.  What is the measure of acceptable

9    aroma profile?

10       A.    That's also subjective.

11       Q.    Okay.  And one of ordinary skill in the

12   art, an engineer in building, constructing

13   single-serve beverage cartridges, what would be the

14   metric that person would have to use to determine if

15   the resultant beverage satisfies the aroma profile?

16       A.    That would also be subjective.  They would

17   taste and smell the fluid and say, "yes, this smells

18   like coffee," or, "no, this doesn't smell like

19   coffee."

20       Q.    Okay.  But what I'm trying to understand

21   is what if that engineer, you know, thinks that a

22   beverage that has just barely traceable aroma is

23   acceptable.  Would you accept that?

24       A.    Accept it in what way?

25       Q.    Well, since it's subjective, could that

Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT DELAWARE

| | | |
|---|---|---|
| KEURIG, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-17 (GMS) |
| | ) | |
| KRAFT FOODS GLOBAL, INC., | ) | **JURY TRIAL DEMANDED** |
| TASSIMO CORPORATION, and | ) | |
| KRAFT FOODS INC., | ) | **CONFIDENTIAL –** |
| | ) | **ATTORNEY EYES ONLY** |
| | ) | **FILED UNDER SEAL** |
| Defendants. | ) | |

## DEFENDANTS' MOTION IN LIMINE TO LIMIT EXPERT TESTIMONY OF DR. ALEXANDER SLOCUM

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700


Dated: August 4, 2008
877077 / 31118

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel: 302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants
Kraft Foods Global, Inc., Tassimo
Corporation, and Kraft Foods Inc.*

'762 Patent, Col. 2, Lines 14-20. The figures for the two disclosed embodiments do not disclose a support structure against which to press a gasket or other device to form a seal.



FIG. 5

FIG. 13

Thus, Dr. Slocum's opinion as to why Kraft's asserted prior art is not suitable for same-side piercing, if correct, would also apply to the '762 Patent, thereby rendering the asserted claims invalid for lack of enablement. Realizing the dilemma his opinion placed Keurig in, at his deposition, Dr. Slocum on the spot abandoned his argument regarding the need for a support structure and invented a new theory why Kraft's prior art would not invalidate the '762 Patent's claims. He raised his new "aspect ratio" theory.

He proceeded to opine that the '234 Patent and Singles cartridge, as well as the first embodiment of the '762 Patent, are not suitable for same side piercing because the cartridges have a flat aspect ratio. Slocum Dep. Tr. (Ex. 3) 27-28, 31-32. Dr. Slocum then asserted that a cartridge must have a one-to-one aspect ratio, like the embodiment shown in Figs. 7-9 of the '762 Patent, to directly inject fluid into the coffee bed for same side piercing. *Id.* at 27. But nowhere in his Expert or Rebuttal report does Dr. Slocum assert that Kraft's prior art fails to anticipate the '762 Patent due to its aspect ratio, nor does he discuss that for the same reason the first embodiment of the '762 Patent is inoperative. Plain and simple, Kraft was ambushed by Dr. Slocum at his deposition.

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT DELAWARE

KEURIG, INCORPORATED,

    Plaintiff,

    v.

KRAFT FOODS GLOBAL, INC.,
TASSIMO CORPORATION, and
KRAFT FOODS INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 07-17 (GMS)

**JURY TRIAL DEMANDED**

**CONFIDENTIAL –
ATTORNEY EYES ONLY
FILED UNDER SEAL**

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE
## EXPERT TESTIMONY OF TED LINGLE

OF COUNSEL

David M. Schlitz
William S. Foster, Jr.
C. John Brown
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel.  202-639-7700


Dated:  August 4, 2008
877075 / 31118

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel:  302-984-6169
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Kraft Foods Global, Inc., Tassimo*
*Corporation, and Kraft Foods Inc.*

purported coffee brewing expert testify that in his judgment a drink does not meet his subjective criteria as to acceptable taste, odor, color, or strength to qualify as a cup of coffee. Mr. Lingle contends that a person of ordinary skill in the art could not even ascertain what a "beverage" is without consulting an expert. Lingle Dep. Tr. (Ex. 2) at 75-76. Of course, this renders the claims indefinite.[3] *See* 35 U.S.C § 112.

## II.    Lingle's Testimony Would Not Assist the Trier of Fact

Under Rule 702, expert testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, (1993) (quoting Fed. R. Evid. 702). Mr. Lingle's testimony is not intended to assist the jury in understanding the evidence and making a factual determination. Rather, it is intended to set criteria for a beverage that are not in the patent-in-suit and then tell the jury that in his judgment the drink produced by the Singles cartridge does not have the flavor, color, odor or strength to qualify as a cup of coffee.

## III.    Lingle is Not an Expert in the Relevant Art of the '762 Patent

Rule 702 also requires that a technical expert in a suit for patent infringement have specialized knowledge in the relevant art of the patent-in-suit. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 743 (3d Cir. 1994) (must be connection between expert testimony and factual issues in the case). But Mr. Lingle lacks expertise in brewer or beverage cartridge design, or even fluid mechanics. Lingle Dep. Tr. (Ex. 2) at 18, 93-94. In short, Mr. Lingle is not an expert in the single-serve beverage filter cartridge art – the relevant art of the '762 Patent. Rather, he is an expert in "[c]offee,

---

[3]  Mr. Lingle's proposed definition of "beverage" runs contrary to the maxim that claims should be construed to preserve validity. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008).

- 4 -

Exhibit 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KEURIG, INCORPORATED,<br><br>       Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br>TASSIMO CORPORATION, and<br>KRAFT FOODS INC.,<br><br>       Defendants. | Civil Action No. 07-017-GMS |

## KEURIG'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EXPERT TESTIMONY OF DR. ALEXANDER SLOCUM

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

Dated: August 15, 2008

DB02:7138901.1                                                              065927.1001

See Taylor Depo. (Ex. C) at 107.  By contrast, as noted above, Professor Slocum carefully

evaluated the liquids and reported on his observations in his expert report.  While Professor

Slocum is not a coffee expert like Mr. Lingle, and will not duplicate Mr. Lingle's expert

testimony, he is entitled to describe his own observations as a skilled engineer performing his

experiments and observing the resulting liquids.  Professor Slocum's observations of the Singles

liquids are not subject to attack by Kraft and are admissible at trial.

> **C.    Professor Slocum is Entitled to Testify Regarding the Singles Cartridge's
> Aspect Ratio, Which Merely Explains His Description of the
> "Burrowing" Phenomenon in His Rebuttal Expert Report.**

Professor Slocum's testimony regarding the "aspect ratio" of the Singles cartridge clearly

complies with Rule 26(a)(2)(B) because it is merely an explanation of the burrowing

phenomenon that he disclosed in his rebuttal expert report.[2]  As noted above, Professor Slocum's

report explains that in a shallow Singles cartridge, the pressurized water "shoots through the

coffee grounds and literally burrows a hole." (Ex. A at 25).  When pressed for further details

about this phenomenon at his deposition, Professor Slocum explained the connection between

the "shallowness" (or flat "aspect ratio") of the cartridge and the burrowing problem:

> The problem with just taking something of this aspect ratio and piercing ... and
> then injecting your fluid is that the water, which comes in at a reasonable
> pressure, shoots right through the coffee, or whatever your drink is, into the filter
> and then rushes out your filter, so you don't get good wetting....And I opened up
> cartridges...after they were used and....you would always burrow a hole.  And I
> can discuss more in terms of scientific principles of aspect ratios if you want.

(Ex. B at 27-28) (emphasis added).

---

[2] Professor Slocum's rebuttal report describes both the "sealing" and "burrowing" problems that
occur when Singles cartridges are used in a same-side piercing configuration. (Ex. A at 21, 25).
Kraft's suggestion in its motion (at 3) that Professor Slocum invented the latter at his deposition
is wrong.  Likewise, Kraft's suggestion (at 3) that Professor Slocum's testimony raised
enablement issues is baseless – indeed, prior to filing its motion *in limine* (more than two months
after Professor Slocum's deposition), Kraft never even mentioned enablement.  It would be far
too late for Kraft to raise such a defense this close to trial.

-4-

# Exhibit 9

## Foster, William

| | |
|---|---|
| **From:** | Foster, William |
| **Sent:** | Wednesday, August 13, 2008 7:44 PM |
| **To:** | 'Michael Rader' |
| **Cc:** | 'Charles Steenburg'; Schlitz, David |

**Subject:** RE: Keurig v. Kraft

Mike,

I am forwarding revised Jury Instructions, Contentions, and Verdict Form.  We intend to assert the defenses of obviousness of claim 1, enablement and written description.  Kraft's initial pleadings assert defenses of invalidity under Sections 103 and 112 and we have never indicated that they were withdrawn.  During expert discovery, Keurig raised new theories responding to Kraft's invalidity contentions that necessitate the inclusion of instructions with regard to these defenses.

In its responses to Kraft's invalidity contentions, Keurig did not assert that the '234 Patent failed to disclose a lid that overlies the first and second chambers.  Instead, Keurig argued that the '234 Patent fails to disclose a lid that is both piercable to accommodate an inflow and piercable to accommodate an outflow.  But Dr. Slocum's report (at Paragraph 10) clearly indicates that he will testify the '234 Patent does not disclose a single lid overlying the first and second chambers.  In this regard, Keurig has not amended its response to Kraft's invalidity contentions.

Further, either of Dr. Slocum's alternative opinions regarding piercability, one from his rebuttal report and a different one at deposition, would render the '762 Patent invalid under section 112.  We detailed how Dr. Slocum's opinions, if accepted, invalidate the '762 Patent in our motion *in limine* related to his testimony.

I will be available to discuss these issues anytime tomorrow.

Thanks,
Bill

-----Original Message-----
**From:** Michael Rader [mailto:Michael.Rader@WolfGreenfield.com]
**Sent:** Wednesday, August 13, 2008 1:33 AM
**To:** Foster, William
**Cc:** Steenburg, Charles; Keller, Karen; Albert, Michael
**Subject:** Keurig v. Kraft

Dear Bill,

Please let me know when this afternoon would be a convenient time for you to meet and confer by telephone about the new defenses that Kraft apparently intends to raise based on the draft jury instructions that you provided to us this week.  While we still have no disclosure from you of the nature of these defenses, we do note that Kraft intends to ask for jury instructions on laches, obviousness of claim 1, enablement and written description. None of these defenses have ever been articulated before and Keurig intends to promptly file a motion to exclude them.  Please let us know if Kraft ever provided notice of the nature of these defenses in its invalidity contentions, interrogatory answers or expert reports.  We have reviewed those papers and found nothing.

We intend to have our motion on file in the next day or two.  We should agree on a briefing schedule that will permit the motion to be fully briefed by August 25 in compliance with Judge Sleet's scheduling order.  I propose that Kraft file its opposition by Wednesday, August 20 and Keurig will file its reply by August 25.

I can be available for a meet-and-confer this afternoon after about 2 pm.

Best regards,

Michael Rader

WOLF, GREENFIELD & SACKS, P.C.

Exhibit 10

# In The Matter Of:

*KEURIG, INCORPORATEDv.*
*KRAFT FOODS GLOBAL, INC*

---

*MALCOLM E. TAYLOR*
*July 3, 2008*

---

# MERRILL LEGAL SOLUTIONS

**101 Arch Street, 3rd Floor**
**Boston, MA 02110**
PH: 617-542-0300 / FAX: 617-338-6075

**TAYLOR, MALCOLM E. - Vol. 1**

Page 135

1  A.  Yes, okay.

2  Q.  That's the basis for your opinion that there is a

3      single piece of foil covering the entire side that's

4      shown in figure 5?

5  A.  That's not the only reason.  Actually, the cartridge

6      is designed with a flange all the way around the

7      device which has a larger width than anywhere else

8      on the cartridge which is what I would do if I was

9      making this up to apply a label or a lid, if you

10     like, in this case over the full surface.  In order

11     to have a reliable seal, you need enough width of

12     flange in order to get that to occur.  If you work

13     with a narrow flange, it isn't going to work too

14     well and it isn't going to last too long.

15 Q.  You are talking about the narrow -- you are talking

16     about the top of the wall 39 in figure 5?

17 A.  Well, I'm talking about the flange which runs all

18     the way around which is --

19 Q.  So are you suggesting that it wouldn't work well to

20     seal that foil to the top of the wall 39 in

21     figure 5?

22 A.  No, I wouldn't.

23 Q.  And that's one of the assumptions underlying your

24     opinion that this patent describes a foil covering

1    the entire side?

2  A.  Absolutely.  This is designed with a wider flange

3    all the way around the device.  This one is only an

4    internal divider.  That's all it is as designed

5    there.

6  Q.  Now, are you aware that a cartridge of the design in

7    figures 4 and 5 in the '234 Patent was

8    commercialized for a period of time by Kraft?

9  A.  It was, but I know the reason too.

10  Q.  Now, let me show you a picture of that.  This is a

11    picture of Exhibit 81 which is that cartridge.  Are

12    you familiar with this photo?

13  A.  No, I'm not.  No, I haven't seen this before.

14  Q.  I'll represent to you it's a photograph of a

15    cartridge that Mr. MacMahon brought to the second

16    day of his deposition.  Do you recall reading about

17    that?

18  A.  Yes, I do remember it.

19  Q.  Okay.  And do you recall reading that he testified

20    that this cartridge is the commercial embodiment

21    that's being described in the '234 Patent?

22        MR. SCHLITZ:  Objection.  Mischaracterizes

23    his testimony.

24  A.  No.  What I remember him mentioning earlier in his

1    Q.   And at the same time, sir, I'd like you to turn to

2         the portion of the '234 Patent that you cite in your

3         report which is column 7, line 17 through 21.

4    A.   Column what, sir?

5    Q.   Column 7, line 17 through 21.  You cite that in your

6         report, right, in the middle of page 14?

7    A.   Right.

8    Q.   And the sentence there that you are citing is "In

9         use a laminated foil is sealed both along the upper

10        edge 22 of the body portion and the lower edge 23 of

11        the body portion"?

12   A.   Yes.

13   Q.   And you are citing that in your report for the idea

14        that the foil lid covers the entirety --

15   A.   That's correct.

16   Q.   -- of the side shown in figure 5?

17   A.   Yes, because I think that's what it was designed

18        for.

19   Q.   Now, I'd like you to please look at page 15 of

20        Mr. MacMahon's transcript?

21   A.   Yes.

22   Q.   Line 14, I directed his attention to column 7, this

23        is line 18, "In use a laminated foil is sealed both

24        along the upper edge 22 of the body portion and the

1    you have in the sample in your hand, and not a foil

2    that would cover the entire side including the

3    outlet?"  And his answer was yes, correct?

4  A.  Yes.

5  Q.  So do you understand Mr. MacMahon's testimony?

6  A.  I see it, yeah.

7  Q.  And you understand that in substance his testimony

8    is that the patent is describing a foil like what's

9    shown in Exhibit 81 as opposed to one that covers

10    the entire side?

11         MR. SCHLITZ:  Objection.

12  A.  I see that.

13  Q.  And you stated earlier in your deposition today that

14    if the question came up about the meaning of some

15    language in one of the Kraft patents that

16    Mr. MacMahon was an inventor, you would defer to him

17    on what that language meant, didn't you?

18  A.  Yes, I did.

19  Q.  So would you agree with me that you'd have to defer

20    to Mr. MacMahon that the '234 Patent describes an

21    embodiment in which the foil covers the coffee bed

22    but not the outlet?

23  A.  In this case no, because it doesn't make any sense.

24  Q.  So in this case you won't defer to Mr. MacMahon's

1    testimony?

2  A.  No, because I think he's wrong.

3  Q.  Even though he's the inventor?

4  A.  Yeah, absolutely.  I mean I've designed enough of

5      these things in my life where I have to make a heat

6      seal.  Nobody in their right mind would design a

7      thing like that with a disk over a little area, and

8      you'd have -- I mean you would have a narrow rib

9      sealing the bottom of the label over the bed of the

10     coffee base because, you know, I don't think it's

11     designed for it.

12 Q.  Mr. Taylor, are you aware as you sit here today

13     based on the reading that you did that this

14     cartridge in Exhibit 81 was sold commercially for

15     over a year?

16 A.  Yes, I am.

17 Q.  You are aware of that?

18 A.  I am.

19 Q.  Now, I'd like to show you Mr. Bentley's transcript

20     for a moment.  While Charlie is getting that, do you

21     know what the Mark II and Mark III capsules refer

22     to?

23 A.  No, I don't think so because I don't know that I

24     ever saw them in reality.  I think I remember the

Page 180

```
 1   A.   Yes.
 2                MR. RADER:  Objection.  Leading.
 3   A.   Yes, it is.
 4   Q.   Does the fact that Mr. Rader questioned you at
 5        length about statements that Mr. Bentley and
 6        Mr. MacMahon expressed about the commercial product,
 7        do those statements in any way change your view that
 8        this lid -- ledge 23 goes the whole way around?
 9   A.   No, it doesn't.  That's what I indicated earlier.
10        This is my independent -- as a design engineer it
11        runs all the way around.  It's designed for one lid.
12   Q.   And your opinion is based on reading the '234
13        Patent; is that correct?
14   A.   Yes.
15   Q.   And your opinion is not based on reading
16        Mr. MacMahon or Mr. Bentley's deposition; is that
17        correct?
18   A.   That's correct.
19   Q.   Let's assume for the sake of argument in this case
20        that the commercial embodiment of the Mark II had
21        two lids, would that change your opinion as to what
22        the '234 Patent shows?
23   A.   No, it wouldn't.
24                MR. SCHLITZ:  Okay.  I have no other
```