IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEURIG, INCORPORATED,<br><br>    Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br>TASSIMO CORPORATION, and<br>KRAFT FOODS INC.,<br><br>    Defendants. | Civil Action No. 07-017-GMS<br><br>**REDACTED – PUBLIC VERSION** |

### REPLY IN SUPPORT OF KEURIG'S MOTION *IN LIMINE* NO. 3

            John W. Shaw (No. 3362)
            *jshaw@ycst.com*
            Karen E. Keller (No. 4489)
            *kkeller@ycst.com*
            YOUNG CONAWAY STARGATT & TAYLOR, LLP
            The Brandywine Building
            1000 West Street, 17th Floor
            Wilmington, DE 19801
            (302) 571-6600

            Michael A. Albert
            Michael N. Rader
            WOLF, GREENFIELD & SACKS, P.C.
            600 Atlantic Ave.
            Boston, MA 02210
            (617) 646-8000

            *Attorneys for Plaintiff Keurig, Incorporated*

Dated: August 25, 2008

Kraft does not contest that its production records and the other documents at issue are hearsay,[1] such that to be admissible they must qualify under a hearsay exception. Kraft fails to show that it can lay the foundation for a business records exception. Kraft's remaining argument, that the Court must wait until trial to decide the matter, is wrong as a matter of law.[2]

## I. The Kraft Witnesses' Deposition Testimony Establishes that They Cannot Provide the Necessary Foundation for a Business Records Exception.

Kraft has no substantive response to the Tamblin, Appleton, Greto, and Glus deposition excerpts cited by Keurig. (Mot. at 4). These witnesses' depositions clearly established that they cannot lay the foundation necessary for a business records hearsay exception under the Third Circuit's binding Pellulo decision and a plethora of additional persuasive authorities such as Riley and Ferber. Indeed, Kraft does not even attempt to address the cases cited by Keurig.

### A. Mr. Tamblin Is Unaware How the Production Records Were Created.

Kraft has no response to the central fact that Mr. Tamblin neither entered the production records, nor is he familiar with the circumstances under which others did so. (Mot. at 4). Indeed, Kraft admits that he worked for "a different division" of the company. (Opp. at 4). Contrary to Kraft's representation, id., he is not the custodian of the records.[3] (Ex. 7 at 55).[4]

---

[1] Keurig cited the Federal Circuit's Medichem and Chen decisions for this principle. (Mot. at 3). Kraft oddly says the citations "waste this Court's time" but does not disagree with the principle that a document offered to corroborate a witness's testimony is hearsay (and must therefore fall under an exception to the hearsay rule in order to be admissible). And, contrary to Kraft's contention (Opp. at 1-2), Chen did expressly address the business records exception, holding that the lower tribunal had "properly concluded…that [the] notebooks do not fall within the business records exception." Chen v. Bouchard, 347 F.3d 1299, 1308 (Fed. Cir. 2003).

[2] Kraft also says that the documents are "highly relevant." The possible relevance of a document is immaterial, however, to whether or not it qualifies for a hearsay exception under Rule 803.

[3] Kraft's suggestion that other witnesses can "authenticate" the production records is irrelevant. E.g., Eolas Techs., Inc. v. Microsoft Corp., 270 F. Supp. 2d 997, 1001 (N.D. Ill. 2003) ([A]uthenticity does not guarantee admissibility" as a business record under Rule 803(6).).

[4] Keurig's opening brief included Exs. 1-6. Exhibits to this brief begin at Ex. 7.

Kraft cites testimony from Mr. Tamblin supposedly establishing that "production records were regularly kept in the ordinary course of Kraft's business." (Opp. at 4). Even assuming this is true, it has nothing to do with the actual record-keeping process, about which Mr. Tamblin admitted he is ignorant. Similarly, Kraft's selection of Mr. Tamblin to generate the spreadsheet from Kraft's stored records for purposes of this case (Opp. at 3-4), is legally irrelevant. In short, Mr. Tamblin's admissions confirm that he cannot satisfy Rule 803(6)'s foundation requirements. E.g., Kolmes v. World Fibers Corp., 107 F.3d 1534, 1543 (Fed. Cir. 1997) (witness "failed to testify concerning the record-keeping process").

### B. Ms. Appleton, Ms. Greto, and Ms. Glus Had No Duty to Retain Singles Files.

Kraft's argument that Ms. Appleton, Ms. Greto, and Ms. Glus "testified from [their] personal knowledge" (Opp. at 3) is irrelevant. Their admissions that they had no duty to retain Singles records (Mot. at 4) are dispositive. The Console case cited by Kraft did not concern this prong of Rule 803(6), and Kraft ignores Ferber (Mot. at 4), which did. See also City of Long Beach v. Standard Oil Co. of Cal., 46 F.3d 929, 937 (9th Cir. 1995) (no showing that notes "were made pursuant to company procedures"); Rambus, Inc. v. Infineon Techs. AG, 348 F. Supp. 2d 698, 705-06 (E.D. Va. 2004) ( "[T]he fact that an employee 'routinely' takes meeting notes and keeps them, is quite different than whether a company policy directs the employee to do so.").

Kraft cites deposition snippets in which Kraft's counsel asked jargon-filled questions (such as whether witnesses kept files "in the ordinary course of business"). These self-serving exchanges cannot overcome the witnesses' admissions that their duties did not include retaining records about Singles shipments. (Mot. at 4). The substance of a witness's testimony controls over perfunctory answers to formulaic questions. See Long Beach, 46 F.3d at 937 (affirming exclusion despite testimony that witness created notes "in the normal course of business").

### C. **Kraft Offers No Reason to Introduce Undisputedly Fragmentary Records.**

Given that the witnesses had no duty to retain records, it is no surprise that the documents they produced are fragmentary. Kraft ignores the gaps even while trying to deflect Keurig's explanation (Mot. at 5) that the supposed shipping records are incomplete and untrustworthy under Rule 803(6). Kraft likewise fails to address ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ E.g., Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 365 n.14 (7th Cir. 1987) (business records exception does not apply to "incomplete" notes).

### II. **Applicability of Rule 803(6) is a Preliminary Question for the Court Alone.**

Kraft's remaining argument is that that the Court cannot resolve Keurig's motion at this stage because any shortcomings in the testimony of the Kraft witnesses "go to the weight of the evidence, and should be evaluated by a jury." (Opp. at 1, 4-5). Kraft is wrong. The admissibility of documents as business records[5] presents a threshold question under Fed. R. Evid. 104(a) and is a matter for the Court alone. See In re Fine Paper Antitrust Litigation, 751 F.2d 562, 597 (3d Cir. 1984) (reversing decision: "[T]he court made no Rule 104(a) finding as to the preconditions of admissibility of the Kohn letters as business records...."). Courts accordingly can and do grant motions *in limine* after concluding that the business records exception is inapplicable. E.g., United States v. Anderson, Crim. No. 05-249, 2006 WL 5159191 (D. Minn. May 19, 2006). That is exactly what the Court should do here.

---

[5] Kraft's passing reference to additional hearsay exceptions in a footnote (Opp. at 3 n.3) is insufficient. John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (argument made in passing in a footnote deemed waived). For example, Kraft does not cite any testimony to suggest that the writings were "contemporaneous" with the events described. See United States v. Mitchell, 145 F.3d 572, 577 (3d Cir. 1998) (improper admission of note as present sense impression because note was not contemporaneous).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Karen E. Keller
_____
John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

*Attorneys for Plaintiff Keurig, Incorporated*

Dated: August 25, 2008

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on September 2, 2008, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire [*rhorwitz@potteranderson.com*]
> David E. Moore, Esquire [*dmoore@potteranderson.com*]
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street, 6th Floor
> Wilmington, Delaware 19801

Additionally, I hereby certify that on September 2, 2008, copies of the foregoing document were served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

### BY E-MAIL

> David Schlitz, Esquire [*david.schlitz@bakerbotts.com*]
> Baker Botts L.L.P
> The Warner
> 1299 Pennsylvania Ave., NW
> Washington, D.C. 20004-2400

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *Karen E. Keller*
> John W. Shaw (No 3362) [*jshaw@ycst.com*]
> Adam W. Poff (No. 3990) [*apoff@ycst.com*]
> Karen E. Keller (No. 4489) [*kkeller@ycst.com*]
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302)-571-6600
>
> *Attorneys for Plaintiff Keurig, Incorporated*

**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEURIG INCORPORATED

        Plaintiff    : Civil Action No.
                        : 07-017 GMS

           v

KRAFT FOODS GLOBAL, INC
TASSIMO CORPORATION, and
KRAFT FOODS INC,

        Defendants

VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION

OF

MICHAEL TAMBLIN

On Wednesday, 2nd April 2008

Commencing at 10.24 am

Taken at:
Baker Botts
41 Lothbury
London
EC2R 7HF
United Kingdom

Reported by: Miss Pamela Henley

Page 54

       Tamblin - Rader
2    A.    Without looking to see what the
3    pack size is I really could not answer.
4    Q.    Okay. Do you know when the various
5    Lambert and Rychiger lines were installed?
6    A.    No, I do not.
7    Q.    R2 would that be --
8    A.    Rychiger 2.
9    Q.    -- if you could just turn to the
10   second page of the exhibit, if you look at the
11   first three rows you have a shift A on 9/28/1994;
12   do you see that?
13   A.    Yes.
14   Q.    Then you have a shift B on
15   9/29/1994, and then a shift A on that same date;
16   is that -- am I reading that right, that both
17   shift A and shift B worked on that product on 29th
18   September 1994?
19   A.    That is correct, yes.
20   Q.    If there is a gap between days what
21   does that suggest?
22   A.    It could either be a week-end where
23   it would not normally run, or it could be the line
24   was off for maintenance work.
25   Q.    Do you know how the line speeds of

Page 55

       Tamblin - Rader
2    the Rychiger and Lambert lines compare?
3    A.    I do not know without looking at
4    the information that is in these sheets.
5    Q.    You would look to the sheets for
6    that?
7    A.    Yes.
8    Q.    So the data that your query brought
9    out into the Excel spreadsheet, is it part of your
10   job to manage that data in your current job?
11   A.    No.
12   Q.    Are you custodian for that data?
13   A.    No.
14   Q.    So you just use your query to get
15   it because you were asked to do that?
16   A.    For this particular spreadsheet,
17   yes. But on a weekly basis I use the application
18   to run the efficiency reports which are then sent
19   out to senior management.
20   Q.    Do those efficiency reports include
21   the singles product line?
22   A.    Yes, but it is -- as a line it does
23   not go into individual SKU detail. It would say
24   for this week line 1 should have produced 85 per
25   cent and produced 75.

Page 56

       Tamblin - Rader
2    Q.    So you would do that for Lambert
3    and Rychiger?
4    A.    It is done by area, so it is done
5    for Maxpax coffee and flexibles.
6    Q.    So all of Maxpax would be lumped
7    together in that?
8    A.    Yes.
9    Q.    You would not be breaking out a
10   particular singles line?
11   A.    Not at all.
12   Q.    Were you ever responsible for
13   managing this particular data at any point in
14   time?
15   A.    Can you explain what you mean by
16   "managing".
17   Q.    At any point in time was it part of
18   your job to be the custodian for this data, to
19   have responsibility for it?
20   A.    Not for Maxpax. Within coffee area
21   when I was coffee production manager it was my
22   responsibility to input the line speeds and so on.
23   Q.    Who asked you to run the query to
24   provide this data?
25   A.    It came from one of our purchasing

Page 57

       Tamblin - Rader
2    people. It was via John MacMahon.
3    Q.    You know Mr MacMahon?
4    A.    Yes.
5    Q.    How do you know him?
6    A.    We started within a few weeks of
7    each other at Kraft, or General Foods as it was
8    then.
9    Q.    Have you -- over the years have you
10   worked with him?
11   A.    Not in the last 25 years, no.
12   Q.    I think that is it. I am done.
13   Thank you for your time. If Mr Foster wants to
14   ask any questions he can do that.
15           MR FOSTER: Yes, I have a couple of
16   questions. Can you take a look through Exhibit 201
17   and tell me is this the entire amount of data that
18   you generated about Maxpax production?
19   A.    It should be the full year because
20   it is sorted by product code. It certainly looks
21   as if it was. This was the first year so it was
22   not a full year. This was the first year the
23   application was introduced, '94, so it is only a
24   part year.
25   Q.    So this is only a portion of the

15 (Pages 54 to 57)

MARTEN WALSH CHERER LTD 12-14 NEW FETTER LANE          LONDON EC4A 1AG
TEL: 020 7936 6000    E-MAIL: info@martenwalshcherer.com  FAX: 020 7427 0093