IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KEURIG, INCORPORATED,<br><br>      Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br>TASSIMO CORPORATION, and<br>KRAFT FOODS INC.,<br><br>      Defendants. | Civil Action No. 07-017-GMS |

**PARTIES' PROPOSED JURY INSTRUCTIONS**

## TABLE OF CONTENTS

PRELIMINARY JURY INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

    1.1    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

    1.2    The Parties and Their Contentions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    1.3    Duties of the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    1.4    Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    1.5    Credibility of Witnesses – Weighing Conflicting Testimony . . . . . . . . . . . . . .  8

    1.6    Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    1.7    General Guidance Regarding Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

          A.     Constitutional Basis for Patent Grant . . . . . . . . . . . . . . . . . . . . . . .  12

          B.     Exclusionary Right and Term of a Patent . . . . . . . . . . . . . . . . . . . . .  12

          C.     The Parts of a Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

          D.     Summary of the Patent Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

    1.8    Conduct of the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

    1.9    Course of the Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    1.10    Trial Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    1.11    Glossary of Patent Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

GENERAL JURY INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

    2.1    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

    2.2    Evidence Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

    2.3    Direct and Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

    2.4    Consideration of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

ii

2.5    Statements of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    28

2.6    Credibility of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29

2.7    Expert Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    31

2.8    Number of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    32

2.9    Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    33

3.0    Summary of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

CLAIM CONSTRUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    38

4.1    Claim Construction – Generally  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    38

4.2    Claim Construction for the Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    39

INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40

4.3    Infringement – Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40

4.4    Infringement – Knowledge of Patent or Intent to Infringe Is Immaterial  . . . . .    43

4.5    Infringement – Comparison of Products to Claims . . . . . . . . . . . . . . . . . . . .    44

4.6    Infringement of Open-Ended or "Comprising" Claims . . . . . . . . . . . . . . . . . .    45

4.7A    (Keurig's Proposal)
        Infringement Despite Defendant's Improvements or Patents on Improvements    46

4.7B    (Kraft's Proposed Sequence)
        Willful Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    47

INVALIDITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    50

5.1    Summary of Invalidity Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    50

5.2    Presumption of Validity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53

ANTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    54

6.1    Prior Art Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    54

7304895.1                                                                              065927.1001

6.2    Anticipation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

6.3    Prior Public Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

6.4    Prior Public Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

6.5    [Disputed title] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

6.6    No Practicing the Prior Art Defense . . . . . . . . . . . . . . . . . . . . . . . . . 71

OBVIOUSNESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

7.1    Obviousness – Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

7.2    Scope and Content of the Prior Art . . . . . . . . . . . . . . . . . . . . . . . . . . 75

7.3    Difference Between the Claims and the Prior Art . . . . . . . . . . . . . . . 77

7.4    Level of Ordinary Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

8.0    Enablement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

9.0    Written Description Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

UNENFORCEABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

10.1    Inequitable Conduct – Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

10.2    Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

10.3    Intent to Deceive or Mislead . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

10.4    Balancing of Materiality and Intent . . . . . . . . . . . . . . . . . . . . . . . . . 90

DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

11.1    Damages – Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

11.2    Reasonable Royalty – Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

11.3    Reasonable Royalty – Relevant Factors . . . . . . . . . . . . . . . . . . . . . . 97

iv

11.4     Reasonable Royalty – Timing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

12.0    (Keurig's Proposed Sequence)  Willful Infringement . . . . . . . . . . . . . . . . . . . . . . . . 102

DELIBERATIONS AND VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106

13.1     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106

13.2     Duty to Deliberate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

13.3     Court Has No Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

7304895.1                                                                                                                       065927.1001

## PRELIMINARY JURY INSTRUCTIONS[1]

**1.1     Introduction  [AGREED][2]**

Members of the jury: Now that you have been sworn, I am going to give you some

preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any

civil case.  However, because this is a patent trial which will deal with subject matter that is not

within the everyday experience of most of us, I will also give you some additional preliminary

instructions regarding patents to assist you in discharging your duties as jurors.

---

[1] Unless otherwise noted, all proposed preliminary instructions are based on the Court' model, downloaded from http://www.ded.uscourts.gov/GMSmain.htm.

[2] The parties have met and conferred to find common ground on jury instructions when possible. In cases where the parties agreed, a single joint jury instruction is provided and marked as AGREED.

1

**1.2    The Parties and Their Contentions  [DISPUTED]**

**Keurig's Proposed Instruction**

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each party contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff Keurig, Incorporated and the defendants, Kraft Foods Global, Inc., Tassimo Corporation, and Kraft Foods Inc.  I will refer collectively to the defendants as "Kraft."

The dispute between the parties relates to the manufacture and sale of cartridges used with brewing machines to make single servings of coffee or other beverages.  Kraft markets such cartridges using the name Tassimo and calls its cartridges T-Discs.  During the trial, the parties will offer testimony to familiarize you with this technology.

Keurig owns United States Patent No. 6,607,762, which it alleges that Kraft infringes. Because patent numbers are so long, patents are usually referred to by their last three digits. Therefore, Keurig's Patent No. 6,607,762 is called simply "the '762 patent."  Keurig contends that Kraft makes, uses, sells, and offers for sale beverage cartridges called T-Discs that infringe Keurig's '762 patent and that such infringement is willful.   Keurig seeks damages for Kraft's alleged infringement.  I, and the attorneys and witnesses, may refer to the T-Disc as the "accused product."  An "accused product" simply means a product that Keurig asserts infringes its patent.

2

Persons or companies sued for allegedly infringing a patent can deny infringement. They

can also defend a charge of infringement by proving the patent is invalid. In this case, Kraft

denies that it infringes Keurig's patent and asserts what are called affirmative defenses to the

charges of infringement. I will tell you more about infringement in a few minutes. I will instruct

you as to defenses to a charge of infringement and possible damages resulting from a finding of

infringement in my instructions to you at the close of the evidence.

## Kraft's Objections

Keurig's instruction omits any reference to Kraft's defense with regard to the
unenforceability of the '762 Patent due to inequitable conduct, for which Kraft has moved to
amend its pleadings. Keurig also refers to brewing machines, which are not claimed, or even
described, in the '762 Patent, and, thus, are not accused of infringement and, thus, should not be
included in an instruction related to the parties' contentions.

## Kraft's Proposed Instruction

Before I begin with those instructions, however, allow me to give you an overview of

who the parties are and what each party contends.

You may recall that during the process that led to your selection as jurors, I advised you

that this is a civil action for patent infringement arising under the patent laws of the United

States.

The parties in this case are the plaintiff Keurig, Incorporated and the defendants, Kraft

Foods Global, Inc., Tassimo Corporation, and Kraft Foods Inc. I will refer collectively to the

defendants as "Kraft."

The dispute between the parties relates to the manufacture and sale of beverage cartridges

used to make single servings of coffee or other beverages. During the trial, the parties will offer

testimony to familiarize you with this technology.

3

Keurig owns United States Patent No. 6,607,762, which it alleges that Kraft infringes. Because patent numbers are so long, patents are usually referred to by their last three digits. Therefore, Keurig's Patent No. 6,607,762 is called simply "the '762 patent." Keurig contends that Kraft makes, uses, sells, and offers for sale beverage cartridges called T-Discs that infringe Keurig's '762 patent and that such infringement is willful.   Keurig seeks damages for Kraft's alleged infringement.

Keurig does not contend that all of the claims of the '762 Patent are infringed by Kraft.   Instead, Keurig asserts that only claim 1 is infringed.   This may be called the "asserted claim." I, and the attorneys and witnesses, may refer to the T-Disc as the "accused product."   An "accused product" simply means a product that Keurig asserts infringes its patent. You, of course, will determine whether or not the accused product infringes the asserted claim of Keurig's patent.

Persons or companies sued for allegedly infringing a patent can deny infringement.   They can also defend a charge of infringement by proving the patent is invalid or unenforceable.   In this case, Kraft denies that it infringes Keurig's patent and contends that Keurig's '762 patent is invalid and unenforceable.   I will tell you more about infringement in a few minutes.   I will instruct you as to the invalidity and unenforceability defenses in my instructions to you at the close of the evidence.

**<u>Keurig's Objections</u>**

Keurig objects to Kraft's proposed instruction because it references Kraft's contention that the '762 patent is unenforceable.   Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

## 1.3     Duties of the Jury  [AGREED]

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.  It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply to those facts the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not.  In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the terms of claim 1 of the Keurig patent mean.  Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you.  Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

7304895.1                                                                                                                           065927.1001

**1.4    Evidence  [AGREED]**

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court – you may not ask questions).  Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.  Certain things are not evidence and must not be considered by you. I will list them for you now:

(1)    Statements, arguments, and questions by lawyers are not evidence.

(2)    Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

(3)    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

(4)    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no

6

distinction between these two types of evidence, but simply requires that you find facts from all

the evidence in the case, whether direct or circumstantial or a combination of the two.

**1.5    Credibility of Witnesses – Weighing Conflicting Testimony  [AGREED]**

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  This instruction applies to the testimony of all witnesses, including expert witnesses.

7304895.1                                                            065927.1001

### 1.6    Burden of Proof  [DISPUTED]

**Keurig's Proposed Instruction**

As I have already told you, in this case, Keurig is the owner of the '762 patent, which it contends Kraft infringes.  Keurig, therefore, has the burden of proving infringement by what is called a preponderance of the evidence.  That means Keurig has to produce evidence which, considered in the light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not.  To put it differently, if you were to put Keurig's and Kraft's evidence on opposite sides of a scale, the evidence supporting Keurig's allegations would have to make the scale tip somewhat on its side.  If Keurig fails to meet this burden, the verdict must be for Kraft.  Keurig must also prove its damages by a preponderance of the evidence.

In this case, Kraft asserts that Keurig's patents are invalid.  A patent, however, is presumed to be valid.  Accordingly, the party challenging the patent has the burden of proving that it is invalid by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Keurig also contends that Kraft willfully infringed the patents in suit.  Keurig must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

9

**Kraft's Objections**

Keurig discusses willful infringement separately from infringement, which deviates from the practice in this district, and does so at the end of the instruction in a manner that prejudices Kraft. Keurig's instruction comments on the presumption of validity, which is unnecessary and redundant considering the jury is already informed that the burden of proof for invalidity is clear and convincing evidence. Additional discussion of the presumption would further prejudice Kraft in view of its already high burden of proof.

**Kraft's Proposed Instruction**

As I have already told you, in this case, Keurig is the owner of the '762 patent, which it contends Kraft infringes. Keurig, therefore, has the burden of proving infringement by what is called a preponderance of the evidence. That means Keurig has to produce evidence which, considered in the light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not. To put it differently, if you were to put Keurig's and Kraft's evidence on opposite sides of a scale, the evidence supporting Keurig's allegations would have to make the scale tip somewhat on its side. If Keurig fails to meet this burden, the verdict must be for Kraft. Keurig must also prove its damages by a preponderance of the evidence.

In this case, Keurig also contends that Kraft willfully infringed the patent in suit. Keurig must prove willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Kraft asserts that Keurig's patents are invalid. Accordingly, Kraft has the burden of proving that it is invalid by clear and convincing evidence.

7304895.1                                                                 065927.1001

Kraft also asserts that Keurig's patents are unenforceable. Kraft must prove unenforceability by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## Keurig's Objections

Keurig objects to Kraft's proposed instruction because it references Kraft's contention that the '762 patent is unenforceable. Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

Keurig also objects to Kraft's proposed instruction because it fails to inform the jury of the statutory presumption that Keurig's patent is valid. 35 U.S.C. § 282. The Court's standard patent pretrial instruction regarding the burden of proof includes the presumption of validity, as do both the 1993 and 2004 versions of the Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware. While Kraft is asserting alleged prior art that was not considered by the Patent office, the presumption of validity still applies as a matter of law. E.g., Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1375 (Fed. Cir. 1986) (reversing district court decision finding patent invalid).

Keurig also objects to Kraft's proposed instruction because it addresses willful infringement prior to patent validity. As the Federal Circuit has held, willful infringement requires a showing that the defendant acted despite an objectively high likelihood that its actions infringed a valid patent. In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The court also stated that "[a] substantial question about invalidity or infringement is likely sufficient...to avoid...a charge of willfulness." Id. at 1374. The Court should therefore instruct the jury about patent validity before willfulness.

7304895.1                                                                                                          065927.1001

**1.7     General Guidance Regarding Patents[3]  [ONE PART DISPUTED]**

*The parties agree that the following portion of Instruction 1.7 should be given:*

I will now give you a general overview of what a patent is and how one is obtained.

A.     <u>Constitutional Basis for Patent Grant</u>

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

B.     <u>Exclusionary Right and Term of a Patent</u>

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.  A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product that is covered by one or more claims of a valid patent, infringes the patent.

C.     <u>The Parts of a Patent</u>

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents.  Many of the terms in this description are contained in a

---

[3] Keurig proposes that the jury be shown the "Introduction to the Patent System" video prepared by the Federal Judicial Center.  If this video is shown, the Court may be able to streamline the preliminary instructions that relate to patent issues.  At this time, Kraft is considering whether showing the video is appropriate, and will discuss this issue with Keurig's counsel at a later time.

"Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains. Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Documents found in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched. The compilation of the papers concerning the

13

proceedings before the Patent Office is called the "prosecution history," "file wrapper," or "file history." The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they describe inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

*The parties dispute the following portion of Instruction 1.7:*

**Keurig's Proposed Instruction**

D.    Summary of the Patent Issues

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the glossary attached to these preliminary instructions. In this case, only claim 1 of Keurig's '762 patent is at issue. In essence, you must decide:

(1)    Whether Keurig has proven by a preponderance of the evidence that the Kraft accused products – T-Discs with internal filters – infringe claim 1 of Keurig's '762 patent;

14

(2)    Whether Kraft has proven by clear and convincing evidence that claim 1 of Keurig's '762 patent is invalid;

(3)    If you find that claim 1 of Keurig's '762 patent is valid and infringed, what amount of infringement damages Keurig has proven by a preponderance of the evidence; and

(4)    If you find that claim 1 of Keurig's '762 patent is valid and infringed, whether Keurig has proven, by clear and convincing evidence, that any infringement by Kraft was willful.

**Kraft's Objections**

Keurig's instruction omits any reference to Kraft's defense with regard to the unenforceability of the '762 Patent due to inequitable conduct, for which Kraft has moved to amend its pleadings. Keurig also omits any reference to Kraft's obviousness, enablement, or written description defenses that were raised in response to issues raised for the first time by Keurig's technical experts.

**Kraft's Proposed Instruction**

D.    <u>Summary of the Patent Issues</u>

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the glossary attached to these preliminary instructions. In this case, only claim 1 of Keurig's '762 patent is at issue. In essence, you must decide:

(1)    Whether Keurig has proven by a preponderance of the evidence that the Kraft accused products infringe claim 1 of Keurig's '762 patent;

15

(2)     Whether Kraft has proven by clear and convincing evidence that claim 1 of Keurig's '762 patent is invalid due to anticipation, obviousness, failure to enable, or failure to satisfy the written description requirement;

(3)     Whether Kraft has proven by clear and convincing evidence that Keurig's '762 patent is unenforceable;

(4)     If you find that claim 1 of Keurig's '762 patent is valid and infringed, what amount of infringement damages Keurig has proven by a preponderance of the evidence; and

(5)     If you find that claim 1 of Keurig's '762 patent is valid and infringed, whether Keurig has proven, by clear and convincing evidence, that any infringement by Kraft was willful.


## Keurig's Objections

Keurig objects to Kraft's proposed instruction because it references enforceability, written description, enablement and obviousness defenses.

Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

Likewise, Kraft did not disclose its intention to argue the issues of written description or enablement, or obviousness of claim 1, until more than four months after the close of discovery. Moreover, Kraft still has not disclosed the factual basis for those belated defenses.  Kraft's written description, enablement and obviousness defenses should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).

**1.8    Conduct of the Jury  [AGREED]**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes.  A word of caution is in order.  There is always a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your

17

memory should be your greatest asset when it comes time to deliberate and render a decision in this case.  So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**1.9    Course of the Trial  [AGREED]**

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2)    These preliminary instructions to you;

(3)    Opening statements by the lawyers which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)    The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)    My final instructions on the law to you;

(6)    The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)    Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**1.10    Trial Schedule  [AGREED]**

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.  This case is expected to take six (6) days to try.  We will normally begin the day at 9:00 A.M. promptly.  We will go until 1:00 P.M. and, after a one hour break for lunch, we will continue from 2:00 P.M. to 4:30 P.M.  There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M.  The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  On that day, the proceedings might last beyond 5:00 P.M.  We will post a copy of this schedule for the your convenience in the jury deliberation room.

7304895.1                                                                                                                065927.1001

**1.11    Glossary of Patent Terms  [AGREED]**

Applicants – The named inventors who are applying for the patent.

Assignment – Transfer of ownership rights in a patent or patent application from one person or company to another.

Claims – The part of a patent that defines the invention.  These are found at the end of the patent specification in the form of numbered paragraphs.

Disclosure of Invention – The part of the patent specification that explains how the invention works and usually includes one or more drawings.

File Wrapper, File History or Prosecution History – The written record of proceedings in the United States Patent and Trademark Office ("Patent Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent Office and the applicant.

Ordinary Skill in the Art – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

Patent Application – The initial papers filed in the Patent Office by an applicant.  These typically include a specification, drawings, claims and the oath (Declaration) of the applicant.

Patent Examiners – Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

Prior Art – Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application.

<u>Prior Art References</u> – Any item of prior art (publication, patent or product) used to determine patentability.

<u>Specification</u> – The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do.

<u>Authority</u>:  "Ordinary skill in the art" definition based on the Glossary of Patent Terms in the 2008 Model Patent Jury Instructions prepared by the American Intellectual Property Law Association ("2008 AIPLA Model Instructions").

22

## GENERAL JURY INSTRUCTIONS

**2.1    Introduction  [AGREED]**

Members of the jury, now it is time for me to instruct you about the law that you must

follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I

deliver them if you prefer, however, I would encourage you to focus your attention on me while

the instructions are being read.  You will be able to take your copies with you into your

deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and

evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury

room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the jury, it is important that you bear in mind the distinction between your

duties and my duties.  You have two main duties as jurors.  The first one is to decide what the

facts are from the evidence that you saw and heard here in court.  You are the sole judges of the

facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing

I have said or done during this trial was meant to influence your decisions about the facts in any

way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants are liable for patent infringement.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Authority: Miscellaneous Jury Instructions (GMS) ("Introduction"), downloaded from
http://www.ded.uscourts.gov/GMSmain.htm

**2.2     Evidence Defined  [AGREED]**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked.  I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

Authority:  Miscellaneous Jury Instructions (GMS) ("Evidence Defined").

**2.3**    **Direct and Circumstantial Evidence  [AGREED]**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Authority:  Miscellaneous Jury Instructions (GMS) ("Direct and Circumstantial Evidence").

7304895.1                                                                                                          065927.1001

**2.4     Consideration of Evidence  [AGREED]**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authority: Miscellaneous Jury Instructions (GMS) ("Consideration of Evidence").

7304895.1                                                                        065927.1001

**2.5    Statements of Counsel  [AGREED]**

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the true or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

Authority:  Miscellaneous Jury Instructions (GMS) ("Statements of Counsel").

**2.6    Credibility of Witnesses  [AGREED]**

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.


<u>Authority</u>: Miscellaneous Jury Instructions (GMS) ("Credibility of Witnesses").

**2.7    Expert Testimony  [AGREED]**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

Authority:  Miscellaneous Jury Instructions (GMS) ("Expert Testimony").

31

## 2.8    Number of Witnesses  [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Authority:  Miscellaneous Jury Instructions (GMS) ("Number of Witnesses").

7304895.1                                                              065927.1001

**2.9     Burden of Proof  [DISPUTED]**

**Keurig's Proposed Instruction**

This is a civil case in which Keurig is charging Kraft with patent infringement.  Keurig

has the burden of proving patent infringement by what is called a preponderance of the evidence.

That means Keurig has to produce evidence which, when considered in light of all of the facts,

leads you to believe that what Keurig claims is more likely true than not.  To put it differently, if

you were to put Keurig's and Kraft's evidence on the opposite sides of a scale, the evidence

supporting Keurig's claims would have to make the scales tip somewhat on its side.

In this case, Kraft is urging that Keurig's patent is invalid.  A patent, however, is

presumed to be valid.  Accordingly, Kraft has the burden of proving that the patent-in-suit is

invalid by clear and convincing evidence.  Clear and convincing evidence is evidence that

produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by

clear and convincing evidence is thus a higher burden than proof by a preponderance of the

evidence.

In addition, Keurig must prove its claim of willful infringement by clear and convincing

evidence and not by a preponderance of the evidence, the standard that applies to Keurig's

underlying infringement claim in this case.

Those of you who are familiar with criminal cases will have heard the term "proof beyond

a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, put it

out of your mind in considering whether or not Keurig or Kraft have met their burdens of proof.

33

Authority:  1993 Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware ("1993 Delaware Instructions") § 1.3.

## Kraft's Objections

Keurig's instruction omits any reference to Kraft's defense with regard to the unenforceability of the '762 Patent due to inequitable conduct, for which Kraft has moved to amend its pleadings.  Keurig discusses willful infringement separately from infringement, which deviates from the practice in this district, and does so at the end of the instruction in a manner that prejudices Kraft.  Keurig's instruction comments on the presumption of validity, which is unnecessary and redundant considering the jury is already informed that the burden of proof for invalidity is clear and convincing evidence.  Additional discussion of the presumption would further prejudice Kraft in view of its already high burden of proof.

## Kraft's Proposed Instruction

This is a civil case in which Keurig is charging Kraft with patent infringement.  Kraft denies this charge.  Keurig has the burden of proving patent infringement by a preponderance of the evidence.  That means Keurig has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Keurig claims is more likely true than not.  To put it differently, if you were to put Keurig's and Kraft's evidence on the opposite sides of a scale, the evidence supporting Keurig's claims would have to make the scales tip somewhat on its side.

In addition, Keurig must prove its claim of willful infringement by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to Keurig's underlying infringement claim in this case.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Kraft asserts that Keurig's patent is invalid. The party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid.

Kraft also asserts that Keurig's patent is unenforceable. Kraft must prove its claim of unenforceability by clear and convincing evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Keurig or Kraft have met their burdens of proof.

Authority: 1993 Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware ("1993 Delaware Instructions") § 1.3.

## Keurig's Objections

Keurig objects to Kraft's proposed instruction because it references Kraft's contention that the '762 patent is unenforceable. Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

Keurig also objects to Kraft's proposed instruction because it fails to inform the jury of the statutory presumption that Keurig's patent is valid. 35 U.S.C. § 282. The Court's standard patent pretrial instruction regarding the burden of proof includes the presumption of validity, as do both the 1993 and 2004 versions of the Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware. While Kraft is asserting alleged prior art that was not considered by the Patent office, the presumption of validity still applies as a matter of law. E.g., Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1375 (Fed. Cir. 1986) (reversing district court decision finding patent invalid).

Keurig also objects to Kraft's proposed instruction because it addresses willful infringement prior to patent validity. As the Federal Circuit has held, willful infringement requires a showing that the defendant acted despite an objectively high likelihood that its actions infringed a valid patent. In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The court also stated that "[a] substantial question about invalidity or infringement is likely sufficient...to avoid...a charge of willfulness." Id. at 1374. The Court should therefore instruct the jury about patent validity before willfulness.

**3.0    Summary of the Issues  [DISPUTED]**

**Keurig's Proposed Instruction**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following four main issues:

(1)    Whether Keurig has proven by a preponderance of the evidence that the Kraft accused products – T-Discs with internal filters – infringe claim 1 of Keurig's '762 patent;

(2)    Whether Kraft has proven by clear and convincing evidence that claim 1 of Keurig's '762 patent is invalid;

(3)    If you find that claim 1 of Keurig's '762 patent is valid and infringed, what amount of infringement damages Keurig has proven by a preponderance of the evidence; and

(4)    If you find that claim 1 of Keurig's '762 patent is valid and infringed, whether Keurig has proven, by clear and convincing evidence, that any infringement by Kraft was willful.

Authority:  2008 AIPLA Model Instructions § 1.

**Kraft's Objections**

Keurig's instruction omits any reference to Kraft's defense with regard to the unenforceability of the '762 Patent due to inequitable conduct, for which Kraft has moved to amend its pleadings.  Keurig also omits any reference to Kraft's obviousness, enablement, or written description defenses that were raised in response to issues raised for the first time by Keurig's technical experts.

**Kraft's Proposed Instruction**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following four main issues:

(1)    Whether Keurig has proven by a preponderance of the evidence that the Kraft accused products infringe claim 1 of Keurig's '762 patent;

36

(2)     Whether Kraft has proven by clear and convincing evidence that claim 1 of

Keurig's '762 patent is invalid due to anticipation, obviousness, failure to enable, or failure to

satisfy the written description requirement;

(3)     Whether Kraft has proven by clear and convincing evidence that claim 1 of

Keurig's '762 patent is unenforceable;

(4)     If you find that claim 1 of Keurig's '762 patent is valid, enforceable and infringed,

what amount of infringement damages Keurig has proven by a preponderance of the evidence;

and

(5)     If you find that claim 1 of Keurig's '762 patent is valid, enforceable and infringed,

whether Keurig has proven, by clear and convincing evidence, that Kraft's infringement, if any,

was willful.

Authority:  2008 AIPLA Model Instructions § 1.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it references enforceability,
written description, enablement and obviousness defenses.

Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion
for leave to amend its complaint to add such a defense should be denied for the reasons described
in Keurig's opposition (D.I. 94) to that motion.

Likewise, Kraft did not disclose its intention to argue the issues of written description or
enablement, or obviousness of claim 1, until more than four months after the close of discovery.
Moreover, Kraft still has not disclosed the factual basis for those belated defenses. Kraft's
written description, enablement and obviousness defenses should accordingly be precluded as
explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).

## CLAIM CONSTRUCTION

**4.1     Claim Construction – Generally  [AGREED]**

Before you decide whether Kraft has infringed claim 1 of Keurig's '762 patent or whether

that claim 1 of Keurig's '762 patent is invalid, you will have to understand the claim.  The patent

claims are numbered sentences at the end of the patent.

As I mentioned earlier, only claim 1 of the '762 patent is involved here.  It begins at

column 4, line 61 of the '762 patent, which is exhibit ____ in evidence.  The claims are intended

to define, in words, the boundaries of the invention.  Only the claims of the patent can be

infringed.  Neither the written description, nor the drawings of a patent can be infringed.  You

must use the same claim meaning for both your decision on infringement and your decision on

invalidity.


<u>Authority</u>:  2008 AIPLA Model Instructions § 2.0.

**4.2    Claim Construction for the Case  [AGREED]**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.

The term "first and second chambers" is construed to mean, with regard to the first chamber, "the part of the cartridge into which the liquid is introduced and through which it flows before reaching the filter," and, with regard to the second chamber, "the part of the cartridge out of which the beverage flows after having passed through the filter."

The term "piercable to accommodate an inflow of liquid" is construed to mean "capable of being pierced to permit a flow of liquid into."

The term "piercable to accommodate an outflow of the beverage" is construed to mean "capable of being pierced to permit a beverage to flow out."[4]

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

Authority:  2008 AIPLA Model Instructions § 2.1; Order Construing the Terms of U.S. Patent No. 6,607,762 (D.I. 53).

---

[4] The Court did not adopt either of the party's claim construction in total. Therefore, the parties reserve their rights to challenge the Court's claim construction on appeal.

7304895.1                                                                                                                                   065927.1001

**INFRINGEMENT**

**4.3    Infringement – Generally  [DISPUTED]**

**Keurig's Proposed Instruction**

Question 1 of the Verdict Form reads as follows:  Has Keurig proven, by a preponderance of the evidence, that Kraft has infringed claim 1 of Keurig's U.S. Patent No. 6,607,762?

I will now instruct you as to the rules you must follow when deciding whether Keurig has proven that Kraft infringed claim 1 of the '762 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, Keurig alleges that Kraft T-Discs with internal filters infringe claim 1 of Keurig's '762 patent.

You have heard evidence about both Keurig's commercial product and Kraft's accused T-Disc product.  However, in deciding the issue of infringement you may not compare Kraft's accused filter T-Disc product to Keurig's commercial product.  Rather, you must compare Kraft's accused T-Disc product to the claims of the '762 patent when making your decision regarding infringement.

Authority:  2008 AIPLA Model Instructions § 3.0.

**Kraft's Objections**

Contrary to this Court's practice, Keurig attempts to incorporate the language of the verdict form into the instruction.  Kraft offers an instruction that is consistent with the law and comports with the practice in this Court, and is based on a jury instruction adopted by the Court earlier this year in another matter.

**Kraft's Proposed Instruction**

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, Keurig alleges that Kraft T-Discs with internal filters infringe claim 1 of Keurig's '762 patent.

In order to infringe a patent claim, a product must include each and every limitation or element of the claim.  If an accused product omits even a single element recited in a patent claim, then you must find that the accused product has not infringed the claim.  If, however, an accused product includes each and every element of a claim, then you must find that the accused product infringed that claim.

You have heard evidence about both Keurig's commercial product and Kraft's accused T-Disc product.  However, in deciding the issue of infringement you may not compare Kraft's accused filter T-Disc product to Keurig's commercial product.  Rather, you must compare Kraft's accused T-Disc product to the claims of the '762 patent when making your decision regarding infringement.

Authority:  2008 AIPLA Model Instructions § 3.0; GMS instruction from *Finjan Software, Ltd. v. Secure Computing Corp.* (No. 16).

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it does not refer to the relevant question of the verdict form.  By distributing the verdict form before the jury instructions and then referring to specific questions at the beginning of the Court's discussion of the relevant law, Keurig's proposal makes it easier for jurors to understand and apply the Court's instructions.

41

Keurig further objects to Kraft's proposed instruction because the paragraph beginning "In order to infringe" is duplicative of Instruction 4.5 ("Infringement – Comparison of Products to Claims"). Details regarding the "all-elements" requirement are inappropriate to include in an instruction concerning infringement "generally." Indeed, Jury Instruction No. 14 ("Patent Infringement Generally – Direct Infringement") in the <u>Finjan</u> instructions cited by Kraft does <u>not</u> address the issue.

42

**4.4    Infringement – Knowledge of Patent or Intent to Infringe Is Immaterial  [AGREED]**

In this case, Keurig asserts that Kraft has infringed the '762 patent.  Kraft would be liable

for infringing Keurig's patent if you find that Keurig has proven that it is more likely than not

that Kraft has made, used, offered to sell, or sold the invention defined in claim 1 of the '762

patent.

Someone can infringe a patent without knowing that what they are doing is an

infringement of the patent.  They also may infringe a patent even though they believe in good

faith that what they are doing is not an infringement of any patent.

Authority:  2008 AIPLA Model Instructions § 3.1.  References to "direct" infringement in this
instruction and all subsequent instructions have been removed for clarity, as "indirect"
infringement (inducement and contributory infringement) is not at issue in this case.

7304895.1                                                        065927.1001

**4.5    Infringement – Comparison of Products to Claims  [AGREED]**

To determine infringement, you must compare the accused T-Disc with claim 1 of the
'762 patent, using my instructions as to the meaning of relevant claim terms.

A patent claim is infringed only if Kraft's accused T-Disc includes each and every
element in that patent claim.  If Kraft's T-Disc does not contain one or more elements recited in a
claim, Kraft does not infringe that claim.

The accused T-Disc should be compared to the invention described in claim 1 of the '762
patent, not to Keurig's preferred or commercial embodiment of the claimed invention.  The same
element of the accused T-Disc may satisfy more than one element of a claim.


Authority:  2008 AIPLA Model Instructions § 3.2.

7304895.1                                                                                065927.1001

**4.6     Infringement of Open-Ended or "Comprising" Claims  [AGREED]**

The preamble to claim 1 uses the phrase "a beverage filter cartridge comprising."  The word "comprising" means "including the following but not excluding others."  If you find that Kraft's accused T-Discs include all of the elements in claim 1, the fact that the T-Discs might include additional components would not avoid infringement of a claim that uses "comprising" language.


Authority:  2008 AIPLA Model Instructions § 3.7.

45

**4.7A    (Keurig's Proposal) – Infringement Despite Defendant's Improvements
or Patents on Improvements [DISPUTED]**

**Keurig's Proposed Instruction**

Kraft has presented evidence that its accused T-Discs embody separate inventions of

Kraft that have themselves been patented.  This fact is irrelevant to the question whether the T-

Disc infringes one or more of the '762 patent claims.  The test for infringement remains as I have

instructed you – if you find Kraft's accused T-Discs include all of the elements of claim 1 of the

'762 patent, then that claim is infringed by Kraft's product, despite Kraft's improvements.

Authority:  2004 Proposed Uniform Jury Instructions for Patent Cases in the United States
District Court for the District of Delaware ("2004 Proposed Delaware Instructions") § 3.6.

**Kraft's Objections**

Kraft objects to this instruction as unnecessary as it is **Keurig** that is relying on Kraft's
European patents on the T-disc, and the prosecution histories thereof, for its case in chief.  In
addition, this instruction is redundant with instruction 4.5 that already instructs the jury to
compare the accused product with the asserted claim.

**Kraft's Proposed Instruction**

Kraft does not propose an instruction regarding improvements.

**Keurig's Objections**

It is important for the Court to instruct the jury that improvements are irrelevant to the
question of infringement so long as the T-Disc includes all of the elements of claim 1.  Kraft's
discovery responses and expert reports evidence an intent to argue that innovations allegedly
unrelated to same-side piercing drive consumer demand for the T-Disc and related Tassimo
brewer.  Without an instruction regarding improvements, there is a substantial risk the jury might
incorrectly conclude that innovation by Kraft also constitutes a defense to infringement.

**4.7B    (Kraft's Proposed Sequence) – Willful Infringement [DISPUTED]**

**Keurig's Proposed Instruction**

Question 4 of the Verdict Form reads as follows:  Has Keurig proven, by clear and convincing evidence, that any infringement of Keurig's U.S. Patent No. 6,607,762 was willful?

I will now instruct you as to the rules you must follow when deciding the issue of willful infringement.

If you find by a preponderance of the evidence that Kraft infringed Keurig's '762 patent, then you must further determine if this infringement was willful.  Willfulness must be proved by clear and convincing evidence showing that:

1.    Kraft was aware of Keurig's patent;

2.    Kraft acted despite an objectively high likelihood that its actions infringed a valid patent; and

3.    This objectively high likelihood of infringement was either known to Kraft or so obvious that it should have been known to Kraft.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to

(1)    whether Kraft intentionally copied the claimed invention or a product covered by Keurig's patent;

(2)    whether Kraft presented a substantial defense to infringement, including the defense that the patent is invalid;

47

(3)    whether Kraft made a good faith effort to avoid infringing the patent, for example remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent; and

(4)    whether a fair and reasonable competitor would have secured legal advice or a professional legal opinion that would clear it of the alleged infringement. However, the absence of an opinion of counsel does not require you to find willfulness.

Authority: 2008 AIPLA Model Instructions § 13; In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc., 06-438-GMS Final Jury Instruction (D. Del. June 11, 2008) § 4.6.

**Kraft's Objections**

Contrary to this Court's practice, Keurig attempts to incorporate the language of the verdict form into the instruction. Kraft offers an instruction that is consistent with the law and comports with the practice in this Court, and is based on a jury instruction adopted by the Court earlier this year in another matter. Moreover, contrary to the practice of this Court, Keurig attempts to have the willful instruction read at the end, and not with the instructions related to infringement. Moreover, factors (3) and (4) are contrary to In re Seagate, which reversed Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed. Cir. 1983), and eliminated the affirmative duty of due care. Keurig improperly attempts to create an inference of willful of infringement by discussing Kraft's reliance on opinion of counsel. The AIPLA jury instructions that Keurig relies upon notes that an instruction regarding "[w]hether the Defendant relied on competent legal advice," is appropriate when the defendant relies on a legal opinion as a defense to an allegation of willful infringement. "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to consult counsel." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

**Kraft's Proposed Instruction**

If you find by a preponderance of the evidence that Kraft infringed Keurig's '762 patent, then you must further determine if this infringement was willful. Willfulness must be proved by clear and convincing evidence showing that:

1.      Kraft was aware of Keurig's patent;

2.      Kraft acted despite an objectively high likelihood that its actions infringed a valid patent; and

3.      This objectively high likelihood of infringement was either known to Kraft or so obvious that it should have been known to Kraft.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to

(1)     whether Kraft intentionally copied the claimed invention or a product covered by Keurig's patent; and

(2)     whether Kraft presented a substantial defense to infringement, including the defense that the patent is invalid.

Authority: 2008 AIPLA Model Instructions § 13; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*); *Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.*, 06-438-GMS Final Jury Instruction (D. Del. June 11, 2008) § 4.6.

### Keurig's Objections

Keurig objects to Kraft's proposed instruction because it omits any explanation that the jury can consider (1) whether Kraft made a good faith effort to avoid infringing Keurig's patent and (2) whether a fair and reasonable competitor in Kraft's position would have secured legal advice or a professional legal opinion that would clear it of the alleged infringement. Both of these considerations are relevant to the <u>Seagate</u> objective recklessness standard and are noted in this Court's <u>Elan</u> instructions, on which Kraft's proposal is nominally based.

# INVALIDITY

## 5.1    Summary of Invalidity Defense  [DISPUTED]

### Keurig's Proposed Instruction

Question 2 of the Verdict Form reads as follows: Has Kraft proven, by clear and

convincing evidence, that claim 1 of Keurig's U.S. Patent No. 6,607,762 is invalid?

I will now instruct you as to the rules you must follow when answering Question 2 of the

Verdict Form and deciding whether Kraft has proven that claim 1 of the '762 patent is invalid.


Authority: 2008 AIPLA Model Instructions § 4.

### Kraft's Objections

Contrary to this Court's practice, Keurig attempts to incorporate the language of the
verdict form into the instruction.  Kraft offers an instruction that is consistent with the law and
comports with the practice in this Court, and is based on a jury instruction adopted by the Court
earlier this year in another matter.  Keurig also omits any reference to Kraft's obviousness,
enablement, or written description defenses that were raised in response to issues raised for the
first time by Keurig's technical experts.

### Kraft's Proposed Instruction

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in

the patent must be new, useful and nonobvious.  A patent cannot take away from people their

right to use what was known or what would have been obvious at the time the invention was

made.  The terms "new," "useful," and "nonobvious" have special meanings under the patent

laws.

The invention must also be adequately described.  In return for the right to exclude other

from making, using, selling, or offering for sale the claimed invention, the patent owner must

provide the public with a complete description of the invention, in the patent, and how to make and use it.

Kraft contends that claim 1 of Keurig's 762 Patent is invalid. Kraft must prove by clear and convincing evidence that this claim is invalid. Kraft contends that claim 1 is invalid for the following reasons:

(1)    Kraft developed the Kenco Singles® beverage cartridge which anticipates the asserted claim of the '762 Patent and was in public use in the United States prior to the Feb. 18, 2000 date of invention of the '762 patent;

(2)    U.S. Patent No. 4,853,234 ("the '234 Patent") to Bentley et al. anticipates the asserted claim of the '762 Patent;

(3)    U.S. Patent No. 4,452,130 ("the '130 Patent") to Klein anticipates the asserted claim of the '762 Patent;

(4)    the claimed invention was obvious in light of the prior art;

(5)    the specification failed to enable those in the field to make and use the claimed invention; and

(6)    the specification failed to provide an adequate written description of each and every limitation of claim 1 of the '762 patent.

I will now instruct you as to the rules you must follow in deciding whether Kraft has proven that claim 1 of the '762 patent is invalid.

Authority: 2008 AIPLA Model Instructions § 4; GMS instruction from *Finjan Software, Ltd. v. Secure Computing Corp.* (No. 20).

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it does not refer to the relevant question of the verdict form.  By distributing the verdict form before the jury instructions and then referring to specific questions at the beginning of the Court's discussion of the relevant law, Keurig's proposal makes it easier for jurors to understand and apply the Court's instructions.

Keurig objects to Kraft's proposed instruction because it references written description, enablement and obviousness defenses.  Kraft did not disclose its intention to argue the issues of written description or enablement, or obviousness of claim 1, until more than four months after the close of discovery.  Moreover, Kraft still has not disclosed the factual basis for those belated defenses.  Kraft's written description, enablement and obviousness defenses should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).

52

## 5.2    Presumption of Validity  [DISPUTED]

**Keurig's Proposed Instruction**

The granting of a patent by the Patent Office carries with it the presumption that the

patent's subject matter is new, useful and constitutes an advance that was not, at the time the

invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence

of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing

the patent.  Nevertheless, once the validity of a patent has been put at issue, it is the responsibility

of the jury to review what the Patent Office has done consistent with these instructions on the

law.

Authority:  2004 Proposed Delaware Instructions § 4.1; Glaxo Group Ltd. v. Teva
Pharmaceuticals USA, Inc., C.A. No. 02-219-GMS, 2004 WL 1875017, at *18 (D. Del. Aug. 20,
2004)  ("Anticipation is a question of fact that is shown only by rigorous proof.").

**Kraft's Objections**

Kraft respectfully submits that a separate instruction regarding the presumption of
invalidity is redundant and unnecessary as the Court already instructs the jury that the burden of
proof for invalidity is clear and convincing evidence.  Additional discussion of the presumption
would further prejudice Kraft in view of its already high burden of proof.

**Kraft's Proposed Instruction**

Kraft does not propose an instruction on the presumption of validity.

**Keurig's Objections**

Keurig's patent is entitled to a statutory presumption of validity.  35 U.S.C. § 282.
Keurig therefore objects to Kraft's proposal that the Court not offer an instruction on the
presumption of validity.  Both the 1993 and 2004 versions of the Uniform Jury Instructions for
Patent Cases in the United States District Court for the District of Delaware include the
presumption of validity.  While Kraft is asserting alleged prior art that was not considered by the
Patent office, the presumption of validity still applies as a matter of law.  E.g., Hybritech, Inc. v.
Monoclonal Antibodies, Inc., 802 F.2d 1367, 1375 (Fed. Cir. 1986) (reversing district court
decision finding patent invalid.)

## ANTICIPATION

**6.1    Prior Art Defined  [AGREED]**

Generally speaking, prior art includes any of the following items received into evidence during trial:

  1. any product that was publicly known or used by others in the United States before the patented invention was made;

  2. patents that issued more than one year before the subject patent was filed, or before the invention described in the patent was made; and

  3. any product that was in public use or on sale in the United States  more than one year before the patent was filed.

In this case, Kraft contends that the following items are prior art:

The Kenco Singles Cartridge;

U.S. Patent No. 4,452,130; and

U.S. Patent No. 4,853,234.

54

6.2    **Anticipation  [DISPUTED]**

**Keurig's Proposed Instruction**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, Kraft must prove with clear and convincing evidence that the claimed invention is not new.

In this case, Kraft contends that the invention of claim 1 of Keurig's '762 patent was embodied in a product – the Kenco Singles Medium Roast Cartridge – that Kraft contends was in public use in the United States more than one year before Keurig filed its patent application.

Kraft also contends that the invention of claim 1 of Keurig's '762 patent was described in U.S. Patent Nos. 4,452,130 and 4,853,234, which issued more than one year before Keurig filed its patent application.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior product or patent, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular product or patent.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior product or patent, but also what inherently resulted from its practice.  This is called "inherency."  A party

55

claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear ~~either~~[5] that the prior art necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art ~~at the time the patent application was filed~~. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure <u>at the time the patent application was filed</u>. Thus, the prior use of the patented invention that was unrecognized and unappreciated <u>at the time the patent application was filed</u> can still be an invalidating anticipation, <u>but only</u> <u>if one of ordinary skill in the art would later recognize the inherent feature</u>. <u>Authority</u>: (1) in view of (2), (3), (4), (5), (6), and (7).[16][2]

Inherent anticipation requires that all claim elements and functional properties be a necessary and inevitable consequence of practicing the invention in the prior art under normal conditions. The possibility that prior art could be modified to achieve the elements and functional properties of a claim does not prove that the prior art itself anticipates the claim. <u>Authority</u>: (4), (8) and (9).

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the particular

---

[5]The word "either" in the AIPLA model instruction appears to be a typographical error.

[6]Added material is underlined, deleted material has been struck. The two subject sentences of the AIPLA model instruction contradicted one another on the subject of whether "recognition" of an inherent property in the prior art is required for anticipation. The <u>Schering</u> case and its progeny, including multiple decisions of this Court cited in the Authority section, make clear that recognition of the inherent property <u>is</u> required, but need not be shown at the time the patent application was filed. In other words, the recognition need not, itself, be part of the prior art.

categories of anticipation that Kraft contends apply in this case. I will now instruct you about those.

Authority:

(1) 2008 AIPLA Model Instructions § 6.0.

(2) Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003) (holding that "[r]ecognition by a person of ordinary skill in the art before the critical date of the … patent is not required to show anticipation by inherency" where the evidence shows "later recognition of the inherent characteristics of the prior art"; "[I]nherency, like anticipation itself, requires a determination of the meaning of the prior art. Thus, a court may consult artisans of ordinary skill to ascertain their understanding about subject matter disclosed by the prior art, including features inherent in the prior art. A court may resolve factual questions about the subject matter in the prior art by examining the reference through the eyes of a person of ordinary skill in the art.") (emphasis added).

(3) Astrazeneca AB v. Mutual Pharm. Co., Inc., 278 F. Supp. 2d 491, 515 (E.D. Pa. 2003) (denying motion for summary judgment of anticipation due to lack of evidence that those of ordinary skill in the art would recognize the allegedly inherent characteristic of the prior art even after the fact; citing Schering for the proposition that inherency requires evidence of at least "'later recognition' of the inherent characteristics of the prior art" by those of skill in the art; and concluding that experiments performed by the defendants' experts for purposes of the litigation, which were subject to a protective order and not known to others in the field, were insufficient to demonstrate later recognition; in fact, unlike the defendants' experts, "another person of ordinary skill in the art would not have approached [the prior art] with the possibility of [the claimed] function already in mind") (emphasis added).

(4) Glaxo Group Ltd. v. Teva Pharms. USA, Inc., C.A. No. 02-219-GMS, 2004 WL 1875017, at *19 (D. Del. Aug. 20, 2004) ("[A]lthough past recognition of the inherent feature is not necessary, the court may still evaluate the opinions of those skilled in the art to determine the scope of the prior art reference ... Although inherent anticipation does not require the element [or functional property] to be present each and every time, it does require the result to be a necessary and inevitable consequence of practicing the invention claimed in the prior art under normal conditions.") (emphasis added).

(5) ISCO Int'l, Inc. v. Conductus, Inc., C.A. No. 01-487-GMS, 2003 WL 279561, at *5 (D. Del. Feb. 10, 2003) (denying defendant's motion for summary judgment of anticipation where defendant had "presented no evidence as to whether someone skilled in the art would perceive" the allegedly inherent disclosure in the prior art) (emphasis added).

7304895.1                                                                065927.1001

(6) <u>Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.</u>, C.A. No. 98-80-SLR, 2005 WL 67085, at *8-9 (D. Del. Jan. 5, 2005) (granting summary judgment of no anticipation where the claimed device had to be "capable of being compressed onto a balloon catheter" and the prior art was a self-expending stent not designed for such compression that had to be held in a compressed state by a separate sheath device: "There is nothing inherent in the properties of the Gianturco stent that <u>would lead one of ordinary skill in the art to believe</u> that such a stent could be used as anything other than a self-expanding stent.") (emphasis added).

(7) <u>Topliff v. Topliff</u>, 145 U.S. 156, 161 (1892) (patent for pressure equalization device not anticipated by prior art with a similar structure; the prior art "approached very near the idea of an equalizer; but this idea did not apparently dawn on them, <u>nor was there anything in their patent which would have suggested it to a mechanic of ordinary intelligence, unless he were examining it for that purpose</u>. It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were <u>not designed by its maker, nor adapted, nor actually used, for the performance of such functions</u>.") (emphasis added).

(8) <u>Transclean Corp. v. Bridgewood Servs., Inc.</u>, 290 F.3d 1364, 1373 (Fed. Cir. 2002) ("Although it is possible that the [prior art] could under some circumstances ... effectively equalize the flow rates [the claimed functional limitation], it is also possible for that not to be the case. Because anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must <u>necessarily</u> include the unstated limitation ... the [prior art] cannot inherently anticipate.") (emphasis original).

(9) <u>Telemac Cellular Corp. v. Topp Telecom, Inc.</u>, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("[T]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself to support a finding of infringement."); <u>Mycogen Plant Science v. Monsanto Co.</u>, 243 F.3d 1316, 1324 (Fed. Cir. 2001) ("The tests for infringement and anticipation are very similar, and that which would literally infringe if later in time anticipates if earlier.").


**Kraft's Objections**

Keurig attempts to confuse the jury with an overlong instruction relying on nine different cases hoping to support its inherency arguments for features and methods of use that are not even claimed in the '762 Patent. Kraft is not making any inherency arguments. The prior art asserted by Kraft embodies or disclose a lid capable of being pierced pursuant to the Court's claim construction. Kraft provides a straightforward, simple instruction that states the basic law of anticipation, *i.e.*, "each and every element in the claim must be present in a single item of prior art."

**Kraft's Proposed Instruction**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Kraft must prove with clear and convincing evidence that the claimed invention is not new.

In this case, Kraft contends that the invention of claim 1 of Keurig's '762 patent is anticipated. First, Kraft contends that the invention of claim 1 of Keurig's '762 patent was embodied in a product – the Kenco Singles Cartridge – that Kraft contends was in public use in the United States more than one year before Keurig filed its patent application. Further, Kraft contends the Kenco Singles Cartridge was publicly known and used by others in the United States before the invention of claim 1 of Keurig's '762 patent was made.

Kraft also contends that the invention of claim 1 of Keurig's '762 patent was described in U.S. Patent Nos. 4,452,130 and 4,853,234, which issued more than one year before Keurig filed its patent application.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior product or patent, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular product or patent.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the particular

59

categories of anticipation that Kraft contends apply in this case. I will now instruct you about those.

Authority:  2008 AIPLA Model Instructions § 6.0.


**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it omits any discussion of the law governing inherent anticipation, which is a critical issue in this case given the admissions by Kraft's own witnesses that the references on which Kraft relies do not expressly disclose the concept of same-side piercing, the key feature distinguishing Keurig's patent from the prior art. Kraft's instruction also fails to explain that modifying an allegedly prior art device (e.g., the Kenco Singles cartridge) so that it satisfies all the elements and functional requirements of a claim is insufficient to prove anticipation.

7304895.1                                                                                      065927.1001

**6.3    Prior Public Use  [DISPUTED]**

**Keurig's Proposed Instruction**

Kraft contends that claim 1 of Keurig's '762 patent is anticipated because the invention defined in that claim was publicly used in the United States more than one year before Keurig filed its patent application on February 18, 2000.

A patent claim is invalid if the invention defined in that claim was publicly used by anyone in the United States more than one year before the effective filing date of the subject patent application.  An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  The absence of affirmative steps to conceal is evidence of a public use.  However, secret use by a third party is not public.  Authority: (1).

In other words, when the prior use was by someone other than the patent applicant, the patent is valid unless the prior use was accessible to the public and, in particular, to that segment of the public most likely to make use of its contents.  Availability to employees of a particular company or entity (such as Kraft, for example) does not necessarily mean availability to the public.  Authority: (2), (3), (4), (5) and (6).

The absence of a formal confidentiality or secrecy agreement does not necessarily mean that a prior use was public.  Instead, you must consider the circumstances as a whole, including standard operating practices as well as any informal norms or expectations of secrecy.  Authority: (5), (6) and (7).

The public use must have occurred in the United States.  Public use elsewhere in the world is irrelevant to the question of whether or not a United States patent is valid.  Accordingly,

7304895.1                                    065927.1001

evidence that Kenco Singles cartridges were sold and publicly used in Europe cannot form the basis for a finding that Keurig's '762 patent is invalid.  Authority: (8) and (9).

Oral testimony regarding prior public use does not alone constitute the necessary clear and convincing evidence of patent invalidity.  The testimony must instead be corroborated by some other form of evidence.  Authority: (10).

Authority:

(1)  2008 AIPLA Model Instructions § 6.2.

(2)  1993 Delaware Instructions § 4.7 ("Secret non-public use by other than the inventor, however, is not an invalidating public use.  Thus, a patent is not invalidated if the particular device, composition or process if used by someone other than the inventor, under circumstances where it is not made accessible to the public.").

(3)  2004 Proposed Delaware Instructions § 4.5 ("It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public mostly likely to make use of the prior art 's contents.").

(4)  Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371 (Fed. Cir. 1998) ("[W]hen an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public.").

(5)  Black & Decker, Inc. v. Robert Bosch Tool Corp., 476 F. Supp. 2d 887, 894 (N.D. Ill. 2007) (granting motion for judgment as a matter of law that use by government of alleged prior art radio was not a public use; radios had been sold under a government restriction and were not available to the public)

(6)  System Management Arts Inc. v. Avesta Techs. Inc., 54 U.S.P.Q. 2d 1239, 1246 (S.D.N.Y. 2000) ("[T]he mere fact that Delphi materials were accessible to Morgan Stanley employees other than the IT Group, or were stored on a common drive or server without restriction, would not suffice to satisfy Section 102(a) or (b).  The availability of such information *within* Morgan Stanley, after all, indicates nothing about the availability of information concerning Delphi to those outside of Morgan Stanley, or to the 'public' at large.").

(7)  Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1381 (Fed. Cir. 2004) (vacating district court's finding of invalidity based on prior public use despite absence of

confidentiality agreement: "Bernhardt presented additional testimony by Collett that Pre-Market was not open to the public, that the identification of attendees was checked against a list of authorized names both by building security and later at a reception desk near the showroom, that attendees were escorted through the showroom, and that attendees were not permitted to make written notes or take photographs inside the showroom.").

(8) 35 U.S.C. § 102(b) ("A person shall be entitled to a patent unless … (b) the invention was … in public use or on sale <u>in this country</u>, more than one year prior to the date of the application for patent in the United States.") (emphasis added).

(9) <u>SmithKline Beecham Corp. v. Apotex Corp.</u>, 286 F. Supp. 2d 925, 937-38 (N.D. Ill. 2001) (granting summary judgment that patent was not invalidated by prior public use: "[I]t is well settled that use in a country other than the United States, without accompanying publication or foreign patent, cannot operate to invalidate an issued American patent.").

(10) <u>Juicy Whip, Inc. v. Orange Bang, Inc.</u>, 292 F.3d 728, 737-38 (Fed. Cir. 2002) (reversing jury verdict of anticipation despite public use testimony from six witnesses: "Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent.").

### Kraft's Objections

Again, Keurig proffers another overlong instruction, this time citing 10 different cases, which is plainly designed to confuse the jury. Furthermore, Keurig has included the basis of its arguments, which not only misstate the law, but would have the Court articulate Keurig's arguments on its behalf. Kraft has proffered a clear and concise instruction based on the AIPLA model jury instructions and a similar instruction adopted by the Court earlier this year, and accurately reflects the law of public use.

### Kraft's Proposed Instruction

Kraft contends that claim 1 of Keurig's '762 patent is anticipated because the invention defined in that claims was publicly used in the United States more than one year before Keurig filed its patent application on February 18, 2000, and was publicly used by others in the United States before it was invented by the patentee.

A patent claim is invalid if the invention defined in that claim was publicly used by a person other than the patentee in the United States before it was invented by the patentee, or if the invention defined in that claim was publicly used by anyone in the United States more than

one year before the effective filing date of the subject patent application. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal is evidence of a public use. However, secret use by a third party is not public. Authority: (1).

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

Authority:

(1) 2008 AIPLA Model Instructions § 6.2.;

(2) GMS instruction from *Finjan Software, Ltd. v. Secure Computing Corp.* (No. 23).

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it omits critical legal guidance needed for the jury to make a proper determination whether the alleged use of Kenco Singles cartridges in Kraft's offices was secret for the purposes of 35 U.S.C. § 102(b). Such "third-party" public use cases are unusual, and the applicable law is not addressed in the baseline AIPLA Model Instructions.

Keurig also objects to Kraft's proposed instruction because it fails to explain that oral testimony does not alone constitute the "clear and convincing" evidence required to invalidate a patent claim. The legal standards applicable to oral testimony are important to include because Kraft's evidence of alleged prior public use centers on testimony from interested witnesses. Kraft's omission invites therefore legal error. E.g., Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 738–40 (Fed. Cir. 2002) (reversing jury verdict of invalidity for public use based on the uncorroborated oral testimony of six witnesses); Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1370 (Fed. Cir. 1998) (reversing finding of anticipation based on uncorroborated oral testimony of prior use).

Keurig also objects to Kraft's proposed instruction because it does not inform the jury that public use in foreign countries is irrelevant to a patent's validity. E.g., In re Hilmer, 359 F.2d 859, 878 (C.C.P.A. 1966); Reeves Bros., Inc. v. U.S. Laminating Corp., 282 F. Supp. 118, 130 (E.D.N.Y. 1968), judgment aff'd, 417 F.2d 869 (2d Cir. 1969) ("[W]hat is publicly known or used but not printed in a foreign country is not a bar to an American patent."). Keurig expects

64

Kraft to present testimony that its Kenco Singles cartridge was used in Europe prior to the ' 762 patent's critical date.  Absent an appropriate instruction, the jury might incorrectly assume that such foreign use was prior art.

Keurig also objects to Kraft's proposed instruction because it incorporates a statement regarding "accidental" and unappreciated anticipation even though Kraft's proposed anticipation instruction (§ 6.2) omits any discussion of the requirements for proving inherent anticipation, and the law of inherent anticipation is included in the AIPLA Model Instructions on which Kraft's proposal is nominally based.  In other words, Kraft seeks the benefit of an instruction regarding inherency issues, without instructing the jury on the legal hurdles to such a defense.

**6.4     Prior Public Knowledge  [DISPUTED]**

**Keurig's Proposed Instruction**

Kraft contends that claim 1 of the '762 patent was anticipated because the invention defined in that claim was publicly known by the inventors or others in the United States before it was invented by the inventors.

A patent claim is invalid if the invention defined in that claim was publicly known by the inventors or by others in the United States before it was invented by the named inventors, Nicholas Lazaris and Roderick Beaulieu.  You are instructed that date of the invention of the '762 Patent is February 18, 2000.

For public knowledge to anticipate a patent claim, the knowledge must be sufficient to enable one with ordinary skill in the art to practice the invention.

Authority:  2008 AIPLA Model Instructions § 6.1; 3M v. Chemque, Inc., 303 F.3d 1294, 1301, 1306 (Fed. Cir. 2002) (reversing jury verdict of anticipation for lack of substantial evidence supporting finding that distributed samples were enabling: "For prior art to anticipate under 35 U.S.C. § 102(a) because it is 'known,' the knowledge must be publicly accessible, and it must be sufficient to enable one with ordinary skill in the art to practice the invention....Noticeably absent from the record is testimony or evidence about what disclosure was actually sent with the samples, let alone whether it was enabling.") (internal citations omitted).

**Kraft's Objections**

The enablement instruction is a red herring designed to confuse the jury as enablement of a prior art reference is a question of law for the Court.  3M, 303 F.3d at 1301.  In addition, the 3M decision was specific to the facts of the case where possession of samples of a two part chemical composition would not necessarily enable one of ordinary skill in the art to practice the claimed invention of encapsulating a signal transmission device with a dielectric encapsulant with specific chemical properties.  Id. at 1298.  Keurig once again goes well beyond the AIPLA instructions or the instructions adopted by this Court.

**Kraft's Proposed Instruction**

Kraft contends that the '762 patent was anticipated because the invention defined the asserted claims was publicly known by the inventors or others in the United States before it was invented by the inventors.

A patent claim is invalid if the invention defined in that claim was publicly known by the inventors or by others in the United States before it was invented by the named inventors, Nicholas Lazaris and Roderick Beaulieu.  You are instructed that date of the invention of the '762 Patent is February 18, 2000.

Authority:  2008 AIPLA Model Instructions § 6.1.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it omits the black-letter law that "public knowledge" must be enabling in order to anticipate.  See 3M v. Chemque, Inc., 303 F.3d 1294, 1301, 1306 (Fed. Cir. 2002) (reversing jury verdict of anticipation).

7304895.1                                                                                 065927.1001

## 6.5    Prior Patent or Printed Publication  [DISPUTED]

**Keurig's Proposed Instruction**

Kraft contends that claim 1 of '762 patent was anticipated because the invention defined in that claim was patented by others more than one year before Mr. Lazaris and Mr. Beaulieu filed their United States patent application on February 18, 2000.  A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country more than one year before Mr. Lazaris and Mr. Beaulieu filed their United States patent application.  To show anticipation of the patented invention, Kraft must show by clear and convincing evidence that before February 18, 1999, someone patented an invention that included all of the elements of claim 1 of the '762 patent.

Authority: 2008 AIPLA Model Instructions § 6.7.

**Kraft's Objections**

Kraft objects to Keurig's proposed instruction as misleading as Kraft does not contend that the same invention was previously patented in the prior art patents asserted by Kraft. Instead, Kraft contends that its asserted prior art patents disclose each and every limitation of claim 1 of the '762 Patent.  Thus, the AIPLA "Printed Publication" jury instruction is more appropriate and reflects Kraft's actual invalidity defense.  Moreover, Kraft notes that the AIPLA Printed Publication instruction states that, "An issued patent is a printed publication," which further demonstrates that the "Printed Publication" jury instruction should be used.  Keurig cannot dictate Kraft's invalidity defense.

**Kraft's Proposed Instruction**

Kraft contends that claim 1 of Keurig's '762 patent was anticipated because the invention defined in that claim was described in a printed publication more than one year before the patentees filed the U.S. patent application on February 18, 2000.

A patent claim is invalid if the invention defined by that claim was described in a printed publication more than one year prior to the filing date of the U.S. application.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the application for the '762 patent was filed, and you may consider evidence that sheds light on the knowledge such a person would have had.

Authority:

2008 AIPLA Model Instructions § 6.5.

### **Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it unnecessarily introduces the concept of a "printed publication" other than a prior art patent when no such printed publications are at issue in this case. Accordingly,. Kraft's instruction risks confusing the jury with irrelevant information. The prior art status of U.S. Patent Nos. 4,853,234 and 4,452,130 is not disputed, and AIPLA Model Instruction § 6.7 ("Prior Patent") is a more appropriate instruction since both of these references are prior patents.

Keurig also objects because Kraft's proposed instruction references the concept of inherency in a perfunctory manner without explaining the specific nature of the accused

infringer's burden for proving inherent anticipation.  AIPLA instruction § 6.5 was plainly designed to refer back to the inherency section of AIPLA instruction § 6.0, which Kraft's proposed Anticipation instruction omits.

7304895.1                                                                                                    065927.1001

**6.6    No Practicing the Prior Art Defense  [DISPUTED]**

**Keurig's Proposed Instruction**

As I have explained, patent infringement and patent validity are two entirely separate

questions.  It is not enough for Kraft to argue that it cannot be liable because the products that it

sells now are similar to products or descriptions in the prior art.

Authority:  Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1153 (Fed. Cir. 2004)
("[T]his court has made clear that there is no 'practicing the prior art' defense to literal
infringement."); Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357,
1366 (Fed. Cir. 2002) ("Implicit in Spectramed's argument is that Baxter, in order to establish
literal infringement, must prove by a preponderance of the evidence that Spectramed's accused
devices embody all the limitations in the asserted claims, and in addition, Spectramed's accused
devices must not be an adoption of the combined teachings of the prior art. This is not a correct
statement of the law governing patent infringement… .[L]iteral infringement is determined by
construing the claims and comparing them to the accused device, not by comparing the accused
device to the prior art."); Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1583 (Fed.
Cir. 1995).

**Kraft's Objections**

Kraft objects to this instruction as redundant since the jury is already instructed to
compare claim 1 to the accused T-disc.  Moreover, Keurig provides no basis for providing an
instruction that is not included in the Court's model instruction, or any accepted model
instructions, such as AIPLA, ABA, or the Federal Circuit Bar Association.  In addition, this
instruction would prejudice Kraft because a belief that it is practicing the prior art is a valid
defense to Keurig's claim for willful infringement.

**Kraft's Proposed Instruction**

Kraft does not propose an instruction relating to practicing the prior art.

**Keurig's Objections**

Kraft contends that the accused products (filter T-Discs) are similar in design to Kenco
Singles cartridges, which Kraft alleges to constitute prior art.  Kraft responded to many of
Keurig's requests for admission by alleging that "[t]o the same extent that the Kenco Singles
Cartridge includes [a particular element of claim 1 of the '762 patent], the T-DISC likewise

includes [that same element]."  In short, Kraft is poised to assert an impermissible "practicing the prior art" defense.  The jury should therefore be instructed that infringement and invalidity are two separate inquiries and that "practicing the prior art" is not a defense as a matter of law.  This is a basic principle that the Federal Circuit has repeatedly reaffirmed.  E.g., In re Omeprazole Patent Litigation, -- F.3d --, 2008 WL 3852096, *14 (Fed. Cir. Aug. 20, 2008) ("It is well established…that 'practicing the prior art' is not a defense to infringement.").

72

**OBVIOUSNESS**

**7.1     Obviousness – Generally  [DISPUTED]**

**Kraft's Proposed Instruction**

Kraft contends that claim 1 of Keurig's '762 patent is invalid because the claimed invention(s) is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.  In many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.  Obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether Kraft has established that the claimed invention is obvious:

(1).     the scope and content of the prior art relied upon by Kraft;

(2).     the difference or differences, if any, between each claim of Keurig's '762 patent that Kraft contends is obvious and the prior art;

(3).     the level of ordinary skill in the art at the time the invention of Keurig's '762 patent was made; and

(4).     additional considerations, if any, that indicate that the invention was obvious or not obvious.

73

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. Kraft bears the burden of proving obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

Authority:

GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.* (No. 4.2).

**Keurig's Objections**

Kraft objects to Kraft's proposed instruction because Kraft did not disclose its intention to argue the issue of obviousness of claim 1 until more than four months after the close of discovery. Moreover, Kraft <u>still</u> has not disclosed the factual basis for this belated defense. Kraft's obviousness defense should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).

Keurig also objects to the sentences referencing "multiple patents" and "more than one item of prior art." Kraft has never disclosed any combination of references that allegedly render any claim of Keurig's patent obvious.

Keurig further objects to the reference to "each claim of Keurig's '762 patent that Kraft contends is obvious." Claim 1 of the '762 patent is the only claim at issue.

Keurig also objects to Kraft's obviousness instructions because Kraft omits any instruction regarding the relevance of secondary indicia. <u>E.g.</u>, GMS instruction No. 4.2 (Factors Indicating Non-Obviousness) from <u>Linear Technology Corp.</u> Likewise, Kraft's obviousness instructions omit the requirement that the jury not rely on hindsight. <u>E.g.</u>, GMS instruction No. 4.8 (Obviousness – Hindsight) from <u>Linear Technology Corp.</u> In the event that the Court were to deny Keurig's Motion *in Limine* No. 5, Keurig reserves the right to raise additional objections to Kraft's instruction and/or to propose an alternative version thereof.

**7.2    Scope and Content of the Prior Art        [DISPUTED]**

**Kraft's Proposed Instruction**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

You must determine what is the prior art that may be considered in determining whether the asserted claim of Keurig's '762 patent is obvious.  A prior art reference may be considered if it discloses information designed to solve the same problem faced by the inventors or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problem faced by the inventor.

Authority:

GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.* (No. 4.3).

**Keurig's Objections**

Kraft objects to Kraft's proposed instruction because Kraft did not disclose its intention to argue the issue of obviousness of claim 1 until more than four months after the close of discovery.  Moreover, Kraft still has not disclosed the factual basis for this belated defense.  Kraft's obviousness defense should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).

Keurig further objects to the first sentence of the proposed instruction, which could improperly suggest to the jury that the Court endorses Kraft's position that Kenco Singles Cartridges constitute prior art.  This is a disputed question of fact.  The Court's Linear Technology Corp. instruction did not include such a sentence.

Keurig also objects to Kraft's obviousness instructions because Kraft omits any instruction regarding the relevance of secondary indicia.  E.g., GMS instruction No. 4.2 (Factors Indicating Non-Obviousness) from Linear Technology Corp.  Likewise, Kraft's obviousness instructions omit the requirement that the jury not rely on hindsight.  E.g., GMS instruction No. 4.8 (Obviousness – Hindsight) from Linear Technology Corp.  In the event that the Court were to

deny Keurig's Motion *in Limine* No. 5, Keurig reserves the right to raise additional objections to Kraft's instruction and/or to propose an alternative version thereof.

7304895.1                                                                065927.1001

**7.3    Difference Between the Claims and the Prior Art  [DISPUTED]**

**Kraft's Proposed Instruction**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of any such differences on the obviousness or non-obviousness of the invention as a whole and not merely some portion of it.

In analyzing the relevance of the difference between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason

77

could come from the prior art, the background knowledge of one of ordinary skill in the art, the

nature of the problem to be solved, market demand, or common sense.


Authority:  GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.*

(No. 4.4).

## Keurig's Objections

Kraft objects to Kraft's proposed instruction because Kraft did not disclose its intention
to argue the issue of obviousness of claim 1 until more than four months after the close of
discovery.  Moreover, Kraft still has not disclosed the factual basis for this belated defense.
Kraft's obviousness defense should accordingly be precluded as explained in Keurig's Motion *in
Limine* No. 5 (D.I. 117).

Keurig also objects to Kraft's obviousness instructions because Kraft omits any
instruction regarding the relevance of secondary indicia.  E.g., GMS instruction No. 4.2 (Factors
Indicating Non-Obviousness) from Linear Technology Corp.  Likewise, Kraft's obviousness
instructions omit the requirement that the jury not rely on hindsight.  E.g., GMS instruction No.
4.8 (Obviousness – Hindsight) from Linear Technology Corp.  In the event that the Court were to
deny Keurig's Motion *in Limine* No. 5, Keurig reserves the right to raise additional objections to
Kraft's instruction and/or to propose an alternative version thereof.

**7.4    Level of Ordinary Skill  [DISPUTED]**

**Kraft's Proposed Instruction**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the beverage cartridge field.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

•      the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

•      the types of problems encountered in the art at the time of the invention; and

•      the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Authority:  GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.* (No. 4.5).

**Keurig's Objections**

Kraft objects to Kraft's proposed instruction because Kraft did not disclose its intention to argue the issue of obviousness of claim 1 until more than four months after the close of discovery.  Moreover, Kraft still has not disclosed the factual basis for this belated defense.  Kraft's obviousness defense should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).

Keurig also objects to Kraft's obviousness instructions because Kraft omits any instruction regarding the relevance of secondary indicia.  E.g., GMS instruction No. 4.2 (Factors Indicating Non-Obviousness) from Linear Technology Corp.  Likewise, Kraft's obviousness

instructions omit the requirement that the jury not rely on hindsight.  E.g., GMS instruction No. 4.8 (Obviousness – Hindsight) from Linear Technology Corp.  In the event that the Court were to deny Keurig's Motion *in Limine* No. 5, Keurig reserves the right to raise additional objections to Kraft's instruction and/or to propose an alternative version thereof.

Keurig further objects to Kraft's proposed instruction because it incorrectly suggests that the '762 patent has a single "inventor."

7304895.1                                                                                                          065927.1001

## 8.0    Enablement  [DISPUTED]

**Kraft's Proposed Instruction**

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation.  In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Kraft bears the burden of establishing lack of enablement by clear and convincing evidence.

Kraft contends that claim 1 of Keurig's '762 patent is invalid for lack of enablement.  The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art and (8) the breadth of the claims.

Authority:  2008 AIPLA Model Instructions § 8.0.

**Keurig's Objections**

      Kraft objects to Kraft's proposed instruction because Kraft did not disclose its intention to argue the issue of enablement until more than four months after the close of discovery. Moreover, Kraft <u>still</u> has not disclosed the factual basis for this belated defense. Kraft's enablement defense should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117). If Keurig's motion is denied, Keurig reserves the right to raise additional objections to Kraft's proposed enablement instruction.

7304895.1

065927.1001

## 9.0     Written Description Requirement  [DISPUTED]

**Kraft's Proposed Instruction**

A patent must contain a written description of the product claimed in the patent.  The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter.  To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.  The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.  It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention.  Kraft contends that claim 1 of Keurig's '762 patent is invalid for failure to satisfy the written description requirement.  Kraft bears the burden of establishing lack of written description by clear and convincing evidence.

If you find that Kraft has proved that it is highly probable that Keurig's '762 patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

Authority:  2008 AIPLA Model Instructions § 9.0.

**Keurig's Objections**

Kraft objects to Kraft's proposed instruction because Kraft did not disclose its intention to argue the issue of written description until more than four months after the close of discovery.  Moreover, Kraft still has not disclosed the factual basis for this belated defense.  Kraft's written

7304895.1                                                                065927.1001

description defense should accordingly be precluded as explained in Keurig's Motion *in Limine* No. 5 (D.I. 117).  If Keurig's motion is denied, Keurig reserves the right to raise additional objections to Kraft's proposed written description instruction.

84

## UNENFORCEABILITY

**10.1    Inequitable Conduct – Generally  [DISPUTED]**

**Kraft's Proposed Instruction**

Kraft alleges that Keurig's '762 patent is unenforceable due to inequitable conduct.  Kraft contends that Keurig may not enforce its '762 patent against Kraft because Keurig engaged in inequitable conduct before the Patent and Trademark Office during prosecution of its '762 patent.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty.  This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application.  An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

In this case, Kraft asserts that one of the named inventors of Keurig's '762 patent, Mr. Lazaris, who is also President of Keurig, knew of, obtained, and studied Kenco Singles Cartridges prior to his conception of the subject matter covered by the '762 patent.  Mr. Lazaris failed to disclose the existence of this piece of prior art to the Patent and Trademark Office.

Kraft must prove inequitable conduct by clear and convincing evidence. To determine whether Keurig's ' 762 patent was obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the  PTO.

85

Authority:  2008 AIPLA Model Instructions § 11.0.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it is based on Kraft' s contention that the '762 patent is unenforceable.  Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

Keurig also objects to Kraft's proposed instruction because "[i]nequitable conduct is an equitable issue committed to the discretion of the trial court," Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351, 1357 (Fed. Cir. 2006), and soliciting an advisory opinion from the jury would unduly prejudice Keurig given the nature of the allegations against Mr. Lazaris.  Kraft requests the Court to inform the jury that Mr. Lazaris "is President of Keurig."  This statement is inaccurate.  Mr. Lazaris left Keurig months ago to take a position at Harvard Business School. More importantly, however, Kraft's proposed statement is completely irrelevant.  Mr. Lazaris's former position at Keurig has no bearing on Kraft's inequitable conduct allegations, which appear calculated to unfairly discredit Mr. Lazaris and Keurig in the jury's eyes.

Keurig further objects to Kraft's declarative sentence that "Mr. Lazaris failed to disclose the existence of this piece of prior art to the Patent and Trademark Office."

In the event that Kraft's motion to amend is granted, Keurig reserves the right to raise additional objections to Kraft's proposed inequitable conduct instructions and/or to propose alternative instructions.

86

**10.2    Materiality  [DISPUTED]**

**Kraft's Proposed Instruction**

Kraft contends that the Kenco Singles Cartridge is information known to a person with the duty of good faith and candor and was withheld from the Patent and Trademark Office during the prosecution of Keurig's '762 patent.  If you find that a person with this duty of good faith and candor withheld information when applying for Keurig's '762 patent, you must determine whether that information was material information.

Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application would more likely than not fail to meet one of the requirements for a patent.  Information is also material if it refutes or is inconsistent with the information provided to the  Patent and Trademark Office or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection. Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.


Authority:  2008 AIPLA Model Instructions § 11.1.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it is based on Kraft' s contention that the '762 patent is unenforceable.  Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

In the event that Kraft's motion to amend is granted, Keurig reserves the right to raise additional objections to Kraft's proposed inequitable conduct instructions and/or to propose alternative instructions.

**10.3    Intent to Deceive or Mislead  [DISPUTED]**

**Kraft's Proposed Instruction**

Kraft contends that material information was withheld from the Patent and Trademark Office with an intent to deceive or mislead the Patent and Trademark Office. If you determine that material information was withheld from the Patent and Trademark Office, you must next determine whether this was done with an intent to deceive or mislead the Patent and Trademark Office.  Intent to deceive the  Patent and Trademark Office may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.

When a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be that to deceive the Patent and Trademark Office, an inference that the patentee intended to deceive may be appropriate. Simple negligence is insufficient for a holding of inequitable conduct.

In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

Authority:  2008 AIPLA Model Instructions § 11.2.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it is based on Kraft' s contention that the '762 patent is unenforceable.  Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

Keurig also objects to the second paragraph of Kraft's proposed instruction, which is bracketed in the AI PLA model and would not be applicable here even if the Court allowed

Kraft's motion for leave to amend.  Kraft's proposed amended answer does not allege that Mr. Lazaris knowingly misrepresented a material fact.

In the event that Kraft's motion to amend is granted, Keurig reserves the right to raise additional objections to Kraft's proposed inequitable conduct instructions and/or to propose alternative instructions.

7304895.1                                                                                          065927.1001

**10.4    Balancing of Materiality and Intent  [DISPUTED]**

<u>**Kraft's Proposed Instruction**</u>

If Kraft has proven by clear and convincing evidence that information was withheld by a

person with the duty of good faith and candor, you must then balance the degree of materiality

and the degree of intent to deceive or mislead the Patent and Trademark Office to determine

whether or not the evidence is sufficient to establish clearly and convincingly that there was

inequitable conduct committed in the prosecution of Keurig's '762 patent. Where the materiality

of the withheld information is high, the showing of intent needed to establish inequitable conduct

is proportionally less.  Likewise, when the showing of intent is high, the showing of materiality

may be proportionally less.

<u>Authority</u>:  2008 AIPLA Model Instructions § 11.3.

<u>**Keurig's Objections**</u>

Keurig objects to Kraft's proposed instruction because it is based on Kraft' s contention that
the '762 patent is unenforceable.  Kraft's answer does not plead an inequitable conduct defense,
and Kraft's belated motion for leave to amend its complaint to add such a defense should be
denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

In the event that Kraft's motion to amend is granted, Keurig reserves the right to raise
additional objections to Kraft's proposed inequitable conduct instructions and/or to propose
alternative instructions.

7304895.1                                                                     065927.1001

# DAMAGES

## 11.1    Damages – Generally  [DISPUTED]

### Keurig's Proposed Instruction

Question 3 of the Verdict Form reads as follows: Indicate the amount of damages that will compensate Keurig for Kraft's infringement from September 2005 through October 2008.

I will now instruct you as to the rules you must follow when deciding the issue of damages.

If you find that the accused T-Discs infringe claim 1 of Keurig's '762 patent, and that claim 1 is valid, you must determine the amount of damages to be awarded Keurig for Kraft's past infringement.  On the other hand, if you find that claim 1 of the '762 patent is either invalid or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate Keurig for Kraft's past infringement.  Your damage award should put Keurig in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Keurig must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of this Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Keurig.

Authority:  2008 AIPLA Model Instructions §  12.0.

7304895.1                                                                        065927.1001

## Kraft's Objections

Contrary to this Court's practice, Keurig attempts to incorporate the language of the verdict form into the instruction. Kraft offers an instruction that is consistent with the law and comports with the practice in this Court, and is based on a jury instruction adopted by the Court earlier this year in another matter.

## Kraft's Proposed Instruction

I have now instructed you as to the law governing patent infringement. If you find that Kraft infringes claim 1 of Keurig's '762 patent, and that claim 1 is not invalid, you must determine the amount of damages, if any, to be awarded Keurig for the infringement. On the other hand, if you find that claim 1 of the '762 patent is either invalid, unenforceable, or is not infringed, then you need not address damages in your deliberations. The amount of those damages must be adequate to compensate Keurig for the infringement. Your damage award should put Keurig in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Keurig must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of this Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Keurig.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it is based on Kraft's contention that the '762 patent is unenforceable. Kraft's answer does not plead an inequitable conduct defense, and Kraft's belated motion for leave to amend its complaint to add such a defense should be denied for the reasons described in Keurig's opposition (D.I. 94) to that motion.

Keurig also objects to Kraft's proposed instruction because it does not refer to the relevant question of the verdict form. By distributing the verdict form before the jury instructions and then referring to specific questions at the beginning of the Court's discussion of the relevant law, Keurig's proposal makes it easier for jurors to understand and apply the Court's instructions.

Keurig also also objects to Kraft's proposed instruction because it fails to explain that the jury is to decide damages for past acts of infringement only. The jury is not being asked to decide the appropriate royalty rate for any post-verdict acts of infringement, and it would indeed be inappropriate to apply the reasonable royalty found by the jury to post- verdict acts of infringement. Amado v. Microsoft Corp., 517 F.3d 1353, 1361-62 (Fed. Cir. 2008) ("The jury's award of $0.04 per unit was based on Microsoft's infringing conduct that took place prior to the verdict. There is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement.").

93

## 11.2    Reasonable Royalty – Definition  [DISPUTED]

**Keurig's Proposed Instruction**

The applicable form of damages in the case you have just heard and the form of damages that Keurig asserts it is entitled to for Kraft's infringement is called a "reasonable royalty." Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover for infringement.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Kraft taking place just before the infringement began.  You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

Damages in the form of a reasonable royalty are not limited by evidence of any design-around cost that Kraft could have incurred to avoid infringement altogether.  Likewise, it is not relevant to the question of damages whether Kraft benefited from, realized profits from or even lost money as a result of the acts of infringement.  The only issue is the amount of the reasonable royalty that Keurig should receive to compensate it for Kraft's infringement.

Authority:  2008 AIPLA Model Instructions §§ 12.2 and 12.15; Mars Inc. v. Coin Acceptors, Inc., 527 F.3d 1359 (Fed. Cir. 2008) (rejecting, as a matter of law, infringer's argument that a reasonable royalty must be capped at the cost of implementing the cheapest available, acceptable,

94

noninfringing alternative); <u>Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.</u>, 06-438-GMS Final Jury Instruction (D. Del. June 11, 2008) § 7.2 ("It is not relevant to the question of damages whether Abraxis benefited from, realized profits from or even lost money as a result of the acts of infringement … The only issue is the amount of the reasonable royalty which Elan should receive to compensate it for Abraxis's infringement."); 1993 Delaware Instructions § 6.1; <u>Monsanto Co. v. Ralph</u>, 382 F.3d 1374, 1383 (Fed. Cir. 2004) (rejecting infringer's argument that "a reasonable royalty deduced through a hypothetical negotiation process can never be set so high that no rational self-interested wealth-maximizing infringer acting *ex ante* would ever have agreed to it.").

## Kraft's Objections

Kraft again objects to Keurig's attempt to have the Court articulate Keurig's arguments through the use of jury instruction.  Keurig will have an opportunity to present its damages case through its expert, Alan Ratliff.  Again, Kraft proffers a clear and concise jury instruction that informs the jury with respect to the law of damages, and is modeled after a jury instruction adopted by the Court earlier this year in another matter.

## Kraft's Proposed Instruction

The patent law specifically provides that the amount of damages that Kraft must pay Keurig for infringing Keurig's patent may not be less than a reasonable royalty.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Kraft taking place just before the infringement began.  You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

<u>Authority</u>:  2008 AIPLA Model Instructions §§ 12.2 and 12.15; ; GMS instruction from *Finjan Software, Ltd. v. Secure Computing Corp.* (Nos. 30 & 31).

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because the sentence asserting that a reasonable royalty is "not necessarily the actual measure of damages, but is merely the floor below which damages should not fall" is irrelevant and unfairly prejudicial, wrongly suggesting to the jury that it may be appropriate to award Keurig only a portion of the damages to which the jury believes Keurig would actually be entitled.

Keurig further objects to Kraft' s proposed instruction because it omits any explanation that (1) reasonable royalty damages are not necessarily limited by design-around costs; and (2) the actual benefit that Kraft gained from its infringement is irrelevant. The first issue is central to the case because Kraft alleges that it could have developed a non-infringing alternative product at less than the reasonable royalty damages calculated by Keurig's damages expert. The second issue is also critical because Kraft's damages expert relies heavily on the theory that the Tassimo product line has not achieved the profitability that Kraft projected prior to launch. Both principles are firmly supported in the authorities that Keurig has cited.

**11.3   Reasonable Royalty – Relevant Factors  [AGREED]**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.      Any royalties received by Keurig for the licensing of the '762 patent to unrelated parties at arms- length, proving or tending to prove an established royalty.

2.      The rates paid by Kraft to license other patents comparable to the '762 patent.

3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.      Keurig's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between Keurig and Kraft, such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.      The duration of the '762 patent and the term of the license.

8.      The established profitability of the product made under the '762 patent; its commercial success; and its current popularity – that is to say, the foreseeable profitability that the licensee would have anticipated at the time of a hypothetical negotiation from which it would have calculated the royalty it would have been willing to pay.

97

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.      The extent to which Kraft has made use of the invention; and any evidence that shows the value of that use.

12.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.      The portion of the realizable Kraft profit attributable to the same-side piercing innovation as opposed to unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.      The opinion testimony of qualified experts.

15.      The amount that a licensor (Keurig) and a licensee (Kraft) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Authority:  2008 AIPLA Model Instructions § 12.16; 1993 Delaware Instructions § 6.11

7304895.1                                                                                      065927.1001

**11.4    Reasonable Royalty – Timing  [DISPUTED]**

**Keurig's Proposed Instruction**

    Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Kraft after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  You may only consider this information, however, if it was foreseeable at the time that the infringement began.

    To put it another way, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits Kraft made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits Kraft made.  Therefore, a determination of a reasonably royalty should in no way be based upon or limited by the evidence you have heard as to of the actual profits Kraft made through its infringing activities.

Authority:  First paragraph from 2008 AIPLA Model Instructions § 12.17 (2008).  Second paragraph from Federal Circuit Bar Association Model Instructions § 6.7 (2008); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("There is no rule that a royalty be no higher than the infringer's net profit margin."). See also Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1555 (Fed.Cir.1995) (en banc).

**Kraft's Objections**

    Repeating its objection of instruction 11.1, Kraft objects to Keurig's attempt to have the Court articulate Keurig's arguments through the use of jury instructions.  Keurig will have an opportunity to present its damages case through its expert, Alan Ratliff.  Once again, Kraft

proffers a clear and concise jury instruction that informs the jury with respect to the law of damages, and is modeled after a jury instruction adopted by the Court earlier this year in another matter.

## Kraft's Proposed Instruction

Although the relevant date for the hypothetical reasonable royalty negotiation is just before

the infringement began, you may consider in your determination of reasonable royalty damages

any actual profits by Kraft after that time and any commercial success of the patented invention

in the form of sales of the patented or infringing products after that time. You may only consider

this information, however, if it was foreseeable at the time that the infringement began.

Authority:  2008 AIPLA Model Instructions § 12.17 (2008); GMS instruction from *Finjan Software, Ltd. v. Secure Computing Corp.* (Nos. 33).).

## Keurig's Objections

Keurig objects to Kraft's proposed instruction because it omits important guidance as to when it is proper or improper to consider evidence of events that happened after the end of the hypothetical negotiation (i.e., after the infringing sales first began).  A thorough instruction is important in this case because Kraft's damages expert relies heavily on actual sales results as a justification for the low royalty rate that he proposes.

101

## 12.0    Willful Infringement  [DISPUTED]

**Keurig's Proposed Instruction**

Question 4 of the Verdict Form reads as follows:  Has Keurig proven, by clear and convincing evidence, that any infringement of Keurig's U.S. Patent No. 6,607,762 was willful?

I will now instruct you as to the rules you must follow when deciding the issue of willful infringement.

If you find by a preponderance of the evidence that Kraft infringed Keurig's ' 762 patent, then you must further determine if this infringement was willful.  Willfulness must be proved by clear and convincing evidence showing that:

1.      Kraft was aware of Keurig's patent;

2.      Kraft acted despite an objectively high likelihood that its actions infringed a valid patent; and

3.      This objectively high likelihood of infringement was either known to Kraft or so obvious that it should have been known to Kraft.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to

(1)      whether Kraft intentionally copied the claimed invention or a product covered by Keurig's patent;

(2)      whether Kraft presented a substantial defense to infringement, including the defense that the patent is invalid;

102

(3)    whether Kraft made a good faith effort to avoid infringing the patent, for example remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent; and

(4)    whether a fair and reasonable competitor would have secured legal advice or a professional legal opinion that would clear it of the alleged infringement. However, the absence of an opinion of counsel does not require you to find willfulness.


Authority:  2008 AIPLA Model Instructions § 13; In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc., 06-438-GMS Final Jury Instruction (D. Del. June 11, 2008) § 4.6.

### Kraft's Objections

Contrary to this Court's practice, Keurig attempts to incorporate the language of the verdict form into the instruction. Kraft offers an instruction that is consistent with the law and comports with the practice in this Court, and is based on a jury instruction adopted by the Court earlier this year in another matter. Moreover, contrary to the practice of this Court, Keurig attempts to have the willful instruction read at the end, and not with the instructions related to infringement. Moreover, factors (3) and (4) are contrary to In re Seagate, which reversed Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed. Cir. 1983) and eliminated the affirmative duty of due care. Keurig improperly attempts to create an inference of willful of infringement by discussing Kraft's reliance on opinion of counsel. The AIPLA jury instructions that Keurig relies upon notes that an instruction regarding "[w]hether the Defendant relied on competent legal advice," is appropriate when the defendant relies on a legal opinion as a defense to an allegation of willful infringement. "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to consult counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

**Kraft's Proposed Instruction**

If you find by a preponderance of the evidence that Kraft infringed Keurig's '762 patent, then you must further determine if this infringement was willful. Willfulness must be proved by clear and convincing evidence showing that:

1. Kraft was aware of Keurig's patent;

2. Kraft acted despite an objectively high likelihood that its actions infringed a valid patent; and

3. This objectively high likelihood of infringement was either known to Kraft or so obvious that it should have been known to Kraft.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to

(1)      whether Kraft intentionally copied the claimed invention or a product covered by Keurig's patent; and

(2)      whether Kraft presented a substantial defense to infringement, including the defense that the patent is invalid.

Authority: 2008 AIPLA Model Instructions § 13; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*); *Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.*, 06-438- GMS Final Jury Instruction (D. Del. June 11, 2008) § 4.6.

**Keurig's Objections**

Keurig objects to Kraft's proposed instruction because it omits any explanation that the jury can consider (1) whether Kraft made a good faith effort to avoid infringing Keurig's patent and (2) whether a fair and reasonable competitor in Kraft's position would have secured legal advice or a professional legal opinion that would clear it of the alleged infringement. Both of these

considerations are relevant to the <u>Seagate</u> objective recklessness standard  and are noted in this Court's <u>Elan</u> instructions, on which Kraft's proposal is nominally based.

7304895.1                                                                                                      065927.1001

## DELIBERATIONS AND VERDICT

**13.1    <u>Introduction</u>  [AGREED]**

Once you adjourn to the jury room, the first thing I recommend you do is select a

foreperson.  How you conduct your deliberations is up to you.  But, however you conduct those

deliberations, please remember that your verdict must represent the considered judgment of each

juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward

reaching an agreement, if you can do so without violence to your individual judgment. Each of

you must decide the case for yourself, but do so only after an impartial consideration of the

evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to

reexamine your own views and change your opinion, if convinced it is erroneous.  But do not

surrender your honest conviction as to the weight or effect of evidence solely because the opinion

of your fellow jurors, or forth the purpose of returning a verdict.  Remember at all times that you

are not partisans.  You are judges – judges of the facts, not me.  Your sole interest is to seek the

truth from the evidence in that case.  In order for you as a jury to return a verdict, it is necessary

that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room

and when you have reached unanimous agreement as to your verdict, you will have your

foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson

will give the form to my Deputy Clerk and your verdict shall be announced.   It is proper to add

the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant

to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages are normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished. Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.


Authority:

GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.* (No. 5.1).

**13.2**    **Duty to Deliberate**  [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that -- your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.


Authority:

GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.* (No. 5.2).

**13.3    <u>Court Has no Opinion</u>  [AGREED]**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented.

<u>Authority</u>:  GMS instruction from *Linear Technology Corp. v. Monolithic Power Systems, Inc.* (No. 5.3).

Dated: August 25, 2008

7304895.1                                                                                                                      065927.1001